IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAIGE MARTINEAU and SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH, INC. (SLAAY), Plaintiffs, vs. | Case No. |
| AMERICAN BAR ASSOCIATION; PENNSYLVANIA BOARD OF LAW EXAMINERS; SUPREME COURT OF PENNSYLVANIA; PENNSYLVANIA GENERAL ASSEMBLY; NORTH PENN LEGAL SERVICES; LEGAL SERVICES CORPORATION; PENNSYLVANIA BAR ASSOCIATION; UNION–SNYDER COUNTY BAR ASSOCIATION; 17TH JUDICIAL DISTRICT OF PENNSYLVANIA (UNION AND SNYDER COUNTIES); JUDGE PIECUCH, individually; JUDGE HACKENBERG, individually; NORTHUMBERLAND COUNTY PROTHONOTARY'S OFFICE; JAMIE SALESKI, individually; PENNSYLVANIA LEGAL AID NETWORK, INC. (PLAN); PENNSYLVANIA DISCIPLINARY BOARD; PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES CONGRESS, Defendants.                              Defendants | Complaint |

I.    **INTRODUCTION**

1. This action challenges the unconstitutional delegations of legislative power and systemic retaliation against Plaintiffs, a whistleblower attorney and a nonprofit legal aid organization.

1

2. Plaintiffs seek relief to protect their rights under the United States and Pennsylvania Constitutions, to end unlawful self-regulation of the legal profession, and to secure equal access to justice for their clients.

3. For decades, Pennsylvania has allowed bar associations, private trade groups, judicial committees, and nonprofit corporations to control who may practice law, how courts are run, and how legal aid funds are distributed.

4. These delegations lack statutory standards, safeguards, or accountability.

5. They have created conflicts of interest, enabled favoritism, and fostered retaliation against those who dare to criticize entrenched institutions.

6. Plaintiffs have faced escalating retaliation, including exclusion from programs, threats of arrest, false ethical accusations, and reputational damage.

7. For instance, while at North Penn Legal Services, Martineau reported more than 197 cases of malpractice, as a managing attorney was missing dozens of hearings and deadlines and going months or years without calling clients back, resulting in clients losing their homes, losing all of their belongings, or becoming homeless after being removed from their homes by the Sheriff with no notice after the Managing Attorney repeatedly lied to the clients.

8. Since, NPLS and its allies have engaged in a broad array of retaliatory conduct, escalating in the last months.

9. For instance, on September 23, 2025, a state court accused Plaintiff Martineau, in writing, of violating the Duty of Candor.

10. The Judge misread the federal case he was citing, mistakenly claimed it was a state case, not a federal case, and incorrectly threatened Martineau with sanctions.

11. Martineau was threatened with arrest in May of 2025 after filing a class action lawsuit against the Court itself for an admitted pattern and practice of violating black-letter statutes on fee waivers.

12. After filing time-sensitive documents on behalf of a client, the Prothonotary unlawfully refused to provide copies.

13. The Prothonotary then lured Martineau back to the Courthouse with a promise that she could have her documents, which needed to be served that day on a landlord to prevent the client's belongings from being thrown out.

14. Martineau called the Prothonotary's attorney and asked if she was being lured back to be falsely arrested, and the attorney assured her she was not.

15. Once Martineau walked into the Courthouse, she was surrounded by at least eight law enforcement officers who blocked her from moving, physically intimidated her, detained her, refused to let her leave, and publicly humiliated her.

16. Sunbury Police arrived shortly thereafter and, after a brief discussion with Martineau, instructed the Courthouse staff to let her leave.

17. Existing and former clients, members of the public, court staff, and fellow attorneys saw Martineau's detention and heard the threats of arrest.

18. On September 30, 2025, the Snyder County District Attorney unlawfully subjected Martineau to an investigation into First Amendment activities, despite having actual knowledge of facts that would establish the unquestionable lawfulness of Martineau's conduct.

19. In April, May, and June of 2025, North Penn Legal Services explicitly stated that they would not stop retaliating against SLAAY, would not agree to stop disparaging SLAAY, would not agree to add SLAAY to its list of referrals, which means that potential clients with tax or Social Security problems are turned away by NPLS and told no one in the area can help them, would not stop blocking SLAAY from joining PLAN, would not stop blocking SLAAY from obtaining funding for cases NPLS turns away, and would not be giving her the same access to Judicare contracts that every other attorney has.

20. Now SLAAY, a veteran-run organization, is being illegal excluded from the October 11, 2025 Wills f for Heroes event in Clinton County, despite sponsoring the event, spending dozens of hours planning for the event, recruiting over twenty volunteers, and announcing to the public and to Martineau's bar colleagues that SLAAY would be sponsoring Wills for Heroes.

21. Before Martineau escalated her whistleblowing activities in the spring of 2025 to include attorneys outside of North Penn Legal Services, she was never accused of ethical violations, and was held in high regard by the Courts, the Bar, and her clients for over twelve years as a practicing attorney.

**22.** Martineau feels compelled to file this case now, while she and SLAAY have an impeccable record, and are continuing to obtain more grants and donations every year, so that the public can be protected.

23. Neither Martineau nor SLAAY have any options left except to seek federal review of the admitted ongoing retaliation by organizations who have profited greatly from promises not to retaliate.

**JURISDICTION AND VENUE**

24. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the First, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983.

25. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek redress for the deprivation of rights secured by the Constitution and laws of the United States.

26. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 65.

27. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred within the Middle District of Pennsylvania, and many Defendants reside or operate here.

## II.  **PARTIES**

28. Plaintiff Paige Martineau is a former attorney and Disability Law Group Manager for North Penn Legal Services, and is currently an attorney and director of Susquehanna Legal Aid for Adults and Youth, Inc. ("SLAAY").

29. Plaintiff SLAAY is a Pennsylvania nonprofit corporation providing legal services in tax, veterans' services, consumer protection, and other matters of public interest.

30. Defendant American Bar Association ("ABA") is a private trade association headquartered in Chicago, Illinois, that accredits law schools and promulgates model rules of conduct, which Pennsylvania has adopted without legislative enactment.

31. Defendant Pennsylvania Board of Law Examiners administers bar admissions, including law school accreditation, examinations, and character and fitness determinations, under authority delegated by the Supreme Court of Pennsylvania.

32. Defendant Supreme Court of Pennsylvania is the highest court of the Commonwealth and claims authority to regulate attorneys, discipline, and procedural rules through judge-made regulations and committees.

33. Defendant Pennsylvania General Assembly is the legislative body of the Commonwealth. By statute and constitutional amendment, it has unlawfully delegated its legislative powers to the judiciary and private associations.

34. Defendant North Penn Legal Services ("NPLS") is a regional nonprofit legal-aid provider that retaliated against Plaintiff Martineau for whistleblowing, misrepresented her departure, and concealed malpractice from funders and insurers.

35. Defendant Legal Services Corporation ("LSC") is a federally chartered nonprofit that distributes federal funds to state-level entities such as PLAN and has facilitated structural conflicts of interest in civil legal aid.

36. Defendant Pennsylvania Bar Association ("PBA") is a statewide voluntary bar association that promises equal benefits to members but excluded Plaintiffs from events and programs in retaliation for criticism.

37. Defendant Union–Snyder County Bar Association ("USCBA") is a county bar association that has excluded Plaintiffs from professional opportunities and retaliated against whistleblowing attorneys.

38. Defendant 17th Judicial District of Pennsylvania encompasses Union and Snyder Counties and is responsible for judicial operations in that district.

39. Defendant Judge Piecuch is a sitting judge of the 17th Judicial District and is sued in his individual capacity for retaliatory conduct and discriminatory use of judicial discretion.

40. Defendant Judge Hackenberg is a sitting judge of the 17th Judicial District and is sued in his individual capacity for retaliatory conduct and discriminatory use of judicial discretion.

41. Defendant Northumberland County Prothonotary's Office maintains court filings and has obstructed Plaintiffs' access to court processes.

42. Defendant Jamie Saleski is the elected Northumberland County Prothonotary and is sued in her individual capacity for obstructing Plaintiffs' access and engaging in retaliation.

43. Defendant Pennsylvania Legal Aid Network, Inc. ("PLAN") is a private nonprofit corporation based in Harrisburg that controls distribution of civil legal aid funding in Pennsylvania without statutory standards or public accountability.

44. Defendant Pennsylvania Disciplinary Board is an administrative body of the Supreme Court of Pennsylvania responsible for investigating, prosecuting, and adjudicating allegations of attorney misconduct. It exercises delegated authority without statutory standards and sub-delegates disciplinary authority to hearing committees and individual attorneys.

45. Defendant Pennsylvania Department of Human Services ("DHS"), formerly the Department of Public Welfare, administers federal and state block grant funds, including Social Services Block Grant dollars, and distributes them to PLAN without objective standards, enabling PLAN's monopolistic control.

46. Defendant United States Department of Health and Human Services ("HHS") oversees the federal Social Services Block Grant program, through which federal funds are distributed to Pennsylvania and then to PLAN. By delegating discretionary control of these funds without intelligible principles or safeguards, HHS has enabled unconstitutional retaliation and denial of equal access to funding.

47. Defendant United States Congress enacted the Legal Services Corporation Act, 42 U.S.C. § 2996 et seq., creating the Legal Services Corporation as a federally funded nonprofit corporation. Congress delegated its own authority over civil legal aid appropriations and administration to LSC, which operates without meaningful standards or accountability and sub-delegates to PLAN.

### III.    STATEMENT OF FACTS

5

48. Plaintiff Martineau worked as an attorney and Disability Law Group Manager at North Penn Legal Services (NPLS) from 2017 to 2021. During her tenure, she repeatedly raised concerns about malpractice, including missed hearings, missed deadlines, and abandonment of clients.

49. After documenting these concerns and raising them with supervisors, Plaintiff was treated as a whistleblower and subjected to escalating retaliation.

50. Plaintiff founded Susquehanna Legal Aid for Adults and Youth, Inc. ("SLAAY"), a nonprofit legal aid organization providing services in tax, veterans' issues, consumer protection, and other matters. SLAAY successfully obtained grants and provided community services despite Defendants' efforts to exclude and silence it.

51. Defendants' control over attorney licensing, discipline, court rules, courtroom access, and legal aid funding has created conflicts of interest and mechanisms of retaliation that directly harmed Plaintiffs.

52. Plaintiffs possess written admissions and other documentary evidence confirming the retaliatory motives of Defendants:

    1. Lori Molloy, Executive Director of NPLS, admitted in an email that she was taking adverse employment action against Plaintiff because Plaintiff had threatened to file a bar complaint. Molloy later apologized and confirmed Plaintiff's whistleblower status.
    2. Bill Christman, Esq., in a July 30, 2025 email, explicitly identified constitutionally impermissible reasons for exclusion, specifically Plaintiff's ethical and First Amendment activities, which are just as unlawful as explicit discrimination based on race.
    3. The Executive Director of PLAN admitted in an email that PLAN uses no standards whatsoever for distributing approximately $40 million per year in civil legal aid funding to large monopolistic providers that devastate their clients with malpractice and exclude tens of thousands of Pennsylvanians solely because of conflict of interest.
    4. The USCBA admitted in its minutes that it will not refrain from retaliating or treating Plaintiff negatively for complying with her ethical duties or expressing Constitutional rights explicitly adopted by the USCBA, and has repeatedly refused Plaintiff's requests to review the Preamble to the Rules of Professional Conduct, which explicitly require to welcome public criticism of lawyers and the legal system.

53. In 2025, retaliation against Plaintiffs escalated as SLAAY continued to grow and succeed rather than fold under pressure.

54. On April 24, 2025, at a bar meeting, Plaintiff learned that NPLS had arranged judicature contracts for domestic violence cases with every attorney in the county except her.

55. At that same meeting, NPLS attorney Mary Beth Clark persuaded local judges to never award SLAAY attorney's fees, even in cases NPLS declined. She did not disclose her conflict of interest with Plaintiff or her knowledge of Plaintiff's exclusion.

56. When Plaintiff disclosed Clark's ethical violations, the USCBA retaliated against Plaintiffs, which in turn led to the PBA's July 30, 2025 unlawful exclusion from the Wills for Heroes program.

57. This exclusion occurred despite SLAAY's successful participation in the program earlier that year when Plaintiff and her staff provided wills and powers of attorney for veterans and first responders without incident or mentioning their behind-the-scenes advocacy.

58. Plaintiffs have been trying to get Northumberland County officials to follow state and federal rules for years. On May 30, 2025, Plaintiff was surrounded by at least eight law enforcement officers, including police and sheriffs, detained, and threatened with arrest in public at the Northumberland County Courthouse. Plaintiff had committed no unlawful act. This event terrified Plaintiff and demonstrated the extent of coordinated retaliation.

59. Judicial officers in the 17th Judicial District further escalated their conduct. At a Christmas party in December 2024, Judges Piecuch and Hackenberg were cordial to Plaintiff, smiling and sitting with her. Since that time, they have excluded her from professional opportunities routinely extended to others, denied her equal courtroom speaking time, and withheld recognition despite SLAAY's service to the community.

60. On September 23, 2025, the court falsely accused Plaintiff of an ethical violation. Plaintiff learned of this accusation on September 26, 2025. The accusation was false, retaliatory, and intended to intimidate.

61. As a result of Defendants' actions, Plaintiff now lives under constant fear of additional false accusations, retaliatory arrests, and professional ruin.

62. These retaliatory acts are enabled by unlawful delegations of power that allow judges, bar associations, and private nonprofits to act without statutory standards or accountability.

63. PLAN monopolizes civil legal aid funding and bars new entrants from applying for years at a time, explicitly excluding SLAAY despite community need.

64. Bar associations retaliate against critics despite the Rules of Professional Conduct requiring them to welcome criticism of the legal profession.

65. Collectively, these structures have produced systemic retaliation against Plaintiffs, deprived them of equal treatment, and chilled their exercise of constitutional rights.

66. Plaintiff is scared to attend Court, file documents, or advocate for her clients.

67. The public is being actively harmed by these specific actors and these structures.

## **CAUSES OF ACTION**

Cause of Action 1: Violation of the Pennsylvania Whistleblower Law (43 P.S. § 1421 et seq.)
North Penn Legal Services (NPLS)

68. Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

69. Plaintiff was employed by North Penn Legal Services ("NPLS") from 2017 to 2021.

70. During her employment, Plaintiff reported practices she reasonably believed violated laws and ethical obligations, including misuse of grant funds, systemic client neglect, and retaliatory conduct by supervisors.

71. Plaintiff's disclosures included formal and informal reports to internal leadership, communications with external oversight bodies, and the submission of grievances and documentation describing unlawful conduct within NPLS.

72. These actions constituted protected activity under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq.

73. On or about November 29, 2021, Plaintiff provided written notice of her resignation, citing a hostile work environment and unaddressed ethical concerns, and indicated her last day would be December 17, 2021.

74. Following the filing of grievances and continued whistleblowing by Plaintiff Martineau, Defendants escalated their retaliatory conduct as Plaintiff and SLAAY persisted in operating and obtaining grants rather than ceasing operations.

75. Plaintiff and SLAAY maintained a low profile, continued to provide legal services, and successfully secured grant funding despite Defendants' efforts to suppress their work. The continued existence and success of SLAAY appeared to aggravate Defendants, who intensified their retaliatory actions.

76. Plaintiffs possess documentary "smoking gun" evidence, in the form of admissions and written communications from senior officials at the relevant organizations, confirming the retaliatory and unconstitutional conduct described herein.

77. For example, Lori Molloy, Executive Director of NPLS, admitted in an email that she was taking adverse employment action against Plaintiff because Plaintiff had threatened to file a bar complaint.

78. On April 24, 2025, at a bar meeting in Pennsylvania, Plaintiff learned that NPLS had retaliated against her and SLAAY by offering judicature contracts for domestic violence cases to every attorney in the county except Plaintiff.

79. At that same meeting, Mary Beth Clark, an attorney at NPLS, persuaded local judges never to award SLAAY attorney's fees in any matter, including cases NPLS itself declined. Clark did not disclose her personal conflict of interest with Plaintiff or her knowledge that Plaintiff had been excluded from the judicature contract.

80. By retaliating against Plaintiff for making good-faith reports of wrongdoing and for engaging in protected whistleblowing activity, NPLS violated the Pennsylvania Whistleblower Law.

81. As a result of this retaliation, Plaintiff has suffered loss of income, damage to her professional reputation, emotional distress, and interference with future employment opportunities.

82. Plaintiff seeks all remedies available under law, including declaratory and injunctive relief, damages, attorneys' fees, and costs.

Cause of Action 2: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 et seq.) (NPLS)

83. Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

84. North Penn Legal Services ("NPLS") engages in trade and commerce, including the solicitation and receipt of funding from public and private sources based on representations about compliance, ethics, and accountability.

85. NPLS represented itself as a lawful, ethical organization while simultaneously engaging in retaliation, deception, and misrepresentation.

86. Specifically, NPLS omitted material facts when communicating with funders, clients, board members, the Pennsylvania Bar Association, and other external parties about Plaintiffs.

87. NPLS failed to disclose that Plaintiff and that she was retaliated against for whistleblowing after dozens of clients were devastated when they lost their belongings or homes solely because of missed deadlines, and hundreds more would go months or years without hearing from their attorneys.

88. By withholding this context, NPLS created a misleading impression and a defamatory half-truth.

89. These omissions and misrepresentations, and others, were likely to mislead reasonable funders, regulatory bodies, and other institutions acting in reliance on NPLS's statements.

90. Such conduct constitutes unfair and deceptive trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

91. As a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, emotional distress, and impediments to future employment.

92. Plaintiff seeks injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief this Court deems appropriate.

Cause of Action 3 – Defamation by Half-Truth (NPLS)

93. Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

94. North Penn Legal Services ("NPLS") made false and misleading statements to third parties regarding the reasons for Plaintiff's departure, her performance, and her character.

95. These statements omitted material facts necessary to prevent them from being misleading, creating a defamatory "half-truth."

96. By omitting the context of Plaintiff's resignation and whistleblowing, NPLS created the false impressions about Plaintiff.

97. These half-truths were communicated recklessly and with disregard for the truth, and they were intended to damage Plaintiff's reputation in the legal community.

98. As a direct and proximate result of NPLS's defamatory communications, Plaintiff suffered reputational harm, emotional distress, and interference with her professional opportunities.

99. Plaintiff has documented multiple instances of malpractice at North Penn Legal Services ("NPLS"), including missed hearings, missed deadlines, and years-long gaps in client contact.

100.     NPLS's malpractice and systemic neglect have caused direct harm to clients, depriving them of their rights to effective legal representation and access to justice.

101.     NPLS has failed to self-report these instances of malpractice to its professional liability insurer, leaving clients without recourse and exposing them to ongoing harm.

102.     NPLS has further attempted to avoid responsibility by pressuring clients to proceed pro se rather than providing substitute counsel after malpractice occurred.

103.     Without injunctive relief, NPLS's clients will continue to suffer irreparable harm through missed deadlines, abandoned appeals, and unaddressed claims.

104.     Equity and the public interest require an order compelling NPLS to:
a. Report all documented malpractice cases, including those identified by Plaintiff, to its malpractice insurer;
b. Assign new, competent attorneys to all affected cases;
c. Direct those attorneys to pursue all available remedies on behalf of the clients, including nunc pro tunc appeals where delays were caused by NPLS's fault; and
d. Submit to independent auditing of client files to ensure compliance and protection of clients.

105.     Such injunctive relief is necessary to prevent ongoing harm to clients and to safeguard the integrity of publicly funded legal services.

106.     Plaintiff seeks compensatory damages, punitive damages, and any further relief this Court deems just and proper.

Cause of Action 4 – Breach of Contract (Violation of RPC Commitments and Membership Benefits) Pennsylvania Bar Association (PBA)

107.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

108.     Plaintiff is a dues-paying member of the Pennsylvania Bar Association ("PBA") in good standing.

109.     PBA has adopted the Pennsylvania Rules of Professional Conduct ("RPC") into its governing framework and represents itself publicly as committed to upholding those rules.

110.     The RPC include obligations to support the administration of justice, to refrain from retaliation against those who report misconduct, and to foster an environment where criticism of lawyers and legal institutions is welcomed rather than punished.

111.     PBA's website and membership materials state that the "full benefits of PBA membership are available to any member in good standing."

112.     These representations constitute a contractual promise between PBA and its members, including Plaintiff.

113.     Plaintiff engaged in protected activity by criticizing unethical practices within NPLS, reporting misuse of public funds, and advocating for reform of attorney regulation.

114.     Instead of honoring its commitments, PBA excluded Plaintiff and SLAAY from professional opportunities, denied access to events and programs, and distanced itself in response to Plaintiff's whistleblowing.

115.    By retaliating against Plaintiff for her criticism and excluding her despite her membership in good standing, PBA breached its contractual obligations to provide the benefits of membership and to uphold the RPC.

116.    As a result, Plaintiff suffered professional exclusion, reputational harm, loss of networking and referral opportunities, and emotional distress.

117.    Plaintiff seeks compensatory damages, declaratory judgment, and injunctive relief requiring PBA to honor its commitments to members in good standing.

Cause of Action 5 – Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 et seq.) (PBA)

118.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

119.    PBA engages in trade and commerce by soliciting membership dues and promoting membership benefits to attorneys in Pennsylvania.

120.    PBA represented through its website and promotional materials that all members in good standing would receive the full benefits of membership, including professional opportunities, advocacy, and participation in programs.

121.    These representations were false and misleading as applied to Plaintiff, who was denied those benefits despite being a member in good standing.

122.    PBA further represented itself as an organization committed to supporting attorneys who act ethically and in the public interest, when in fact it excluded Plaintiff for engaging in protected whistleblowing and criticism.

123.    These omissions and misrepresentations were likely to mislead reasonable attorneys and consumers of PBA's services.

124.    By excluding Plaintiff and SLAAY while continuing to collect membership dues, PBA engaged in unfair and deceptive acts and practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

125.    As a direct and proximate result, Plaintiff suffered professional exclusion, reputational injury, loss of opportunities, and emotional harm.

126.    Plaintiff seeks injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief the Court deems proper.

Cause of Action 6 – Promissory Estoppel (PBA)

127.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

12

128.    The Pennsylvania Bar Association ("PBA") made express and implied promises to Plaintiff and her nonprofit SLAAY that membership would entitle them to full participation in PBA programs and benefits.

129.    PBA's website and promotional materials state that "full benefits of PBA membership are available to any member in good standing," including access to events, advocacy, and professional opportunities.

130.    In addition, PBA representative Trevaskis specifically told Plaintiff that he would assist SLAAY in obtaining funding and that participation in PBA programs would follow from membership and engagement.

131.    These representations constituted clear and unambiguous promises that Plaintiff and SLAAY would be treated equally with other members, would have access to program opportunities, and would be supported in their professional activities.

132.    Plaintiff reasonably relied on these promises by continuing her membership in PBA, investing time and resources into PBA-related events, and pursuing SLAAY's participation in veterans' services and other programs.

133.    Plaintiff's reliance was foreseeable to PBA, as its promotional materials and representatives intentionally induced attorneys to join and remain members based on promises of participation and support.

134.    Despite these promises, PBA excluded Plaintiff and SLAAY from professional opportunities, denied them access to events and coalitions, and failed to support them when retaliation occurred.

135.    Plaintiff's reasonable reliance resulted in professional isolation, reputational harm, loss of opportunities, and emotional distress.

136.    Equity requires enforcement of PBA's promises to Plaintiff, as injustice can only be avoided by compelling PBA to honor the commitments it made to members in good standing.

137.    Plaintiff seeks declaratory relief, injunctive relief restoring full membership participation, compensatory damages, and such other equitable relief as the Court deems proper.

Cause of Action 7– Breach of Fiduciary Duty (PBA)

138.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

139.    The Pennsylvania Bar Association ("PBA"), as a voluntary membership organization with governance over professional obligations and attorney ethics, owed fiduciary duties to its members, including Plaintiff.

140.    These duties included loyalty, care, good faith, and the obligation to support members who act ethically and in the public interest.

141.    Plaintiff reasonably relied on PBA's fiduciary role, its incorporation of the Rules of Professional Conduct into its governing framework, and its public representations that it supports attorneys engaged in ethical practice.

142.    Plaintiff fulfilled her obligations as a member by engaging in good-faith whistleblowing, exposing misuse of funds and unethical conduct at NPLS, and advocating for reform within Pennsylvania's legal system.

143.    Rather than supporting Plaintiff, PBA breached its fiduciary duties by excluding her and SLAAY from bar-sponsored programs, distancing itself from her whistleblowing, and failing to speak out against retaliation carried out by other entities.

144.    PBA acted in its own institutional interest, prioritizing its relationships with entrenched legal organizations and funders over its duty to its members.

145.    These actions were disloyal, in bad faith, and inconsistent with PBA's ethical obligations to protect and advocate for attorneys who expose misconduct.

146.    As a direct and proximate result of PBA's breach of fiduciary duty, Plaintiff suffered reputational harm, loss of professional opportunities, emotional distress, and professional isolation.

147.    Plaintiff seeks declaratory judgment, injunctive relief compelling PBA to comply with its fiduciary obligations, compensatory damages, and such other relief as the Court deems just and proper.

Cause of Action 8 – First Amendment Retaliation (PBA)

148.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

149.    The Pennsylvania Bar Association ("PBA") has adopted the Pennsylvania Rules of Professional Conduct ("RPC") as part of its governing framework and public mission.

150.    The RPC incorporate constitutional principles, including obligations to protect the administration of justice, to refrain from retaliation against those who report misconduct, and to foster an environment where criticism of lawyers and legal institutions is welcomed.

151.    By adopting the RPC and representing itself as an ethical regulator of the profession, PBA voluntarily undertook an obligation to uphold constitutional values, including those grounded in the First Amendment.

152.    Plaintiff engaged in protected First Amendment activity by reporting unethical conduct, exposing misuse of legal-aid funds, and criticizing entrenched institutions such as NPLS and PLAN.

153.    Rather than protecting Plaintiff for engaging in this protected activity, PBA retaliated against her by excluding her and SLAAY from professional opportunities, denying access to veterans' coalitions, and distancing itself from her work.

154.    PBA continued to represent itself as welcoming criticism and supporting ethical attorneys, while in practice silencing and punishing Plaintiff for engaging in constitutionally protected speech.

155.    These retaliatory actions by PBA would deter a reasonable attorney from continuing to engage in protected speech, whistleblowing, or advocacy against corruption.

156.    As a direct and proximate result of PBA's retaliation, Plaintiff suffered reputational harm, professional exclusion, loss of opportunities, and emotional distress.

157.    Plaintiff seeks declaratory judgment, injunctive relief restoring her full participation in PBA programs, compensatory damages, and such other relief as this Court deems appropriate.

Cause of Action 9 – Breach of Contract (Violation of RPC Commitments and Membership Benefits)  Union-Snyder County Bar Association (USCBA)

158.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

159.    The Union-Snyder County Bar Association ("USCBA") is organized under Pennsylvania nonprofit law and has adopted the Pennsylvania Rules of Professional Conduct ("RPC") into its Articles of Incorporation.

160.    By adopting the RPC into its governance documents, USCBA promised to abide by and enforce those rules, including obligations to support the administration of justice, to refrain from retaliation, and to welcome criticism of the legal profession.

161.    Plaintiff is a member in good standing of USCBA, Pro Bono Committee Coordinator, and participated in its committees and events.

162.    USCBA's bylaws, and membership materials further represented that members would receive the benefits of participation, referrals, and equal treatment.

163.	Plaintiff engaged in good-faith whistleblowing, exposing misconduct at NPLS and criticizing structural failures of legal regulation and problems with the USCBA's 2025 Wills for Heroes program.

164.	Instead of upholding its obligations, USCBA excluded Plaintiff and SLAAY from programs such as Wills for Heroes and veterans' coalitions, denied referrals and support, and distanced itself from Plaintiff's protected activity.

165.	By retaliating against Plaintiff despite her membership in good standing, USCBA breached its contractual obligations arising from its Articles of Incorporation and membership promises.

166.	As a result, Plaintiff suffered reputational harm, professional exclusion, and loss of opportunities.

167.	Plaintiff seeks declaratory judgment, injunctive relief requiring USCBA to honor its obligations to members, compensatory damages, and such other relief as the Court deems just and proper.


Cause of Action 10 – Promissory Estoppel (USCBA)

168.	Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

169.	The Union-Snyder County Bar Association ("USCBA") made clear and unambiguous promises to its members, including Plaintiff, that it would provide support, fair treatment, and opportunities for participation in professional and community programs.

170.	These promises included commitments in USCBA's Articles of Incorporation, which adopt the Pennsylvania Rules of Professional Conduct, and membership communications reflecting that members would be included in events, referrals, and professional advocacy.

171.	Plaintiff reasonably relied on these promises by joining USCBA, actively participating in committees such as the Law Day Committee, and investing time and resources into its programs.

172.	Plaintiff's reliance was foreseeable to USCBA, as its representations were designed to induce attorneys to join, participate, and remain members.

173.	Despite these promises, USCBA excluded Plaintiff and SLAAY from programs such as Wills for Heroes, veterans' coalitions, and other professional opportunities.

174.     This exclusion directly contradicted the promises of support and fair treatment extended to members.

175.     Plaintiff's reasonable reliance on USCBA's promises resulted in professional isolation, reputational harm, loss of opportunities, misspent federal work-study funds, and emotional distress.

176.     Equity requires enforcement of USCBA's promises to Plaintiff, as injustice can only be avoided by compelling USCBA to honor the commitments it made to members.

177.     Plaintiff seeks declaratory relief, injunctive relief restoring her participation and access to USCBA programs, compensatory damages, and such other equitable relief as the Court deems proper.

Cause of Action 11 – Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 et seq.) (USCBA)

178.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

179.     The Union-Snyder County Bar Association ("USCBA") engages in trade and commerce by soliciting membership dues, providing professional services, and promoting programs to attorneys in its jurisdiction.

180.     USCBA represented through its bylaws, incorporation of the Rules of Professional Conduct, and membership materials that it would provide equal treatment, program access, and support for members in good standing.

181.     USCBA further represented that it was committed to ethical leadership and to protecting members engaged in lawful, ethical practice.

182.     These representations were false and misleading as applied to Plaintiff, who was denied benefits of membership and excluded from programs despite being a member in good standing.

183.     USCBA further misrepresented its mission by excluding Plaintiff for engaging in protected criticism and whistleblowing while continuing to present itself publicly as an ethical and supportive professional organization.

184.     These omissions and misrepresentations were likely to mislead reasonable attorneys and consumers of USCBA's services.

185.     By excluding Plaintiff and SLAAY while continuing to solicit and retain membership dues, USCBA engaged in unfair and deceptive acts and practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

186.     As a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, loss of opportunities, and emotional injury.

187.     Plaintiff seeks injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief the Court deems appropriate.

Cause of Action 12 – Breach of Fiduciary Duty (USCBA)

188.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

189.     The Union-Snyder County Bar Association ("USCBA"), as a member-based organization with ethical responsibilities and commitments under the Pennsylvania Rules of Professional Conduct, owed fiduciary duties to its members, including Plaintiff.

190.     These fiduciary duties included loyalty, good faith, fair dealing, and the obligation to support members who act lawfully, ethically, and in the public interest.

191.     Plaintiff reasonably relied on USCBA's fiduciary obligations and participated in its committees and programs in good faith, including her work on the Law Day Committee.

192.     Instead of fulfilling its fiduciary role, USCBA breached its duties by excluding Plaintiff and SLAAY from programs such as Wills for Heroes and veterans' coalitions, denying referrals, and refusing to intervene when Plaintiff suffered retaliation from other institutions.

193.     USCBA's exclusion of Plaintiff was motivated by institutional self-interest, as it sought to protect relationships with entrenched legal organizations rather than uphold its obligations to its members.

194.     These actions were disloyal, taken in bad faith, and inconsistent with USCBA's fiduciary responsibilities.

195.     As a direct and proximate result of USCBA's breach, Plaintiff suffered reputational harm, professional exclusion, loss of opportunities, and emotional distress.

196.     Plaintiff seeks declaratory judgment, injunctive relief requiring USCBA to fulfill its fiduciary duties, compensatory damages, and such other relief as this Court deems just and proper.

Cause of Action 13 – Receivership (USCBA)

197.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

198.    USCBA has demonstrated an inability or unwillingness to comply with its ethical, fiduciary, and legal duties to its members.

199.    USCBA retaliated against Plaintiff for engaging in whistleblowing and protected activity, excluded her from programs and referrals, and misrepresented its commitments to its members and the public.

200.    USCBA's conduct has created a climate of fear and silence in the regional legal community, deterring other attorneys from reporting misconduct or advocating for reform.

201.    These failures evidence USCBA's incapacity to self-regulate in accordance with its own rules, its fiduciary duties, and public policy.

202.    Equity requires appointment of a receiver to assume oversight of USCBA's governance and operations, to restore ethical function, protect whistleblowers, and ensure compliance with professional duties.

203.    Plaintiff seeks the appointment of a receiver, an audit of USCBA's activities, recommendations for structural reforms, and such equitable relief as this Court deems necessary to safeguard the rights of legal professionals and the public.

Cause of Action 14 – First Amendment Retaliation (USCBA)

204.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

205.    The Union-Snyder County Bar Association ("USCBA") has adopted the Pennsylvania Rules of Professional Conduct ("RPC") into its Articles of Incorporation.

206.    The RPC include obligations to respect the constitutional rights of attorneys, including the rights to free speech and to petition for redress of grievances.

207.    By adopting the RPC, USCBA assumed obligations to refrain from retaliation against members for exercising constitutional rights.

208.    Plaintiff engaged in protected First Amendment activity by criticizing misconduct within NPLS, exposing failures of legal-aid funding and regulation, and advocating for reform.

209.    Instead of honoring its commitments under the RPC, USCBA retaliated by excluding Plaintiff and SLAAY from programs such as Wills for Heroes and veterans' coalitions, denying referrals, and isolating her professionally.

210.    These actions would deter a reasonable attorney from engaging in protected speech and advocacy.

211.     As a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, and loss of opportunities.

212.     Plaintiff seeks declaratory judgment, injunctive relief restoring her participation in USCBA programs, compensatory damages, and such other relief as this Court deems proper.

Cause of Action 15 – Equal Protection (USCBA)

213.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

214.     By adopting the RPC, USCBA assumed obligations to treat its members fairly and equally.

215.     USCBA denied Plaintiff and SLAAY access to programs, referrals, and advocacy while extending these benefits to similarly situated attorneys and organizations.

216.     USCBA favored attorneys and organizations that did not engage in whistleblowing or criticism of entrenched institutions, while excluding Plaintiff for her protected activity.

217.     This disparate treatment lacked any rational basis and was discriminatory against Plaintiff as a whistleblower and critic.

218.     As a result, Plaintiff suffered professional exclusion, reputational harm, and loss of opportunities.

219.     Plaintiff seeks declaratory relief, injunctive relief restoring equal access to programs, compensatory damages, and such other relief as the Court deems just and proper.

Cause of Action 16 – Due Process (USCBA)

220.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

221.     USCBA adopted the RPC, which include commitments to fairness, transparency, and the protection of rights consistent with constitutional due process.

222.     Despite these commitments, USCBA denied Plaintiff access to programs and opportunities without notice, explanation, or fair process.

223.     Exclusion decisions were made arbitrarily and in retaliation for Plaintiff's protected activity, rather than through objective or published criteria.

224.     USCBA's denial of fair procedures deprived Plaintiff of membership benefits she had paid for and reasonably relied upon.

225.     As a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, loss of opportunities, and emotional distress.

226.     Plaintiff seeks declaratory judgment, injunctive relief requiring USCBA to comply with its due process obligations, compensatory damages, and such other relief as this Court deems proper.

Cause of Action 17 – First Amendment Retaliation (Union-Snyder / 17th Judicial District, Judges Piecuch and Hackenberg)

227.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

228.     Plaintiff engaged in protected First Amendment activity by reporting misconduct within NPLS, criticizing structural failures of legal regulation, and advocating for reform.

229.     Judges Piecuch and Hackenberg, acting under color of state law in the 17th Judicial District, retaliated against Plaintiff by selectively applying courtroom policies and obstructing her professional participation.

230.     Retaliatory actions included denial of recording access, exclusion from courthouse programs, and discretionary treatment designed to disadvantage Plaintiff and SLAAY.

231.     Judges Piecuch and Hackenberg favored attorneys and organizations that did not engage in whistleblowing or criticism, granting them greater courtroom access for programming, publicly praising them at events, and highlighting them favorably in the media.

232.     Plaintiff and SLAAY, by contrast, were disparaged, falsely accused of ethical violations, and denied similar opportunities.

233.     These actions would deter a reasonable attorney from continuing to engage in protected speech.

234.     As a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, interference with her practice, and emotional distress.

235.     Plaintiff seeks declaratory judgment, injunctive relief, compensatory damages, and punitive damages against Defendants Piecuch and Hackenberg in their individual capacities.

Cause of Action 18 – Equal Protection (17th Judicial District, Judges Hackenberg and Piecuch)

236.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

237.    Judges Piecuch and Hackenberg treated Plaintiff differently from similarly situated attorneys and organizations by excluding her and SLAAY from courthouse programs while favoring others.

238.    Attorneys and organizations who had not engaged in whistleblowing or criticism were given favorable treatment, program access, and positive public recognition, while Plaintiff was disparaged and excluded.

239.    This disparate treatment lacked any rational basis and was motivated by retaliation against Plaintiff's protected activity.

240.    Plaintiff suffered reputational harm, professional exclusion, and interference with her practice as a result.

241.    Plaintiff seeks declaratory judgment, injunctive relief, compensatory damages, and such other relief as the Court deems just and proper.

Cause of Action 19 – Due Process (17th Judicial District, Judges Hackenberg and Piecuch)

242.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

243.    Judges Piecuch and Hackenberg exercised discretion to obstruct Plaintiff's professional access and participation without objective standards or fair procedures.

244.    Plaintiff was denied recording access, courthouse participation, and professional opportunities without notice or the opportunity to contest such decisions.

245.    At the same time, attorneys who did not engage in criticism were granted participation and recognition without restriction.

246.    These arbitrary and retaliatory actions deprived Plaintiff of fair process and her professional rights.

247.    As a result, Plaintiff suffered reputational harm, professional exclusion, loss of opportunities, and emotional distress.

248.    Plaintiff seeks declaratory judgment, injunctive relief requiring the 17th Judicial District to implement transparent standards and tracking of judicial discretion, compensatory damages, and such other relief as the Court deems proper.

Cause of Action 20 – First Amendment Retaliation (Saleski and Office of Prothonotary)

249.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

250.    Plaintiff engaged in protected First Amendment activity by reporting misconduct within NPLS, criticizing bar associations and courts, and advocating for reform of legal regulation.

251.    Defendant Jamie Saleski, in her role as Prothonotary of Northumberland County and acting under color of state law, retaliated against Plaintiff by obstructing filings, denying access to public resources, and selectively applying procedures.

252.    Most terrifyingly, she directed the Northumberland County Sheriff and Sunbury Police to surround Martineau, detain her, and threaten her with arrest. These actions were taken in response to Plaintiff's protected speech and whistleblowing.

253.    Attorneys and organizations who had not engaged in criticism were permitted to file without obstruction and were not subjected to the same barriers.

254.    The retaliatory conduct by Saleski and the Prothonotary's Office would deter a reasonable attorney from engaging in protected speech and advocacy.

255.    As a direct and proximate result, Plaintiff suffered reputational harm, delayed litigation, interference with her practice, and emotional distress.

256.    Plaintiff seeks declaratory judgment, injunctive relief restoring equal access to filing and court resources, compensatory damages, and punitive damages against Defendant Saleski in her individual capacity.

<u>Cause of Action 20 -Unfair and Deceptive Practices against ABA</u>

257.    Plaintiffs incorporate all preceding paragraphs.

258.    The American Bar Association ("ABA") markets itself as a standard-setter for the legal profession and claims authority over law school accreditation, professional rules, and systemic reform.

259.    The ABA holds itself out as protecting the public and advancing justice, while in fact devoting only a minimal fraction of its resources to research, reform, or solutions that would make legal services more affordable or effective.

260.    The ABA has failed to conduct, sponsor, or publish credible peer-reviewed research demonstrating that its accreditation policies or professional regulations are the most effective or least costly means of ensuring competent legal services.

261.    By devoting disproportionate resources to marketing, self-promotion, and peripheral projects, while neglecting urgent structural problems in legal access, the ABA misleads members of the profession, funders, policymakers, and the public.

262.    Plaintiffs and the public relied on the ABA's representations of authority and expertise, but those representations were false, misleading, and deceptive.

263.    Instead the ABA engages in superficial resolutions and hosts conferences celebrating itself.

264.    The ABA's conduct, like the USCBA with Law Day, is akin to firefighters arriving at a burning house and refusing to extinguish the flames because they are staging a photo shoot to raise money to adopt puppies. When members of the public, or Plaintiff Martineau, point out the neglect, the ABA responds by accusing critics of "being negative" or "not liking puppies." This metaphor illustrates the ABA's focus on optics and fundraising rather than its core duty to address the crisis of legal access.

265.    Such conduct constitutes unfair and deceptive trade practices under federal and state consumer protection law, because the ABA presents itself as solving legal access problems while failing to provide meaningful research, accountability, or solutions.

266.    Plaintiffs and the public have suffered harm as a result of the ABA's unfair and deceptive practices, including inflated legal education costs, lack of affordable legal services, and institutional retaliation against critics.

267.    Plaintiffs seek declaratory and injunctive relief requiring the ABA to cease deceptive marketing, to devote resources to meaningful research and reform, and to publish peer-reviewed evidence supporting its regulatory claims under Sections 1983, 2201, and state law mandamus claims.

Cause of Action 21 – Equal Protection (Saleski and Office of Prothonotary)

268.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

269.    Plaintiff was treated differently from similarly situated attorneys and organizations by being subjected to filing barriers and procedural obstructions.

270.    Defendants Saleski and the Office of the Prothonotary extended routine access to other attorneys, while obstructing Plaintiff's filings and access to public resources.

271.    This disparate treatment lacked any rational basis and was motivated by retaliation against Plaintiff's protected activity.

272.    As a result, Plaintiff suffered reputational harm, professional exclusion, interference with litigation, and emotional distress.

273.    Plaintiff seeks declaratory judgment, injunctive relief restoring equal access, compensatory damages, and such other relief as this Court deems just and proper.

Cause of Action 22 – Due Process (Saleski and Office of Prothonotary)

274.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

275.    Defendants Saleski and the Office of the Prothonotary obstructed Plaintiff's filings and access to resources without notice, explanation, or fair procedures.

276.    These arbitrary and retaliatory actions deprived Plaintiff of the right to pursue claims and to represent clients on equal terms with other attorneys.

277.    By selectively applying procedures and denying Plaintiff access, Defendants violated Plaintiff's right to due process under the Fourteenth Amendment.

278.    As a result, Plaintiff suffered reputational harm, interference with litigation, professional exclusion, and emotional distress.

279.    Plaintiff seeks declaratory judgment, injunctive relief requiring transparent and non-retaliatory filing procedures, compensatory damages, and such other relief as the Court deems just and proper.

Cause of Action 22: Unconstitutional Delegation from US Congress to LSC

280.    Plaintiffs incorporate by reference all preceding paragraphs.

281.    Article I of the United States Constitution vests "[a]ll legislative Powers" in Congress. U.S. Const. art. I, § 1. Congress may not delegate its lawmaking authority or appropriations power to private actors without intelligible principles, safeguards, or accountability.

282.    In 1974, Congress enacted the Legal Services Corporation Act, 42 U.S.C. § 2996 et seq., creating the Legal Services Corporation ("LSC") as a private nonprofit corporation funded by federal appropriations.

283.    LSC is neither a federal agency nor subject to direct congressional oversight in its discretionary decisions. Instead, LSC sub-delegates civil legal aid administration to state-level monopolies such as the Pennsylvania Legal Aid Network ("PLAN"), which then distributes funds without objective standards.

284.    By creating and empowering LSC to exercise legislative and appropriations functions, Congress unlawfully delegated its core powers to a private corporation. This violates the nondelegation doctrine as recognized in *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

285.    Plaintiffs have suffered harm as a direct result of this delegation, including exclusion from civil legal aid funding, systemic retaliation for whistleblowing, and deprivation of equal protection and due process rights.

286.    Relief is available under three separate statutory grounds:

a. **Mandamus, 28 U.S.C. § 1361.** Plaintiffs seek an order compelling Congress and federal officials to reclaim control over civil legal aid funding and cease delegating appropriations to a private nonprofit corporation.

b. **Civil Rights, 42 U.S.C. § 1983.** Plaintiffs seek redress for the deprivation of rights under color of federal law caused by unconstitutional delegation to LSC and its downstream monopolies.

c. **Declaratory Judgment, 28 U.S.C. § 2201.** Plaintiffs seek a declaration that

Congress's delegation of civil legal aid to LSC is unconstitutional, void, and unenforceable.

Relief Requested:

Plaintiffs respectfully request that this Court:

-Declare that Congress's delegation of civil legal aid funding and administration to LSC is unconstitutional under Article I;

-Enjoin further delegation of federal appropriations to LSC;

-Order Congress and federal officials to directly administer civil legal aid funding under legislated standards; and

-Grant such further relief as this Court deems just.

Cause of Action 23 – Unconstitutional Delegation of Licensing Authority Via Statute (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201) (Pennsylvania General Assembly)

287.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

288.    The Pennsylvania Constitution, Article II, § 1, vests all legislative power in the General Assembly.

289.    The General Assembly enacted statutes providing that only individuals approved by the Pennsylvania Board of Law Examiners may call themselves "attorneys" or practice law.

290.    **42 PA CSA states "(a) General rule.--**Except as provided in subsection (b), any person, including, but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree."

291.    Pennsylvania has enacted an entire series of statutes that allows private, self-interested individuals to enact laws that violate citizens' First Amendment and other constitutional rights by delegating the admission of law to the Supreme Court and Board of Law Examiners.

292.     These statutes are patently unconstitutional and must be immediately struck down.

293.     The Constitution allows anyone to say that they are a lawyer and for anyone to earn an income and advocate as a lawyer, just as it does for reporters.

294.     In enacting this statute, the General Assembly delegated to the Board of Law Examiners, a body of attorneys appointed by and answerable to the Pennsylvania Supreme Court, exclusive authority to define who may hold themselves out as an attorney.

295.     This delegation was made without intelligible principles, objective standards, or legislative safeguards.

296.     Whether and how an individual may call themselves an attorney is a core legislative policy choice, implicating speech, petition, and the right to pursue a lawful calling.

297.     By abdicating this decision to a private group of lawyers without standards or oversight, the General Assembly violated the Pennsylvania Constitution's nondelegation doctrine.

298.     Mandamus is proper to compel the General Assembly to reclaim this duty or legislate clear standards governing attorney licensing and professional designation.

299.     By delegating legislative authority over attorney licensing to the Board of Law Examiners without intelligible standards, the General Assembly acted under color of state law to deprive Plaintiff and others of rights secured by the United States Constitution.

300.     These rights include:
a. The First Amendment right to free speech and to petition courts, because courtroom advocacy and legal advice are conditioned on Board approval;
b. The Fourteenth Amendment right to due process, because licensing decisions are made without objective statutory criteria or procedural safeguards; and
c. The Fourteenth Amendment right to equal protection, because only certain individuals are permitted to call themselves attorneys or practice law, based on arbitrary and standardless decisions by the Board.

301.     Article II, § 1 of the Pennsylvania Constitution provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

302.     This provision prohibits the General Assembly from delegating its core policymaking responsibilities to other branches of government or to private groups.

303.     The decision to define who may call themselves an "attorney" and what qualifications are required is a core legislative function, not subject to delegation without intelligible standards.

304.     By delegating this power to the Board of Law Examiners and the Pennsylvania Supreme Court without statutory guidance or safeguards, the General Assembly violated Article II, § 1.

305.     This unconstitutional delegation caused Plaintiff direct harm, including barriers to professional opportunities, retaliation for protected activity, and exclusion from bar-related programs.

306.     Plaintiff seeks declaratory judgment that the delegation of licensing authority is unconstitutional and a writ of mandamus directing the General Assembly to establish objective statutory standards or reclaim policymaking authority over the practice of law.

307.     Plaintiff seeks declaratory and injunctive relief, compensatory damages, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988.

308.     Plaintiff seeks declaratory judgment under 28 U.S.C. § 2201 and state constitutional law declaring that the delegation of attorney-licensing authority is unconstitutional and unenforceable.

Cause of Action 24 – Unconstitutional Delegation of Attorney Regulation to the Supreme Court of Pennsylvania (1902 Constitutional Amendment) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

309.     Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

310.     In 1902, Pennsylvania adopted a constitutional amendment granting the Supreme Court of Pennsylvania the power to regulate the practice of law. [Pa. Const. Art. V, as amended in 1902.]

311.     This amendment transferred to the judiciary core policymaking authority that had historically belonged to the legislature, including the power to determine who may practice law, under what conditions, and subject to what disciplinary rules.

312.     The regulation of who may call themselves an "attorney," the qualifications required for practice, and the procedures governing discipline are fundamental legislative decisions, not judicial ones.

313.     By enacting this constitutional amendment, the Commonwealth delegated nondelegable legislative authority to the judiciary, in violation of Article II, § 1 of the Pennsylvania Constitution.

314.    The Supreme Court of Pennsylvania, acting under this delegation, further re-delegated its authority to subordinate lawyer-run bodies, including the Board of Law Examiners and the Disciplinary Board, compounding the lack of legislative oversight.

315.    These delegations have enabled private and conflicted groups of attorneys to wield unchecked power over licensing, admission, and discipline, without intelligible principles, legislative safeguards, or public accountability.

316.    This system has chilled speech, suppressed dissent, and permitted retaliation against whistleblowers such as Plaintiff.

317.    Plaintiff seeks declaratory judgment that the 1902 constitutional amendment and subsequent delegations to the judiciary and its subordinate bodies are unconstitutional and unenforceable under the Pennsylvania Constitution's nondelegation doctrine.

318.    Plaintiff further seeks injunctive relief prohibiting the Supreme Court and its Boards from enforcing licensing and disciplinary rules absent legislative standards enacted by the General Assembly.

Cause of Action 26 – Unconstitutional Delegation of Law School Accreditation Requirement (General Assembly, Supreme Court of Pennsylvania, Board of Law Examiners, and ABA) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

319.    Plaintiff incorporates by reference all preceding and later paragraphs of this Complaint and contemporaneously filed documents as though fully set forth herein.

320.    Pennsylvania law requires applicants for admission to the bar to graduate from a law school accredited by the American Bar Association ("ABA").

321.    This requirement originated in statutes enacted by the Pennsylvania General Assembly and in rules promulgated by the Supreme Court of Pennsylvania, which delegated to the Board of Law Examiners the authority to enforce the requirement.

322.    The ABA, a private trade association headquartered in Chicago, Illinois, is the sole entity empowered to determine which law schools are accredited for purposes of Pennsylvania bar admission.

323.    Neither the General Assembly nor the Supreme Court has established intelligible principles or legislative safeguards governing how the ABA must accredit schools.

324.    The decision whether an individual may appear in court, speak as counsel, or advise clients is thus controlled by a private association operating without public accountability, standards, or oversight.

325.     This delegation violates the Pennsylvania Constitution's nondelegation doctrine (Art. II, § 1) because the decision of who may call themselves an attorney and represent clients is a core legislative function.

326.     It further violates the U.S. Constitution because it conditions the exercise of First Amendment rights (speech, petition, advocacy) on approval by a private association not subject to constitutional limits.

327.     The Board of Law Examiners and the Disciplinary Board enforce the law school requirement as a condition of admission and continued practice, thereby acting under color of state law to deprive Plaintiff and others of their rights.

328.     Plaintiff seeks declaratory judgment that the law school accreditation requirement and its delegation to the ABA are unconstitutional and unenforceable.

329.     Plaintiff further seeks injunctive relief prohibiting Defendants from conditioning bar admission on ABA accreditation absent legislative standards, and requiring the General Assembly to establish objective, viewpoint-neutral criteria for legal education if such requirements are to exist at all.

Cause of Action 27 – Unconstitutional Delegation of Bar Examination Requirement (General Assembly, Supreme Court of Pennsylvania, and Board of Law Examiners) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

330.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

331.     Pennsylvania law requires applicants for admission to the bar to pass a written bar examination administered under the authority of the Pennsylvania Board of Law Examiners.

332.     The General Assembly has delegated to the Supreme Court of Pennsylvania, and the Supreme Court has in turn delegated to the Board of Law Examiners, the exclusive authority to determine the form, content, administration, and scoring of the bar examination.

333.     The Board of Law Examiners exercises this power without intelligible principles, objective standards, or legislative safeguards.

334.     There is no statutory guidance directing what the bar exam must measure, how it must be graded, or how it relates to competence to practice law.

335.     The exam serves as a barrier to courtroom speech and the right to petition, excluding individuals from practicing law even when they are otherwise competent to represent clients.

336.     This delegation of legislative power over who may speak in court and represent clients violates Article II, § 1 of the Pennsylvania Constitution, which vests legislative power exclusively in the General Assembly.

337.     It also burdens rights protected by the First and Fourteenth Amendments to the U.S. Constitution by conditioning speech and advocacy on passage of a discretionary, high-stakes test lacking constitutional safeguards.

338.     By enforcing the bar exam requirement, the Board of Law Examiners and the Supreme Court act under color of state law to deprive Plaintiff and others of rights secured by the Constitution.

339.     Plaintiff seeks declaratory judgment that the delegation of bar-examination authority to the Supreme Court and Board of Law Examiners is unconstitutional and unenforceable.

340.     Plaintiff further seeks injunctive relief prohibiting Defendants from enforcing the bar exam requirement absent statutory standards enacted by the General Assembly, and requiring that any qualification for practice be defined by objective, viewpoint-neutral criteria established through legislation.

Cause of Action 28 – Unconstitutional Delegation of Character and Fitness Review (General Assembly, Supreme Court of Pennsylvania, and Board of Law Examiners) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

341.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

342.     Pennsylvania law requires applicants for admission to the bar to demonstrate "character and fitness" to practice law. [Insert statutory citation once confirmed, e.g., 204 Pa. Code § 71.24 or relevant P.S. section.]

343.     The General Assembly delegated this authority to the Supreme Court of Pennsylvania, which in turn delegated to the Pennsylvania Board of Law Examiners the exclusive power to determine the standards, procedures, and outcomes of character and fitness reviews.

344.     The Board of Law Examiners administers this requirement without intelligible principles or legislative safeguards.

345.     Applicants are compelled to disclose private and sensitive information, including medical and mental health history, without statutory limits or protections.

346.     This system permits arbitrary and discretionary denial of bar admission, chilling applicants' willingness to seek medical treatment and stigmatizing disability.

347.     The decision who may speak in court and represent clients is thereby conditioned on discretionary, standardless determinations by a body of attorneys with no legislative oversight.

348.     This delegation violates Article II, § 1 of the Pennsylvania Constitution, which prohibits the General Assembly from abdicating core legislative responsibilities without standards.

349.     It also violates the U.S. Constitution by conditioning First Amendment rights (speech, petition, advocacy) on arbitrary review, and by denying due process through lack of notice, criteria, or appeal.

350.     Plaintiff seeks declaratory judgment that the delegation of character and fitness review is unconstitutional and unenforceable.

351.     Plaintiff further seeks injunctive relief prohibiting enforcement of character and fitness requirements absent objective statutory standards enacted by the General Assembly.

Cause of Action 29 – Unconstitutional Delegation of Disciplinary Authority (General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

352.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

353.     The General Assembly has delegated to the Supreme Court of Pennsylvania authority to regulate attorney discipline.

354.     The Supreme Court re-delegated this authority to its Disciplinary Board, a body composed primarily of attorneys who regulate their professional peers.

355.     The Disciplinary Board investigates, prosecutes, and adjudicates disciplinary matters without intelligible legislative principles or oversight.

356.     The system lacks statutory standards defining misconduct, guiding disciplinary outcomes, or protecting against retaliatory enforcement.

357.     Attorneys are subject to discipline at the discretion of their peers, creating structural conflicts of interest and enabling retaliation against whistleblowers and critics.

358.     The absence of neutral oversight violates Article II, § 1 of the Pennsylvania Constitution's nondelegation doctrine, as the General Assembly abdicated policymaking to a conflicted group of attorneys.

359.    The system also violates the U.S. Constitution by suppressing protected speech, denying procedural due process, and selectively punishing critics.

360.    Plaintiff seeks declaratory judgment that the delegation of disciplinary authority to the Disciplinary Board is unconstitutional and unenforceable.

361.    Plaintiff further seeks injunctive relief prohibiting enforcement of disciplinary rules absent objective statutory standards enacted by the General Assembly.

Cause of Action 30 – Unconstitutional Delegation of Disciplinary Authority to Individual Attorneys (Mandatory Self-Reporting and Peer Reporting) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

362.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

363.    The Pennsylvania Supreme Court, through its Disciplinary Board, has adopted rules requiring attorneys to report their peers for perceived violations of the Rules of Professional Conduct. [E.g., Pa. R.P.C. 8.3, "Reporting Professional Misconduct."]

364.    These rules delegate disciplinary authority to thousands of individual attorneys, each empowered to monitor, criticize, and report on the conduct of their colleagues.

365.    No intelligible legislative standards guide how attorneys should evaluate potential misconduct, what evidence must support a report, or how to distinguish trivial matters from serious ones.

366.    This delegation has created a self-policing system that is arbitrary, retaliatory, and structurally conflicted, empowering competitors and adversaries to file reports against one another.

367.    By contrast, other regulatory regimes, such as child-abuse reporting, are designed with clear statutory criteria, neutral investigative agencies, and accountability to the public.

368.    The absence of such safeguards in the attorney self-reporting system has chilled criticism of legal institutions, fostered retaliation against whistleblowers, and encouraged silence rather than accountability.

369.    By delegating disciplinary authority to individual attorneys without statutory standards or neutral oversight, the General Assembly and Supreme Court violated Article II, § 1 of the Pennsylvania Constitution's nondelegation doctrine.

370.    The system also violates the U.S. Constitution by suppressing protected speech and petition rights, denying due process, and enabling discriminatory enforcement.

371.     Plaintiff seeks declaratory judgment that the delegation of disciplinary authority to individual attorneys through mandatory self- and peer-reporting is unconstitutional and unenforceable.

372.     Plaintiff further seeks injunctive relief prohibiting enforcement of mandatory self-reporting absent objective statutory standards, neutral investigatory mechanisms, and safeguards against retaliation.

Cause of Action 31 – Nondelegation: Rules of Professional Conduct (General Assembly and Supreme Court of Pennsylvania) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

373.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

374.     The Pennsylvania Rules of Professional Conduct ("RPC") govern the professional responsibilities of attorneys in the Commonwealth.

375.     The RPC were not enacted by the Pennsylvania General Assembly. Instead, they were promulgated by the Supreme Court of Pennsylvania pursuant to authority delegated to it by the General Assembly.

376.     The RPC incorporate and enforce provisions of the American Bar Association's Model Rules of Professional Conduct, which are drafted by a private trade association without legislative oversight, public accountability, or intelligible principles.

377.     Neither the Pennsylvania Constitution nor any statute provides intelligible standards directing how the Supreme Court or the ABA must define, amend, or enforce the RPC.

378.     By delegating to the Supreme Court and, through it, to the ABA, the General Assembly abdicated its legislative duty to define attorney regulation and policymaking.

379.     This delegation violates Article II, § 1 of the Pennsylvania Constitution, which vests legislative power exclusively in the General Assembly.

380.     The RPC also operate as binding rules of conduct without having been enacted through constitutionally required legislative procedures.

381.     As a result, the RPC are unconstitutional in their entirety and may not be enforced against Plaintiff or any other attorney or organization.

382.     Plaintiff seeks declaratory judgment that the RPC are invalid and unenforceable and injunctive relief prohibiting their further application.

Cause of Action 32– Unconstitutional Delegation of Civil and Criminal Procedure to Judicial Rules Committees (General Assembly and Supreme Court of Pennsylvania) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

383.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

384.     The Pennsylvania Constitution vests all legislative power in the General Assembly. Pa. Const. art. II, § 1.

385.     Notwithstanding this requirement, the Pennsylvania General Assembly has permitted the Supreme Court of Pennsylvania, through its Rules Committees, to draft and promulgate the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Criminal Procedure.

386.     These rules govern fundamental matters of civil and criminal litigation, including pleadings, motions, evidence, discovery, deadlines, and trial procedure.

387.     Such rules determine the substantive rights and obligations of litigants, lawyers, and the public, and are inherently legislative in nature.

388.     The Rules Committees that draft and amend these rules are composed of judges and attorneys who act without statutory standards, legislative oversight, or public accountability.

389.     By allowing the Supreme Court and its Rules Committees to control civil and criminal procedure, the General Assembly abdicated its core legislative responsibility to define how cases are tried and adjudicated in Pennsylvania courts.

390.     This delegation violates Article II, § 1 of the Pennsylvania Constitution, which prohibits the General Assembly from transferring its lawmaking powers to the judiciary or to private actors.

391.     It also violates the U.S. Constitution by allowing court-created rules to control access to the judicial process without notice-and-comment, public input, or legislative safeguards, thereby undermining due process and equal protection.

392.     Plaintiff seeks declaratory judgment that the delegation of authority to the Supreme Court and its Rules Committees to draft binding rules of civil and criminal procedure is unconstitutional and unenforceable.

393.     Plaintiff further seeks injunctive relief prohibiting enforcement of the Rules of Civil Procedure and Rules of Criminal Procedure absent statutory enactment by the General Assembly.

Cause of Action 33 – Unconstitutional Delegation of Authority to Individual Courthouses (Dress Codes, Cell Phones, Recording, and Public Access) (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

394.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

395.    Courthouses in Pennsylvania have adopted and enforced local rules and policies restricting citizens' constitutional rights, including prohibitions on dress, cell phones, recording devices, and other forms of speech and expression.

396.    These restrictions are imposed at the discretion of individual courthouses, judges, or security officers, without authorization from the Pennsylvania General Assembly and without any intelligible legislative standards.

397.    The General Assembly has not enacted statutes restricting citizens' First Amendment rights inside courthouses or authorizing judges to regulate public dress, cell phone possession, or recording devices.

398.    Citizens should retain the same rights of speech, expression, and access in courthouses as in any other public building, including the right to wear clothing of their choice, even if it is offensive to a judge,  and to carry and use cell phones to record government officials performing public functions.

399.    To allow judges or individual courthouses to impose restrictions based on dress, cell phone use, or recording is to empower them to abridge core constitutional rights arbitrarily, subject only to their personal preferences.

400.    Such rules are inherently self-serving, immature, and partial, reflecting subjective bias rather than legitimate legislative standards.

401.    By permitting courts and courthouses to adopt and enforce these restrictions without statutory authority, the General Assembly has unlawfully delegated legislative power to the judiciary and its local agents.

402.    This delegation violates Article II, § 1 of the Pennsylvania Constitution, which vests legislative power solely in the General Assembly, and the First and Fourteenth Amendments to the United States Constitution, which protect free speech, due process, and equal protection.

403.    Plaintiff seeks declaratory judgment that courthouse-imposed restrictions on dress, cell phones, recording devices, and public access are unconstitutional absent express statutory authorization.

404.     Plaintiff further seeks injunctive relief prohibiting Pennsylvania courts and courthouses from enforcing such restrictions unless and until the General Assembly enacts clear, viewpoint-neutral legislation governing these matters.

Cause of Action 34 – Unconstitutional Delegation of Judicial Recusal Rules to Judges Themselves (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

405.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

406.     In Pennsylvania, judges have made their own rules governing judicial recusal, including the rule that judges are *presumed* to be fair and impartial and may decide for themselves whether they are biased.

407.     This presumption of impartiality and self-determination of recusal was not enacted by the Pennsylvania General Assembly.

408.     Instead, the Supreme Court of Pennsylvania and its subordinate courts adopted these rules through judicial self-regulation, without legislative authority or intelligible principles.

409.     The ability of judges to decide challenges to their own impartiality is inherently self-serving and creates an unavoidable conflict of interest.

410.     The presumption that judges are impartial has no basis in statute or empirical evidence.

411.     Neuroscientific and psychological research demonstrates that judges, like all decisionmakers, are subject to heuristics, biases, implicit associations, framing effects, anchoring, and emotional influences, and are no more impartial than other individuals.

412.     The General Assembly has not enacted a statute authorizing judges to determine their own bias or to assume impartiality as a matter of law.

413.     By allowing judges to promulgate and enforce their own recusal rules, the General Assembly unlawfully delegated legislative power in violation of Article II, § 1 of the Pennsylvania Constitution.

414.     This delegation also violates the United States Constitution, as it deprives litigants of due process by requiring them to argue motions before judges with a direct interest in the outcome and by denying them an impartial tribunal guaranteed under the Fourteenth Amendment.

415.     Plaintiff seeks declaratory judgment that the presumption of judicial impartiality and the rule allowing judges to decide their own recusal motions are unconstitutional and unenforceable.

416.     Plaintiff further seeks injunctive relief prohibiting Pennsylvania courts from applying the presumption of impartiality or self-determined recusal rules, and requiring that recusal motions be adjudicated by a neutral judge under standards enacted by the General Assembly.

Cause of Action 35 – Unconstitutional Delegation of Attorneys' Fees Rule (The "American Rule") (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

417.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

418.     Pennsylvania courts, following common law precedent and rules promulgated by judges, apply the "American Rule," under which each party must bear its own attorney's fees regardless of outcome.

419.     This rule was not enacted by the Pennsylvania General Assembly. Instead, it was created and perpetuated by judges and lawyers through judicial decisions and court rules.

420.     The determination of how attorneys are compensated, whether fees may be shifted, and how litigation costs are distributed is a matter of substantive policy and resource allocation.

421.     Such decisions are inherently legislative in nature and must be enacted by statute through the General Assembly, not by judges in their own cases.

422.     The American Rule is self-interested, as it was established by judges and lawyers to govern how they are paid, without democratic accountability or public oversight.

423.     By adopting and enforcing the American Rule without legislative authority or intelligible standards, Pennsylvania courts violated Article II, § 1 of the Pennsylvania Constitution, which vests all legislative power exclusively in the General Assembly.

424.     This delegation also violates the U.S. Constitution, as it denies due process and equal protection by conditioning access to justice on the ability to pay attorneys' fees, suppressing the exercise of First Amendment rights to petition the courts for redress of grievances.

425.     The American Rule chills speech and advocacy by deterring litigants from pursuing meritorious claims out of fear of unrecoverable legal costs.

426.    Plaintiff seeks declaratory judgment that the American Rule is unconstitutional absent express statutory enactment by the General Assembly.

427.    Plaintiff further seeks injunctive relief prohibiting Pennsylvania courts from applying the American Rule unless and until it is enacted through statute by the General Assembly, under objective and viewpoint-neutral standards.

Cause of Action 36: Nondelegation: Delegation by PLAN and LSC of civil legal aid provision  to single, large, multi-county grantees instead of multiple, local, county based grantees (Mandamus – Pennsylvania Constitution, Art. II, § 1, Section 1983, Declaratory Judgment under Section 2201)

428.    PLAN and LSC harm the public by delegating civil legal aid to single multi-county grantees.

429.    By definition, single multi-county grantees will exclude thousands of eligible citizens solely because of conflict of interest.

430.    A twenty-county organization will exclude twenty times the citizens that a single-county entity would exclude.

431.    Moreover, delegating civil legal aid grants to entities, instead of individual attorneys, still creates a group of citizens who are denied access to justice solely because of conflicts of interest.

432.    By conditioning access to state funding on silence or conformity, PLAN has burdened and retaliated against Plaintiffs for protected speech and petitioning activities.

433.    Plaintiffs are denied funding opportunities not because of neutral criteria, but because of their advocacy and criticism of entrenched legal-aid institutions.

434.    PLAN's closed process discriminates against similarly situated legal-aid organizations (such as SLAAY) by conferring automatic renewals on incumbents while categorically excluding new entrants.

435.    This unequal treatment lacks a rational basis and perpetuates arbitrary favoritism. PLAN denies Plaintiffs procedural due process by administering state and federal funding without notice, criteria, hearings, or appeal.

436.    PLAN also violates substantive due process by depriving Plaintiffs of the liberty to pursue a lawful calling and the property interest in competing for public funds on a fair and equal basis.

437.    Plaintiffs seek an order declaring that it is unconstitutional for PLAN, Inc. or the Pennsylvania Department of Human Services (DHS) to prefer statewide or multi-county regional organizations in awarding civil legal-aid funds.

438.    Plaintiffs request that the General Assembly, DHS, and PLAN be compelled to establish county-based civil legal-aid grant programs, structured as Entrepreneurial Legal Aid (ELA) contracts with individual attorneys or small, county-specific organizations.

439.  Plaintiffs further request that the Legal Services Corporation (LSC) be compelled to restructure its federal funding allocations in the same manner, by requiring county-based ELA grant competitions instead of awarding large regional monopolies.

440.  Plaintiffs respectfully request that this Court:

441.  Declare that the GA and DHS may not delegate policymaking over civil legal-aid funding to PLAN without intelligible standards.

442.  Issue a writ of mandamus compelling the GA and DHS to adopt a regular, open, competitive grant cycle for civil legal-aid funding, with published objective standards and anti-whistleblower protections.

443.  Declare that PLAN's funding administration violates Plaintiffs' rights under the First and Fourteenth Amendments.

444.   Enjoin PLAN from distributing further Commonwealth or federal civil legal-aid dollars until it adopts published, objective, viewpoint-neutral standards open to all eligible organizations.

445.  Require PLAN and DHS/DPW to establish regular, competitive grant cycles with notice, scoring rubrics, appeals, and anti-retaliation safeguards.

446.  Order Defendants to end the preference for statewide/regional organizations in civil legal-aid grantmaking.

447.  Require Defendants to establish a county-based entrepreneurial legal-aid system, with:

448.  Independent contractor agreements or grants for individual attorneys and small county-based nonprofits;

449.  Localized conflict-check lists limited to each county;

450.  Transparent, competitive grant cycles open to all qualified applicants;

451.  Anti-retaliation/anti-whistleblower requirements binding on all grantees.

452.  Award damages under 42 U.S.C. § 1983 for the denial of Plaintiffs' constitutional rights

453.  Award declaratory relief under 28 U.S.C. § 2201.

454.  Award costs and attorneys' fees under 42 U.S.C. § 1988.

455.  Grant such other relief as the Court deems just and proper.

Cause of Action 38: Unlawful delegation of advisory and guidance authority by the Supreme Court of Pennsylvania to the Pennsylvania Bar Association ("PBA").

456.    The Supreme Court has permitted and endorsed the PBA's issuance of formal ethics opinions and guidance.

457.    Although labeled "advisory," these documents are treated as authoritative by disciplinary bodies and courts, effectively functioning as quasi-regulations.

458.    The PBA is a voluntary membership association, not a government agency, yet its opinions influence discipline and professional conduct

459.    The General Assembly has enacted no statutory standards governing how ethics guidance should be developed, who should issue it, or what safeguards must apply.

460.    No procedures exist for public comment, transparency, or appeal of PBA-issued guidance.

461.    This structure gives the PBA unreviewable discretion to shape professional obligations

462.    Plaintiffs have been harmed by retaliatory use of bar association structures, including exclusion from programs and threats based on supposed "guidance."

463.    Attorneys who criticize bar associations face risk that their speech will be labeled unethical or unprofessional under PBA guidance.

464.    This system chills protected speech and reinforces a culture of retaliation.

465.    Plaintiff Martineau is directly harmed by retaliatory exclusion from bar programs and threats tied to PBA influence.

466.    SLAAY is harmed as an organization because exclusion from PBA-controlled programs limits its ability to serve clients and fulfill its mission.

467.    The Supreme Court has unlawfully delegated guidance authority to the PBA without legislated standards.

468.    Mandamus is proper to compel the Court to reclaim its authority and establish constitutionally adequate procedures.

469.    By delegating guidance authority to a private body, the Court acts under color of state law to deprive Plaintiffs of rights secured by the U.S. Constitution, including rights to free speech and due process.

470.    Plaintiffs are entitled to relief under § 1983

471.    The Court's reliance on PBA guidance violates Article II, § 1 of the Pennsylvania Constitution by abdicating nondelegable legislative functions.

472.    Plaintiffs are entitled to declaratory and injunctive relief.

473.    A real and substantial controversy exists over the validity of the delegation of guidance authority to the PBA.

474.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that the delegation is unconstitutional.

475.    By delegating authority to the PBA, the Court deprives attorneys of fair notice and procedure, since guidance is issued without statutory standards or procedural safeguards.

476.    Plaintiffs are entitled to relief under the Fourteenth Amendment.

477.      The delegation of guidance authority to the PBA enables retaliation and chills attorney speech, in violation of the First Amendment.

478.      Plaintiffs are entitled to declaratory and injunctive relief.

Plaintiffs respectfully request that this Court:

a. Declare that the Supreme Court's delegation of guidance authority to the PBA is unconstitutional.

b. Issue a writ of mandamus compelling the Court to reclaim its authority and establish independent, constitutional standards for professional guidance.

c. Enjoin the Court from permitting the PBA to issue authoritative guidance absent legislated standards and safeguards.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action 39: Unlawful delegation of professional guidance authority by the Supreme Court of Pennsylvania to the American Bar Association ("ABA").

479.      The Supreme Court of Pennsylvania relies heavily on the ABA's Model Rules of Professional Conduct and related guidance when regulating attorneys.

480.      These rules and opinions are drafted by committees within the ABA, a private membership body.

481.      Once adopted or incorporated by the Court, they carry binding force over all attorneys practicing in Pennsylvania.

482.      The General Assembly has enacted no standards governing the adoption of ABA guidance into Pennsylvania law.

483.      No procedures exist for public participation or accountability in the ABA's drafting process.

484.      The ABA's rules and guidance thus become binding without democratic safeguards

485.      Courts, disciplinary authorities, and bar associations treat ABA model rules and commentary as binding or persuasive authority.

486.      Attorneys must conform their speech and conduct to standards created by a private association rather than elected lawmakers

487.      Plaintiffs have been harmed by retaliatory use of guidance structures, including exclusion from bar programs and threats tied to ethics rules.

488.      ABA-derived guidance chills attorneys' willingness to speak out against misconduct, because dissent can be labeled unethical.

489.      The Supreme Court has unlawfully delegated guidance authority to the ABA without legislated standards.

490.      Mandamus is proper to compel the Court to reclaim its authority and establish constitutionally adequate procedures

42

491.      By delegating guidance authority to a private association, the Court acts under color of state law to deprive Plaintiffs of rights secured by the U.S. Constitution.

492.      Plaintiffs are entitled to relief under § 1983.

493.      The Court's reliance on ABA guidance violates Article II, § 1 of the Pennsylvania Constitution by abdicating nondelegable legislative functions.

494.      Plaintiffs are entitled to declaratory and injunctive relief.

495.      A real and substantial controversy exists over the validity of the delegation of guidance authority to the ABA.

496.      Plaintiffs seek a declaration under 28 U.S.C. § 2201 that the delegation is unconstitutional.

497.      Delegating authority to the ABA deprives attorneys of fair notice and procedure, since guidance is crafted by a private body without statutory safeguards.

498.      Plaintiffs are entitled to relief under the Fourteenth Amendment.

499.      Delegation of guidance authority to the ABA enables retaliation and chills attorney speech, in violation of the First Amendment.

500.      Plaintiffs are entitled to declaratory and injunctive relief.

Plaintiffs respectfully request that this Court:

a. Declare that the Supreme Court's delegation of guidance authority to the ABA is unconstitutional.

b. Issue a writ of mandamus compelling the Court to reclaim its authority and establish independent, constitutional standards for professional guidance.

c. Enjoin the Court from permitting the ABA to shape or issue binding rules absent legislated standards and safeguards.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

## Cause of Action 40: Violations of the First Amendment's guarantee of free speech (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

501.      The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment's guarantee of free speech. Plaintiffs seek declaratory, mandamus, and § 1983 relief to end these unconstitutional restrictions and replace them with neutral, accountable systems.

502.      Each of the following violates free speech:

   a. Attorney licensing: Prevents individuals from giving legal advice or advocacy, censoring speech based on status rather than content, without any evidentiary support for limitations;

   b. Discipline by peers: Chills whistleblowing and criticism, forcing lawyers to self-censor.

43

    c. Fee disputes: Peer-controlled resolution discourages lawyers and clients from speaking openly about billing abuses.

    d. Cell phone and recording bans: Prevent the press and public from monitoring government proceedings.

    e. No remote appearances: Denies access to speak in judicial forums to those unable to attend in person.

    f. American Rule: Imposes financial penalties on those who petition courts, chilling litigation as speech.

503.    A real and substantial controversy exists regarding whether the current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Free Speech Clause of the First Amendment.

504.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional restrictions on speech.

505.    Defendants have unlawfully restricted speech by maintaining monopolies on licensing, discipline, and access to judicial forums without legislated safeguards.

506.    Mandamus is proper to compel Defendants to repeal or restructure these systems in compliance with constitutional standards.

507.    Defendants act under color of state law to deprive Plaintiffs of their First Amendment rights to free speech.

508.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

509.    Plaintiffs respectfully request that this Court:

a. Declare the current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment Free Speech Clause.

b. Issue a writ of mandamus compelling Defendants to repeal or restructure the current system of attorney, judicial and court regulation to eliminate unconstitutional restrictions on speech.

c. Replace the unconstitutional system with a neutral, statewide regulatory structure, modeled on administrative agencies such as unemployment hearings, that ensures:

    -Transparent licensing alternatives (e.g., certification, disclosure-based systems).

    -Neutral, independent monitors instead of peer-discipline boards.

    -Fee dispute resolution by state agencies, not private associations.

    -Public access through recordings, cell phones, and remote hearings.

    -Fair allocation of legal costs to avoid chilling court access.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Causes of Action 41: Violations of the First Amendment's Free Exercise of Religion
Clause. (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and
Disciplinary Board)</u>

510.    The  current system of attorney, judicial, and court regulation, created by lawyers,
harms the public and violates the First Amendment's Free Exercise of Religion Clause.
Plaintiffs seek declaratory, mandamus, and § 1983 relief to protect the free exercise of
religion from these unconstitutional restrictions.

511.    The licensing, discipline, and access systems described above burden free
exercise of religion by:

512.    Excluding religiously affiliated or nontraditional law schools.

513.    Forcing disclosure of moral and religious identity in character & fitness.

514.    Enabling retaliation against attorneys who express religious beliefs.

515.    Restricting courthouse and remote access in ways that burden faith practices; and

516.    Chilling litigation of faith-based claims through the American Rule

517.    A real and substantial controversy exists regarding whether the  current system of
attorney, judicial, and court regulation, created by lawyers, harms the public and violates
the Free Exercise Clause of the First Amendment.

518.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are
unconstitutional burdens on free exercise.

519.    Defendants have unlawfully burdened religious exercise by maintaining licensing
and discipline structures that penalize religious identity and restrict faith-based speech.

520.    Mandamus is proper to compel Defendants to restructure attorney regulation to
remove religious burdens.

521.    Defendants act under color of state law to deprive Plaintiffs of their First
Amendment right to free exercise of religion.

522.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983


Plaintiffs respectfully request that this Court:

a. Declare that the  current system of attorney, judicial, and court regulation, created by
lawyers, harms the public and violates the First Amendment Free Exercise Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney licensing,
discipline, and access rules to eliminate unconstitutional burdens on religion.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

a.  Allows religious law schools or equivalent training pathways.

b.  Prohibits character & fitness inquiries into faith or moral identity.

c.  Protects attorneys from retaliation for religious speech.

d.  Ensures courthouse and remote access consistent with religious obligations.

e.  Reduces litigation burdens so faith-based claims are not chilled.
    d. Award declaratory relief under 28 U.S.C. § 2201.
    e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
    f. Grant such other relief as the Court deems just and proper.


Cause of Action 41: Violations of the First Amendment's guarantee of freedom of the press ( Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

523.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment's guarantee of freedom of the press in ways that include, but are not limited to, the following:

   a.  Licensing: monopolies restrict who may publish or speak about legal matters, preventing nonlawyers and journalists from disseminating legal advice or analysis.

   b.  Discipline by peers and self-reporting: Attorneys face retaliation for speaking to the press about misconduct, creating a chilling effect.

   c.  Fee disputes controlled by county bars: Suppress reporting of abusive practices by shielding them in peer-run committees.

   d.  Cell phone and recording bans: Deny the press and public the ability to record or report on courthouse proceedings.

   e.  Denial of remote appearances: Limits public access to judicial proceedings, burdening transparency.

   f.  The American Rule: Chills press-related litigation by imposing prohibitive costs on those who seek judicial redress for press freedoms.

   g.  Plaintiffs seek declaratory, mandamus, and § 1983 relief to protect press freedoms from these unconstitutional restrictions.

   h.  The licensing, discipline, and access systems described above violate freedom of the press by restricting who may publish legal information, retaliating against attorneys who report misconduct to the media, banning recordings and phones in court, suppressing press monitoring, denying remote participation, preventing public reporting, and imposing financial barriers that deter press-related litigation.

524.     A real and substantial controversy exists regarding whether the  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and  violates the Freedom of the Press Clause of the First Amendment.

525.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional restrictions on press freedom

526.    Defendants have unlawfully burdened press freedoms by maintaining structures that restrict reporting, recording, and access.

527.    Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections for the press.

528.    Defendants act under color of state law to deprive Plaintiffs of their First Amendment right to freedom of the press.

529.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.


Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment Freedom of the Press Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional restrictions on the press.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

-Permits dissemination of legal knowledge by all qualified individuals, not just licensed attorneys.

-Protects attorneys who report misconduct to the press.

-Ensures courthouse access for press monitoring, including recordings and remote appearances.

-Reduces financial barriers to press-related claims by reforming the American Rule.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action 42: Violations of First Amendment's guarantee of the right of the people to peaceably assemble (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)</u>

530.    The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment's guarantee of the right of the people to peaceably assemble in ways that include, but are not limited to, the following:

531.    Licensing monopolies (A–G): Restrict who may gather with clients or the public to provide legal education, advocacy, or representation.

532.    Discipline by fellow attorneys and self-reporting (H–I): Chill collective gatherings, whistleblowing networks, and professional associations critical of bar authorities.

47

533.    Fee dispute delegation (J): Prevent clients from organizing collectively to challenge attorney billing practices, since disputes are funneled into peer-controlled bar committees.

534.    Cell phone and recording bans (K): Suppress public assemblies in courthouses, including observation of proceedings and peaceful gatherings to monitor the judiciary.

535.    Denial of remote appearances (L): Excludes individuals and groups unable to physically assemble in courthouses, undermining collective participation.

536.    The American Rule (M): Discourages group litigation and collective action by making assembly in court financially prohibitive.

537.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to protect freedom of assembly from these unconstitutional restrictions.

538.    The licensing, discipline, and access systems described above violate freedom of assembly by restricting attorneys and nonlawyers from meeting together for legal education or advocacy, chilling professional gatherings critical of bar associations, suppressing public monitoring assemblies in courthouses, preventing collective participation in court through remote access barriers, and discouraging group litigation by maintaining prohibitive fee rules.

539.    A real and substantial controversy exists regarding whether  the current system of attorney, judicial and court regulation  violate the Freedom of Assembly Clause of the First Amendment.

540.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional restrictions on assembly.

541.    Defendants have unlawfully burdened freedom of assembly by maintaining licensing, discipline, and access structures that suppress collective activity.

542.    Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections for assembly.

543.    Defendants act under color of state law to deprive Plaintiffs of their First Amendment right to freedom of assembly.

544.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation  violates the First Amendment Freedom of Assembly Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional restrictions on assembly.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

-Allows community-based legal services and advocacy groups to operate without monopolistic licensing restrictions.

-Protects attorneys and nonprofits from retaliation for gathering with clients or colleagues.

-Ensures public courthouse access and remote participation for assemblies monitoring judicial proceedings.

-Reforms fee structures so collective litigation is not financially prohibited.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action 43: Violations of the First Amendment's guarantee of the right "to petition the Government for a redress of grievances." (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

545.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment's guarantee of the right "to petition the Government for a redress of grievances."

546.    The right to petition for redress is also known as the right to file lawsuits.

547.    Just as it would be illegal for a government official or attorney subject to the RPC to express discomfort if someone spoke about their religion, it is illegal for government officials and attorneys subject to the RPC to express discomfort if someone speaks about litigation.

548.    The frequent refrain that Plaintiffs have heard lately-that they are allowed to be excluded because they talk about litigation or threaten litigation-is patently unconstitutional.

549.    Any attorney who feels discomfort because of Plaintiffs actions or threats of litigation is behaving in an unethical and unprofessional manner according to the Rules of Professional Conduct.

550.    The First Amendment's guarantee of the right "to petition the Government for a redress of grievances" is violated by the  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and in a variety of ways, including, but not limited to:

551.    Licensing monopolies (A–G): Condition the ability to file pleadings and appear in court on licensure, restricting who may petition judicial bodies.

552.    Discipline by fellow attorneys and self-reporting (H–I): Chill attorneys from bringing claims against bar authorities or public officials, under threat of retaliation.

553.    Fee dispute committees (J): Prevent clients from petitioning independent tribunals regarding billing, instead forcing them before peer-controlled committees.

554.    Cell phone and recording bans (K): Restrict citizens' ability to document filings, hearings, and proceedings, impeding meaningful petitions.

555.    Denial of remote appearances (L): Excludes individuals unable to travel, denying them a fair opportunity to petition courts.

556.    The American Rule (M): Imposes prohibitive financial risks on litigation, deterring citizens from petitioning the courts for relief.

557.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to restore the right to petition government unburdened by the current system of attorney, judicial and court regulation.

558.    The licensing, discipline, and access systems described above violate the right to petition by preventing nonlawyers from submitting filings or speaking in court, retaliating against attorneys who challenge misconduct in grievances or lawsuits, forcing fee disputes into peer-run committees instead of neutral tribunals, restricting access to court records and hearings through cell phone and recording bans, excluding those who cannot travel through denial of remote access, and chilling petitions by making litigation prohibitively expensive under the American Rule.

559.    A real and substantial controversy exists regarding whether The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violate the Right to Petition guaranteed by the First Amendment.

560.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional restrictions on petition rights.

561.    Defendants have unlawfully burdened petition rights by maintaining licensing, discipline, and access structures that block or chill grievances and lawsuits.

562.    Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections for petitioning government.

563.    Defendants act under color of state law to deprive Plaintiffs of their First Amendment right to petition government for redress of grievances.

564.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the First Amendment Right to Petition.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional burdens on petition rights.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

-Permits individuals to file grievances and court petitions without requiring attorney licensure.

-Protects attorneys and nonprofits from retaliation for grievances and lawsuits.

-Provides neutral, statewide fee dispute resolution instead of peer-run committees.

-Ensures courthouse and remote access for all petitioners.

-Reforms fee structures so litigation costs do not deter petitions.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action 44: Violations of the Second Amendment right to keep and bear arms</u>
<u>(Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary</u>
<u>Board)</u>

565.    The  current system of attorney, judicial, and court regulation, created by lawyers,
harms the public and violates the Second Amendment right to keep and bear arms in
ways that include, but are not limited, to, the following:

566.    Character & fitness requirements (D, G): Applicants must disclose past conduct,
arrests, and personal history. Gun ownership, lawful exercise of Second Amendment
rights, or political affiliations tied to firearms may be treated as negative "character"
factors.

567.    Peer-discipline systems (H–I): Attorneys who publicly advocate for gun rights
risk retaliation from fellow attorneys or disciplinary authorities.

568.    Cell phone and recording bans (K): Prevent citizens and attorneys from
documenting Second Amendment-related hearings or proceedings, suppressing advocacy.

569.    American Rule (M): Chills Second Amendment litigation by forcing individuals
to bear the costs of vindicating their right to bear arms in court.

570.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to protect the right to
keep and bear arms from unconstitutional burdens imposed by the current system of
attorney, judicial, and court regulation.

571.    The licensing, discipline, and access systems described above violate the right to
bear arms by using character & fitness inquiries to penalize lawful gun ownership or
political affiliations, retaliating against attorneys who advocate for Second Amendment
rights, preventing public documentation of Second Amendment-related court proceedings
through recording bans, and chilling firearm-rights litigation by forcing litigants to bear
their own legal costs

572.    A real and substantial controversy exists regarding whether  thecurrent system of
attorney, judicial and court regulation  violate the Second Amendment.

573.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices
unconstitutionally burden the right to bear arms.

574.    Defendants have unlawfully burdened Second Amendment rights by maintaining
licensing and disciplinary systems that penalize lawful gun ownership and chill firearm
advocacy.

575.    Mandamus is proper to compel Defendants to restructure attorney regulation in
compliance with Second Amendment protections.

576.    Defendants act under color of state law to deprive Plaintiffs of their Second
Amendment rights.

577.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial, and court regulation, violates the Second Amendment right to bear arms.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional burdens on lawful gun ownership and firearm-related advocacy.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Prohibits character & fitness inquiries into lawful firearm ownership.

Protects attorneys from retaliation for advocating Second Amendment rights.

Ensures press and public access to firearm-related hearings.

Reforms fee structures to prevent chilling of Second Amendment litigation.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action 44: Violations of the Fourth Amendment's guarantee against unreasonable searches and seizures (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

578.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourth Amendment's guarantee against unreasonable searches and seizures in ways that include, but are not limited to, the following:

579.    Character & fitness inquiries: Applicants are compelled to disclose personal, medical, and mental health records without probable cause, warrant, or statutory safeguards.

580.    Peer-discipline structures: Attorneys are subject to investigatory demands, compelled production of private materials, and intrusive questioning by fellow attorneys rather than neutral officials.

581.    Fee dispute processes (J): County bar committees compel disclosure of private client–attorney billing records without legislated standards or judicial oversight.

582.    Cell phone and recording bans (K): These bans operate as blanket seizures of personal devices in courthouses, without individualized suspicion or warrant.

583.    Denial of remote appearances (L): Forces individuals to travel and submit to courthouse security screenings, which often include intrusive searches unrelated to proceedings.

584.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation  from enabling warrantless searches, compelled disclosures, and unreasonable seizures.

585.     The licensing, discipline, and access systems described above violate the Fourth Amendment by forcing disclosure of private records in character & fitness investigations, compelling attorneys to produce private or privileged client information in disciplinary proceedings without judicial oversight, permitting county bar committees to seize billing records in fee disputes without statutory authority, imposing blanket bans on cell phones that operate as generalized seizures without probable cause, and conditioning participation in court on invasive searches unrelated to litigation.

586.     A real and substantial controversy exists regarding whether thecurrent system of attorney, judicial and court regulation  violate the Fourth Amendment.

587.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional searches and seizures.

588.     Defendants have unlawfully burdened Fourth Amendment rights by compelling disclosures and imposing blanket device seizures without individualized suspicion or judicial process.

589.     Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections.

590.     Defendants act under color of state law to deprive Plaintiffs of their Fourth Amendment right to be free from unreasonable searches and seizures.

591.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the existing system of attorney, judicial and court regulation  violates the Fourth Amendment.

b. Issue a writ of mandamus compelling Defendants to restructure attorney licensing, discipline, and access systems to eliminate unconstitutional searches and seizures.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Prohibits warrantless disclosure of medical or personal records in character & fitness.

Requires neutral oversight before compelling attorney or client records in discipline or fee disputes.

Ensures courthouse security is narrowly tailored, not blanket seizures.

Protects remote participation to avoid unnecessary physical searches.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  45: Violations of the Fourth Amendment's prohibition against excessive force (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

592.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourth Amendment's prohibition against excessive force in ways that include, but are not limited to, the following:

593.     Discipline by fellow attorneys and self-reporting (H–I): Peer-discipline systems insulate prosecutors and government attorneys from accountability when they enable or defend excessive force by police, shielding misconduct from neutral review.

594.     Fee disputes by county bars (J): Limit independent challenges to attorney billing in civil-rights cases, chilling lawsuits addressing excessive force.

595.     Cell phone and recording bans (K): Prevent victims, attorneys, and the press from documenting incidents of excessive force in and around courthouses.

596.     Denial of remote appearances (L): Forces litigants, including excessive-force victims, to travel and expose themselves to hostile environments or law enforcement contact, heightening risk of intimidation or further abuse.

597.     The American Rule (M): Makes it financially prohibitive for victims of excessive force to bring claims, reducing deterrence.

598.     Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation  from perpetuating systems that shield or exacerbate excessive force.

599.     The licensing, discipline, and access systems described above violate the Fourth Amendment's excessive-force protections by shielding attorneys who defend excessive-force practices from independent oversight, retaliating against attorneys who bring excessive-force claims, preventing press and litigants from documenting force through recording bans, forcing unnecessary physical presence in adversarial environments, heightening exposure to intimidation, and making it cost-prohibitive for victims to vindicate their rights in court.

600.     A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation  unconstitutionally shield or perpetuate excessive force.

601.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fourth Amendment.

602.     Defendants have unlawfully burdened Fourth Amendment protections by maintaining systems that prevent accountability for excessive force.

603.     Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections against excessive force.

604.     Defendants act under color of state law to deprive Plaintiffs of their Fourth Amendment right to be free from excessive force, directly and indirectly, by shielding perpetrators and suppressing claims.

605.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation violates the

Fourth Amendment's prohibition on excessive force.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure accountability for excessive-force enablers.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Establishes independent disciplinary oversight of government attorneys.

Protects attorneys from retaliation when they bring excessive-force claims.

Guarantees public documentation of force-related proceedings.

Permits remote access to reduce unnecessary exposure to hostile environments.

Provides fee-shifting or other mechanisms to allow victims to pursue claims.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.


Cause of Action  46: Violations of the Fourth Amendment's prohibition against unlawful arrest (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

606.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourth Amendment's prohibition against unlawful arrest in ways that include, but are not limited to, the following:

607.     Character & fitness requirements (D, G): Applicants are penalized for prior arrests or charges regardless of dismissal or lack of conviction, treating mere encounters with law enforcement as disqualifying.

608.     Discipline by fellow attorneys and self-reporting (H–I): Attorneys who challenge unlawful arrests or police misconduct risk retaliatory discipline, suppressing accountability.

609.     Cell phone and recording bans (K): Prevent citizens and attorneys from recording or documenting unlawful arrests in courthouses or related proceedings.

610.     Denial of remote appearances (L): Forces litigants to travel to hostile jurisdictions where risk of arrest is higher, rather than participating safely through remote means.

611.     The American Rule (M): Chills litigation challenging unlawful arrests, because victims must bear their own legal costs even if successful.

612.     Plaintiffs seek declaratory, mandamus, and § 1983 relief to the current system of attorney, judicial and court regulation from enabling systems that foster or fail to check unlawful arrests.

613.     The licensing, discipline, and access systems described above violate the Fourth Amendment's prohibition against unlawful arrest by treating non-conviction arrest

records as disqualifying or relevant in character & fitness, retaliating against attorneys who litigate unlawful arrest claims, blocking documentation of arrests in and around courthouses, forcing litigants into unsafe environments by denying remote participation, and making it prohibitively expensive to challenge unlawful arrests under the American Rule.

614.    A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation burden protections against unlawful arrest.

615.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fourth Amendment.

616.    Defendants have unlawfully burdened Fourth Amendment rights by maintaining systems that penalize individuals for mere arrests and suppress accountability for unlawful arrests.

617.    Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with constitutional protections against unlawful arrest.

618.    Defendants act under color of state law to deprive Plaintiffs of their Fourth Amendment rights by delegating power to bodies that penalize arrests without convictions and retaliate against challenges to unlawful arrests.

619.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation  violates the Fourth Amendment's prohibition against unlawful arrest.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional reliance on arrests without convictions and retaliation against those who challenge unlawful arrests.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Prohibits character & fitness inquiries into mere arrest records.

Protects attorneys who litigate unlawful arrest claims.

Ensures public documentation of arrest-related proceedings.

Provides safe and remote participation options for litigants.

Reforms fee rules to make litigation of unlawful arrests feasible.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  46: Violations of the Fifth Amendment's guarantee that no person shall be deprived of life, liberty, or property without due process of law (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

620.    The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fifth Amendment's guarantee that no person shall be deprived of life, liberty, or property without due process of law in ways that include, but are not limited to, the following:

621.    Licensing monopolies (A–G): Deny liberty and property interests in pursuing a lawful occupation, without legislative safeguards.

622.    Character & fitness requirements (D, G): Force disclosure of private information, including medical and mental health records, with no clear standards or appeal, depriving applicants of liberty and privacy without due process

623.    Discipline by fellow attorneys and self-reporting (H–I): Subject attorneys to retaliation and arbitrary proceedings before biased peers, without independent review.

624.    Fee disputes by county bars (J): Force clients into peer-controlled committees without neutral adjudication, depriving them of property rights in their fees.

625.    Cell phone and recording bans (K): Deny the public procedural access to monitor government proceedings.

626.    Denial of remote appearances (L): Deprives individuals of meaningful opportunity to be heard in court.

627.    The American Rule (M): Effectively denies access to judicial remedies by making it prohibitively costly to litigate.

628.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to end these unconstitutional deprivations.

629.    The licensing, discipline, and access systems described above deprive individuals of liberty, property, and privacy without due process by enforcing monopolies on speech and advocacy, conditioning bar admission on arbitrary disclosures and approvals, using biased, peer-run disciplinary systems, forcing fee disputes into non-neutral private associations, restricting procedural transparency in courthouses, denying remote participation in proceedings, and making litigation prohibitively expensive under the American Rule.

630.    A real and substantial controversy exists regarding whether the the current system of attorney, judicial and court regulation   the current system of attorney, judicial and court regulation  deprive individuals of liberty, property, and privacy without due process.

631.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fifth Amendment's Due Process Clause.

632.    Defendants have unlawfully deprived Plaintiffs and others of liberty, property, and privacy without due process.

633.    Mandamus is proper to compel Defendants to restructure attorney regulation to provide constitutional protections.

634.    Defendants act under color of state law to deprive Plaintiffs of their Fifth Amendment rights to liberty, property, and privacy without due process.

635.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation the current system of attorney, judicial and court regulation , violates the Fifth Amendment's Due Process Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure fair and neutral procedures.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Provides clear statutory standards for licensing and discipline.

Protects privacy in character & fitness inquiries.

Ensures neutral adjudication of fee disputes.

Guarantees transparency and access in court proceedings.

Provides fair cost rules for litigation so rights can be vindicated.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  47: Violations of the Fifth Amendment's guarantee against self-incrimination (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

636.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fifth Amendment's guarantee against self-incrimination in ways that include, but are not limited to, the following:

637.    Character & fitness requirements (D, G): Applicants are required to disclose arrests, charges, and past conduct that may amount to compelled self-incrimination, even if unrelated to fitness to practice law.

638.    Discipline by fellow attorneys and self-reporting (H–I): Attorneys are compelled to report not only others' alleged misconduct but also their own, under threat of discipline for silence.

639.    Fee dispute processes (J): Attorneys may be required to admit potentially incriminating financial practices in front of peer committees with no immunity protections.

640.    Cell phone and recording bans (K): Prevent attorneys and the public from documenting proceedings that could otherwise provide protection against coerced self-incrimination.

641.    Denial of remote appearances (L): Forces physical attendance in settings where compelled questioning may occur, without safeguards for constitutional rights.

642.     Plaintiffs seek declaratory, mandamus, and § 1983 relief to end unconstitutional practices that compel self-incrimination under the current system of attorney, judicial and court regulation.

643.     The licensing, discipline, and access systems described above violate the Fifth Amendment by forcing applicants to disclose prior arrests and personal conduct in character & fitness evaluations, compelling attorneys to self-report potential misconduct to disciplinary authorities, requiring incriminating financial disclosures in fee disputes, blocking access to recordings that could protect against coerced statements, and forcing physical presence at disciplinary hearings where coerced questioning occurs without proper safeguards.

644.     A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation self-incrimination in violation of the Fifth Amendment.

645.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional.

646.     Defendants have unlawfully compelled disclosures by maintaining licensing, discipline, and fee structures that force individuals to incriminate themselves.

647.     Mandamus is proper to compel Defendants to restructure attorney regulation to eliminate compelled self-incrimination

648.     Defendants act under color of state law to deprive Plaintiffs of their Fifth Amendment right against self-incrimination.

649.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation,  violates the Fifth Amendment's Self-Incrimination Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate compelled disclosures and protect against coerced statements.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Prohibits compelled disclosure of prior arrests or personal conduct in character & fitness.

Eliminates mandatory self-reporting requirements that force attorneys to incriminate themselves.

Provides immunity protections in fee disputes and disciplinary proceedings.

Allows public documentation to protect against coerced testimony.

Provides remote access options to avoid unnecessary compelled questioning.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  48: Violations of the Fifth Amendment's guarantee against double jeopardy (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

650.      The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fifth Amendment's guarantee against double jeopardy in ways that include, but are not limited to, the following:

651.      Character & fitness requirements (D, G): Applicants are re-penalized for past arrests, charges, or discipline that were already resolved in other forums.

652.      Discipline by fellow attorneys and self-reporting (H–I): Attorneys may face repeated investigations and punishments for the same underlying conduct, since self-regulation allows multiple overlapping bodies (peer boards, self-reporting obligations, county bar committees).

653.      Fee dispute processes (J): Attorneys may be subjected to fee dispute sanctions by county bar committees even after the same conduct was addressed in disciplinary proceedings.

654.      Cell phone and recording bans (K): Restricting public documentation prevents accountability when attorneys are repeatedly sanctioned for the same actions.

655.      The American Rule (M): By forcing litigants to bear costs in multiple proceedings, the system compounds penalties for the same conduct.

656.      Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation from subjecting individuals to multiple punishments for the same offense.

657.      The licensing, discipline, and access systems described above violate the Double Jeopardy Clause by re-penalizing individuals for arrests or charges already resolved elsewhere, subjecting attorneys to multiple overlapping disciplinary proceedings for the same conduct, forcing duplicative fee dispute and disciplinary actions, suppressing public oversight, enabling repeated punishments without accountability, and imposing cumulative financial penalties through the American Rule

658.      A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation unconstitutionally subject individuals to multiple punishments for the same conduct.

659.      Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Double Jeopardy Clause of the Fifth Amendment.

660.      Defendants have unlawfully burdened Fifth Amendment protections by maintaining systems that re-penalize individuals for the same conduct across multiple forums.

661.      Mandamus is proper to compel Defendants to restructure attorney regulation to eliminate unconstitutional double punishment.

662.      Defendants act under color of state law to deprive Plaintiffs of their Fifth Amendment protection against double jeopardy.

663.      Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation violates the Fifth Amendment's Double Jeopardy Clause.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to prevent multiple punishments for the same offense.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Bars consideration of arrests or charges already resolved.

Prevents overlapping disciplinary and fee dispute proceedings for the same conduct.

Ensures public oversight to prevent duplicative sanctions.

Reforms fee structures so litigants are not punished multiple times through costs.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action  49: Violations of the Fifth Amendment's Takings Clause (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)</u>

664.      The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fifth Amendment's Takings Clause in ways that include, but are not limited to, the following:

665.      Licensing monopolies (A–G): Prevent individuals from using their own knowledge and labor to provide legal services, effectively taking their livelihood for the benefit of licensed attorneys.

666.      Discipline by fellow attorneys and self-reporting (H–I): Enable confiscation of client files, suspension of practice, and destruction of goodwill without compensation.

667.      Fee dispute processes (J): Allow county bar associations to reallocate client funds or attorney fees without neutral state authority or compensation.

668.      Cell phone and recording bans (K): Function as uncompensated seizures of private devices in courthouses.

669.      The American Rule (M): Operates as a systemic taking of litigants' resources by forcing them to bear unrecoverable costs for public adjudication, enriching the bar while denying compensation.

670.      Plaintiffs seek declaratory, mandamus, and § 1983 relief to the current system of attorney, judicial and court regulation systems that unconstitutionally take property without just compensation.

671.      The licensing, discipline, and access systems described above violate the Takings Clause by forcing individuals to relinquish their right to earn a living through legal speech and services, seizing or devaluing client property and attorney goodwill in

discipline without compensation, permitting private associations to reallocate funds in fee disputes without statutory authority, confiscating personal devices in courthouses without compensation, and imposing systemic financial extractions on litigants under the American Rule.

672.      A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation unconstitutionally take property without just compensation.

673.      Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fifth Amendment's Takings Clause.

674.      Defendants have unlawfully taken property without just compensation by maintaining licensing, discipline, and access structures that seize or devalue private rights.

675.      Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with the Takings Clause.

676.      Defendants act under color of state law to deprive Plaintiffs of their Fifth Amendment right to just compensation when property is taken for public use.

677.      Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation violates the Fifth Amendment's Takings Clause.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to prevent uncompensated takings.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Ensures livelihoods and goodwill are not confiscated without compensation.

Requires neutral adjudication of fee disputes with compensation standards.

Prohibits confiscation of devices without lawful process or compensation.

Reforms litigation cost structures to prevent systemic takings under the American Rule.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.

Cause of Action 50: Violations of the Sixth Amendment's Right to Counsel
(Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary
Board)

678.      The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Sixth Amendment's Right to Counsel  in ways that include, but are not limited to, the following:

679.        Licensing monopolies (A–G): Restrict who may serve as defense counsel, limiting defendants' choice of advocate to those admitted through arbitrary requirements (law school, bar exam, character & fitness).

680.        Discipline by fellow attorneys and self-reporting (H–I): Chill zealous advocacy by threatening discipline against attorneys who vigorously defend unpopular clients.

681.        Fee dispute processes (J): Deter attorneys from representing indigent or controversial defendants when peer-run bar committees can strip them of compensation.

682.        Cell phone and recording bans (K): Deny counsel tools needed to document and present evidence in defense.

683.        Denial of remote appearances (L): Prevent attorneys from providing representation when physical appearance is impossible, leaving defendants without counsel.

684.        The American Rule (M): Discourages attorneys from defending constitutional rights when prevailing clients cannot recover fees.

685.        Plaintiffs seek declaratory, mandamus, and § 1983 relief to the current system of attorney, judicial and court regulation from undermining the Sixth Amendment right to counsel.

686.        The licensing, discipline, and access systems described above violate the Sixth Amendment by denying criminal defendants the advocate of their choice, restricting the defense bar to those who comply with arbitrary requirements, discouraging zealous advocacy through retaliatory discipline, preventing counsel from using tools of modern representation (recordings, remote appearances), and limiting the ability of criminal defendants to access the Courts to remedy constitutional violations under the American Rule.

687.        A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation  unconstitutionally burden the right to counsel.

688.        Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Sixth Amendment.

689.        Defendants have unlawfully burdened the right to counsel by maintaining licensing, discipline, and access systems that deny defendants meaningful representation.

690.        Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with the Sixth Amendment.

691.        Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to the assistance of counsel.

692.        Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation ,  violates the Sixth Amendment right to counsel.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to

ensure meaningful assistance of counsel.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Permits defendants to choose qualified advocates without monopolistic barriers.

Protects defense attorneys from retaliation for zealous representation.

Provides tools such as recordings and remote appearances for effective defense.

Reforms fee structures to make criminal defense sustainable.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  51: Violations of the Sixth Amendment's Right to a Speedy Trial (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

693.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Sixth Amendment's Right to a Speedy Trial in ways that include, but are not limited to, the following:

694.    Licensing monopolies (A–G): Restrict the pool of available defense counsel, causing systemic delays when defendants cannot find representation due to arbitrary entry barriers.

695.    Discipline by fellow attorneys and self-reporting (H–I): Chill attorneys from taking on difficult or politically sensitive cases, further slowing the defense pipeline.

696.    Fee dispute processes (J): Discourage attorneys from representing indigent or controversial clients, contributing to case backlogs.

697.    Cell phone and recording bans (K): Restrict defendants' ability to document or prove delay-related prejudice, depriving them of evidence for speedy trial motions.

698.    Denial of remote appearances (L): Forces postponements when travel is not possible, even though remote participation could prevent delay.

699.    The American Rule (M): Deters defense counsel from challenging trial delays, since costs are unrecoverable even when constitutional rights are vindicated.

700.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation  from perpetuating systems that deny the constitutional right to a speedy trial.

701.    The licensing, discipline, and access systems described above undermine the Sixth Amendment right to a speedy trial by reducing the availability of defense counsel, chilling zealous representation in politically sensitive or unpopular cases, discouraging lawyers from representing clients who may require extended advocacy, restricting access to documentation of prejudice caused by delays, forcing unnecessary continuances by

denying remote access, and imposing unrecoverable costs that deter challenges to unconstitutional trial delays.

702.        A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation  unconstitutionally burden the right to a speedy trial.

703.        Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Sixth Amendment.

704.        Defendants have unlawfully maintained licensing, discipline, and access systems that cause unconstitutional delays in criminal trials.

705.        Mandamus is proper to compel Defendants to restructure attorney regulation to ensure compliance with the Sixth Amendment.

706.        Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to a speedy trial.

707.        Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation ,  violates the Sixth Amendment right to a speedy trial.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to prevent systemic delays.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands access to counsel without arbitrary monopolistic barriers.

Protects attorneys from retaliation when challenging delay.

Allows documentation and recordings to prove prejudice from delay.

Provides remote participation options to prevent unnecessary continuances.

Reforms fee rules so challenges to delay are economically feasible.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  52: Violations of the Sixth Amendment's Right to a Public Trial (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

708.        The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Sixth Amendment's Right to a Public Trial in ways that include, but are not limited to, the following:

709.        Licensing monopolies (A–G): Restrict who may appear in court or report on proceedings, limiting transparency and public participation.

710.      Discipline by fellow attorneys and self-reporting (H–I): Retaliate against attorneys who speak publicly about judicial misconduct or corruption, deterring scrutiny of trials.

711.      Fee dispute committees (J): Conceal financial arrangements that affect criminal defense work by resolving disputes in private, peer-run forums.

712.      Cell phone and recording bans (K): Block public observation and press reporting by banning recordings in courthouses.

713.      Denial of remote appearances (L): Prevent broader public access to trials that could be observed remotely.

714.      The American Rule (M): Makes public-interest litigation challenging secrecy prohibitively expensive.

715.      Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation from violating the right to a public trial.

716.      A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation violates the right to a public trial.

717.      Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices are unconstitutional restrictions on public trial rights.

718.      Defendants have unlawfully restricted public trial rights by maintaining licensing, discipline, and access structures that reduce transparency.

719.      Mandamus is proper to compel Defendants to restructure attorney regulation to ensure compliance with the Sixth Amendment

720.      Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to a public trial.

721.      Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.


Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation ,  violates the Sixth Amendment right to a public trial.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure transparency and public access.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands public and press access to proceedings.

Protects attorneys from retaliation for speaking publicly about misconduct.

Requires neutral resolution of disputes that affect courtroom participation.

Permits recording and remote observation of trials.

Reforms fee rules to support litigation that protects public access.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action 53: Violations of the Sixth Amendment's Right to an Impartial Jury (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

722.　　The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Sixth Amendment's Right to an Impartial Jury in ways that include, but are not limited to, the following:

723.　　Licensing monopolies (A–G): Restrict who may challenge biased jury selection, since only licensed attorneys may represent defendants in voir dire and related motions.

724.　　Discipline by fellow attorneys and self-reporting (H–I): Chill defense attorneys from aggressively challenging prosecutorial misconduct or biased jury pools, for fear of retaliation.

725.　　Fee dispute committees (J): Undermine public trust by keeping financial conflicts in jury-related defense work hidden in peer-run forums.

726.　　Cell phone and recording bans (K): Prevent public and press monitoring of jury selection and proceedings, undermining transparency.

727.　　Denial of remote appearances (L): Prevent broader oversight of jury proceedings, shielding bias from scrutiny.

728.　　The American Rule (M): Makes it prohibitively expensive for defendants to litigate claims of jury bias or misconduct.

729.　　Plaintiffs seek declaratory, mandamus, and § 1983 relief to prevent the current system of attorney, judicial and court regulation from perpetuating unconstitutional barriers to impartial juries.

730.　　The licensing, discipline, and access systems described above undermine the right to an impartial jury by limiting who can advocate for defendants during jury selection, retaliating against attorneys who challenge prosecutorial or judicial bias, keeping financial conflicts that affect defense hidden from the public, suppressing public oversight of jury selection through recording bans, denying remote observation of jury proceedings, and imposing unrecoverable costs that chill litigation of jury-bias claims.

731.　　A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation unconstitutionally burden the right to an impartial jury.

732.　　Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Sixth Amendment.

733.　　Defendants have unlawfully undermined impartial jury protections by maintaining monopolistic and retaliatory systems.

734.　　Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with the Sixth Amendment.

735.    Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to an impartial jury.

736.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation , violates the Sixth Amendment right to an impartial jury.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to protect impartial jury rights.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands access to advocates during jury selection.

Protects attorneys from retaliation when challenging bias.

Requires transparency in financial conflicts affecting jury trials.

Permits public documentation and remote observation of jury proceedings.

Reforms fee rules so challenges to jury bias are feasible.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action  54: Violations of the Eighth Amendment's prohibition on cruel and unusual punishments (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)</u>

737.    The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Eighth Amendment's prohibition on cruel and unusual punishments in ways that include, but are not limited to, the following:

738.    Licensing monopolies (A–G): Restrict access to legal representation for incarcerated and indigent individuals, exposing them to harsher punishments.

739.    Discipline by fellow attorneys and self-reporting (H–I): Chill advocacy against inhumane prison conditions or abusive sentencing practices, leaving cruel punishments unchallenged.

740.    Fee dispute processes (J): Discourage attorneys from taking prison-condition or sentencing cases by exposing them to retaliatory fee disputes.

741.    Cell phone and recording bans (K): Prevent attorneys, the press, and the public from documenting inhumane conditions or treatment in courthouses and detention facilities.

742.    Denial of remote appearances (L): Blocks testimony and advocacy from incarcerated or disabled individuals challenging cruel conditions.

743.     The American Rule (M): Makes it financially prohibitive for prisoners to litigate against unconstitutional punishments.

744.     Plaintiffs seek declaratory, mandamus, and § 1983 relief to ensure that the current system of attorney, judicial and court regulation does not shield or perpetuate cruel and unusual punishment.

745.     The licensing, discipline, and access systems described above violate the Eighth Amendment by denying adequate defense counsel, leading to harsher punishments, retaliating against attorneys who litigate cruel prison conditions, forcing attorneys into retaliatory fee disputes that discourage Eighth Amendment litigation, preventing public documentation of prison conditions or abusive treatment, blocking testimony of incarcerated individuals through denial of remote access, and imposing unrecoverable costs that chill litigation of Eighth Amendment claims.

746.     A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation perpetuate cruel and unusual punishments.

747.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Eighth Amendment.

748.     Defendants have unlawfully burdened Eighth Amendment protections by maintaining systems that chill litigation against cruel punishments and block access to remedies.

749.     Mandamus is proper to compel Defendants to restructure attorney regulation to allow meaningful challenges to inhumane treatment.

750.     Defendants act under color of state law to deprive Plaintiffs of their Eighth Amendment right to be free from cruel and unusual punishments by perpetuating barriers to litigation and suppressing accountability.

751.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation , violates the Eighth Amendment's prohibition on cruel and unusual punishments.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure access to remedies for cruel punishments.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands access to legal advocates challenging prison conditions and sentencing.

Protects attorneys from retaliation for bringing Eighth Amendment claims.

Requires transparency in fee disputes affecting criminal defense.

Permits recording and remote testimony in prison-condition cases.

Reforms fee rules so prisoners can pursue constitutional claims.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action  55: Violations of the Eighth Amendment's prohibition on excessive bail and excessive fines (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)</u>

752.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Eighth Amendment's prohibition on excessive bail and excessive fines in ways that include, but are not limited to, the following:

753.    Licensing monopolies (A–G): Reduce the pool of available defense counsel, weakening challenges to excessive bail and fines.

754.    Discipline by fellow attorneys and self-reporting (H–I): Deter lawyers from challenging judges or prosecutors on bail and fine practices, for fear of retaliation.

755.    Fee dispute processes (J): Discourage attorneys from representing indigent clients facing bail and fine hearings, since compensation may be contested or withheld.

756.    Cell phone and recording bans (K): Suppress public oversight of bail hearings and fine determinations.

757.    Denial of remote appearances (L): Prevent timely challenges to bail and fines when defendants or attorneys cannot be physically present.

758.    The American Rule (M): Makes litigation against excessive bail or fines prohibitively costly.

759.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to ensure that the current system of attorney, judicial and court regulation  does not shield or perpetuate unconstitutional bail and fine practices.

760.    The licensing, discipline, and access systems described above perpetuate excessive bail and fines by limiting access to advocates who could challenge unconstitutional bail practices, retaliating against attorneys who aggressively contest bail and fine determinations, discouraging representation of indigent clients facing bail or fine hearings, suppressing transparency by banning recordings of proceedings, preventing timely challenges when travel restrictions or illness bar attendance, and imposing unrecoverable costs that deter litigation against excessive bail and fines.

761.    A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation unconstitutionally perpetuates excessive bail and fines.

762.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Eighth Amendment.

763.    Defendants have unlawfully maintained systems that undermine challenges to excessive bail and fines.

764.    Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with the Eighth Amendment.

765.     Defendants act under color of state law to deprive criminal defendants of their Eighth Amendment protection against excessive bail and fines.

766.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

VI. PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation , violates the Eighth Amendment's prohibition on excessive bail and fines.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure meaningful challenges to excessive bail and fines.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands access to advocates for bail and fine hearings.

Protects attorneys from retaliation when contesting bail and fines.

Provides transparency and documentation of proceedings.

Allows remote participation to avoid unnecessary delay or denial of hearings.

Reforms fee structures so litigation against unconstitutional bail and fines is economically feasible.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  56: Violations of the Fourteenth Amendment's Equal Protection Clause,  (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

767.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourteenth Amendment's Equal Protection Clause, in ways that include, but are not limited to, the following:

768.     Licensing monopolies (A–G): Exclude individuals from practicing law based on wealth, education, or disability, creating systemic inequality in access to the legal profession.

769.     Character & fitness requirements (D, G): Discriminate against individuals with medical conditions, mental health histories, or prior arrests that do not result in convictions.

770.     Discipline by fellow attorneys and self-reporting (H–I): Permit selective enforcement and retaliation, disproportionately harming critics, whistleblowers, and minority attorneys.

771.     Fee dispute committees (J): Allow unequal treatment of clients by resolving disputes through peer-controlled county bar associations rather than neutral tribunals.

772.      Cell phone and recording bans (K): Deny the public equal access to observe judicial proceedings, reinforcing secrecy.

773.      Denial of remote appearances (L): Unequally burdens poor, disabled, rural, and marginalized litigants who cannot travel.

774.      The American Rule (M): Disproportionately prevents indigent individuals and nonprofits from enforcing their rights in court.

775.      Plaintiffs seek declaratory, mandamus, and § 1983 relief to remedy these systemic equal protection violations.

776.      The licensing, discipline, and access systems described above violate the Equal Protection Clause by creating wealth-based and education-based barriers to entering the legal profession, penalizing applicants for medical or mental health histories, retaliating selectively against attorneys who challenge authority, denying clients equal access to neutral resolution of fee disputes, preventing public oversight of trials and hearings through recording bans, disadvantaging poor, disabled, or rural litigants who cannot appear in person, and chilling indigent individuals from vindicating rights by forcing them to bear their own legal costs.

777.      A real and substantial controversy exists regarding whether thecurrent system of attorney, judicial and court regulation  unconstitutionally deny equal protection of the laws.

778.      Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Equal Protection Clause.

779.      Defendants have unlawfully denied equal protection by maintaining systems that discriminate based on wealth, status, disability, and viewpoint.

780.      Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with equal protection guarantees.

781.      Defendants act under color of state law to deprive Plaintiffs and similarly situated individuals of their Fourteenth Amendment right to equal protection of the laws.

782.      Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

VI. PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation ,  violates the Equal Protection Clause of the Fourteenth Amendment.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate discriminatory practices.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Removes wealth, education, and disability barriers from licensing.

Protects individuals with medical histories from discrimination.

Ensures neutral resolution of fee disputes.

72

Expands public access to trials through recordings and remote participation.

Provides fee-shifting or financial protections for indigent litigants.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

<u>Cause of Action  56: Violations of the Fourteenth Amendment's Substantive Due Process
guarantee (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and
Disciplinary Board)</u>

783.      The  current system of attorney, judicial, and court regulation, created by lawyers,
harms the public and violates the Fourteenth Amendment's Substantive Due Process
guarantee in ways that include, but are not limited to, the following:

784.      Licensing monopolies (A–G): Burden the fundamental right to pursue a lawful
occupation and engage in protected speech, without narrow tailoring or compelling
justification.

785.      Character & fitness requirements (D, G): Intrude into privacy, medical autonomy,
and liberty interests through compelled disclosure of personal information.

786.      Discipline by fellow attorneys and self-reporting (H–I): Chill whistleblowing,
advocacy, and association, violating liberty interests in self-expression and professional
autonomy.

787.      Fee dispute committees (J): Deny clients meaningful property rights in their funds
by diverting disputes into private peer-run forums.

788.      Cell phone and recording bans (K): Suppress liberty interests in public
accountability and transparency.

789.      Denial of remote appearances (L): Deny access to courts for individuals who
cannot travel, infringing liberty and due process.

790.      The American Rule (M): Makes it prohibitively expensive to vindicate
fundamental rights, undermining substantive liberty protections.

791.      Plaintiffs seek declaratory, mandamus, and § 1983 relief to remedy these
infringements.

792.      The licensing, discipline, and access systems described above violate substantive
due process by denying fundamental rights to pursue lawful work and advocacy,
intruding into private medical and personal information without compelling justification,
chilling liberty interests in speech, association, and whistleblowing, denying property
rights in client funds, suppressing transparency and public accountability, denying access
to courts through refusal of remote appearances, and imposing systemic financial burdens
that deter enforcement of rights.

793.      A real and substantial controversy exists regarding whether  thecurrent system of
attorney, judicial and court regulation  unconstitutionally infringe fundamental rights
protected by substantive due process.

794.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fourteenth Amendment.

795.     Defendants have unlawfully infringed substantive liberty interests by maintaining the current system of attorney, judicial and court regulation  systems without compelling justification or safeguards.

796.     Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with substantive due process.

797.     Defendants act under color of state law to deprive Plaintiffs of liberty and property interests protected by substantive due process.

798.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation violates the Fourteenth Amendment's substantive due process protections.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional infringements on liberty and property interests.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Protects fundamental rights to work, speak, and associate.

Prohibits intrusive medical and personal disclosures absent compelling need.

Ensures neutral adjudication of fee disputes.

Expands public accountability through recordings and remote access.

Provides fee-shifting or other financial protections to enable enforcement of rights.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.


Cause of Action  58: Violations of the Fourteenth Amendment's Procedural Due Process guarantee  (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

799.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourteenth Amendment's Procedural Due Process guarantee in ways that include, but are not limited to, the following:

800.     Licensing monopolies (A–G): Condition entry into a lawful occupation on opaque standards without notice, hearings, or meaningful appeal.

801.     Character & fitness requirements (D, G): Compel disclosure of private information with vague criteria and arbitrary decision-making, lacking clear procedures.

802.    Discipline by fellow attorneys and self-reporting (H–I): Subject attorneys to biased, peer-run proceedings without neutral adjudicators or procedural safeguards.

803.    Fee dispute committees (J): Resolve disputes through county bar associations without statutory authority, transparency, or procedural protections for clients or attorneys.

804.    Cell phone and recording bans (K): Deprive the public and parties of tools necessary to ensure fair procedure and accurate records.

805.    Denial of remote appearances (L): Exclude parties from hearings entirely if they cannot appear physically, denying procedural access.

806.    The American Rule (M): Makes it economically impossible to pursue claims, effectively denying a hearing on the merits.

807.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to remedy these systemic due process violations. The licensing, discipline, and access systems described above violate procedural due process by denying notice and hearings before depriving individuals of the right to work, using vague and arbitrary criteria in character & fitness evaluations, subjecting individuals to biased peer-run disciplinary forums, diverting fee disputes into opaque bar-run committees, blocking transparency through device and recording bans, denying remote participation in proceedings, and imposing prohibitive costs that prevent hearings on the merits.

808.    A real and substantial controversy exists regarding whether  the current system of attorney, judicial and court regulation  deny procedural due process.

809.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Fourteenth Amendment.

810.    Defendants have unlawfully deprived Plaintiffs and others of life, liberty, and property without fair procedure.

811.    Mandamus is proper to compel Defendants to restructure attorney regulation to provide adequate procedural safeguards.

812.    Defendants act under color of state law to deprive Plaintiffs of their Fourteenth Amendment right to procedural due process.

Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation ,  violates the Fourteenth Amendment's guarantee of procedural due process.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to ensure procedural protections.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Provides notice and hearings with impartial adjudicators.

Establishes clear, legislated standards for licensing and discipline.

Resolves fee disputes through neutral tribunals.

Permits public access through recordings and remote participation.

Reforms fee rules to make hearings economically feasible.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.


Cause of Action   59: Violations of the Ninth Amendment (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

813.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Ninth Amendment in ways that include, but are not limited to, the following:

814.     Licensing monopolies (A–G): Suppress the right to pursue a chosen occupation, a liberty retained by the people even if not expressly listed in the Constitution.

815.     Character & fitness requirements (D, G): Violate privacy and bodily autonomy by compelling disclosure of medical and personal information.

816.     Discipline by fellow attorneys and self-reporting (H–I): Chill freedom of conscience and moral independence, rights retained by the people beyond enumerated guarantees.

817.     Fee dispute committees (J): Deny clients' retained rights to fair dealing and access to justice by forcing disputes into non-neutral private forums.

818.     Cell phone and recording bans (K): Violate retained rights of transparency and accountability in public institutions.

819.     Denial of remote appearances (L): Disparage the retained right of meaningful access to courts despite technological capacity.

820.     The American Rule (M): Suppresses retained rights of redress by making litigation prohibitively costly.

821.     Plaintiffs seek declaratory, mandamus, and § 1983 relief to protect the unenumerated rights retained by the people from being disparaged or denied by the current system of attorney, judicial and court regulation.

822.     The licensing, discipline, and access systems described above violate the Ninth Amendment by disparaging liberty rights not expressly enumerated in the Constitution, forcing disclosure of private medical information, chilling conscience-based independence and whistleblowing, denying clients fair dispute resolution, blocking public transparency in judicial proceedings, excluding litigants from meaningful access through denial of remote appearances, and imposing financial barriers that nullify retained rights of redress.

823.     A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation deny or disparage rights retained by the people.

824.     Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Ninth Amendment.

825.     Defendants have unlawfully disparaged unenumerated rights by maintaining monopolistic licensing, arbitrary disclosures, and biased disciplinary systems.

826.     Mandamus is proper to compel Defendants to restructure attorney regulation to respect the Ninth Amendment.

827.     Defendants act under color of state law to deprive Plaintiffs of unenumerated rights retained by the people under the Ninth Amendment.

828.     Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation , violates the Ninth Amendment.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate violations of retained rights.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Respects occupational liberty and autonomy.

Protects privacy in personal and medical information.

Ensures fair resolution of disputes.

Expands public accountability and transparency.

Provides access to courts, including remote participation.

Reduces financial barriers so rights of redress are meaningful.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.

Cause of Action  60: Violations of Fourteenth Amendment's Privileges or Immunities Clause (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

829.     The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Fourteenth Amendment's Privileges or Immunities Clause in ways that include, but are not limited to, the following:

830.     Licensing monopolies (A–G): Restrict the right to pursue lawful occupations, a recognized privilege of national citizenship.

831.    Character & fitness requirements (D, G): Burden the right to travel and relocate between states, since individuals must resubmit intrusive disclosures when seeking admission in multiple jurisdictions.

832.    Discipline by fellow attorneys and self-reporting (H–I): Chill attorneys from exercising rights of speech and petition tied to national citizenship by retaliating against critics and whistleblowers.

833.    Fee dispute committees (J): Prevent equal economic opportunity in the practice of law by forcing disputes into non-neutral county bar associations.

834.    Cell phone and recording bans (K): Burden transparency and accountability in courts, rights essential to public citizenship.

835.    Denial of remote appearances (L): Disproportionately harms interstate litigants and attorneys, abridging their ability to participate fully in the judicial system.

836.    The American Rule (M): Discourages citizens from vindicating fundamental rights in federal courts, undermining privileges of national citizenship.

837.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to ensure that the current system of attorney, judicial and court regulation  does not abridge the privileges or immunities of United States citizens.The licensing, discipline, and access systems described above violate the Privileges or Immunities Clause by denying U.S. citizens the right to pursue lawful occupations without monopolistic barriers, burdening interstate mobility and the right to travel through duplicative licensing regimes, retaliating against citizens for exercising rights of speech and petition, blocking equal opportunity in economic life through biased fee dispute processes, suppressing transparency and public accountability in courts, denying remote access to interstate participants, and imposing prohibitive financial costs that deter citizens from enforcing rights in federal courts.

838.    A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation  unconstitutionally abridge privileges or immunities of U.S. citizens.

839.    Plaintiffs seek a declaration under 28 U.S.C. § 2201 that these practices violate the Privileges or Immunities Clause.

840.    Defendants have unlawfully abridged privileges and immunities by maintaining monopolistic licensing, discriminatory character & fitness inquiries, and biased disciplinary systems.
20. Mandamus is proper to compel Defendants to restructure attorney regulation in compliance with the Fourteenth Amendment.

841.    Defendants act under color of state law to deprive Plaintiffs of privileges and immunities of national citizenship.

842.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation ,  violates the Fourteenth Amendment's Privileges or Immunities Clause.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to eliminate unconstitutional abridgments.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Expands occupational access for U.S. citizens.

Protects the right to interstate mobility without duplicative licensing.

Safeguards speech and petition rights against retaliation.

Ensures fair and neutral resolution of economic disputes.

Permits transparency through recordings and remote access.

Provides fair cost rules to enable enforcement of federal rights.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action 61: Violations of Article I, Section 7 of the Pennsylvania Constitution, (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

843.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates the Article I, Section 7 of the Pennsylvania Constitution, in ways that include, but are not limited to, the following:

844.    Licensing monopolies (A–G): Restrict who may speak about or advise on legal matters, censoring entire categories of speech.

845.    Character & fitness requirements (D, G): Chill expressive association and require disclosure of personal beliefs and histories, limiting speech rights.

846.    Discipline by fellow attorneys and self-reporting (H–I): Punish or deter attorneys from whistleblowing, criticizing bar authorities, or speaking to the press.

847.    Fee dispute committees (J): Restrict open communication between attorneys and clients about billing and representation.

848.    Cell phone and recording bans (K): Block the public and press from documenting judicial proceedings, suppressing transparency.

849.    Denial of remote appearances (L): Exclude broader public participation in court processes that should be open to all.

850.    The American Rule (M): Chills petitions and press-related claims by making litigation prohibitively costly.

851.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to vindicate Pennsylvania's broader constitutional protections of speech and press.

852.    The licensing, discipline, and access systems described above violate Article I, Section 7 of the Pennsylvania Constitution by suppressing speech and advice on legal

matters by nonlawyers, chilling speech through intrusive character & fitness inquiries, retaliating against attorneys for criticism, whistleblowing, and press engagement, blocking transparency by banning recordings and denying remote access, imposing costs that deter individuals from speaking through litigation.

853.    A real and substantial controversy exists regarding whether thecurrent system of attorney, judicial and court regulation violate Pennsylvania's broader constitutional protections for speech and press.

854.    Plaintiffs seek a declaration that these practices are unconstitutional under Article I, Section 7.

855.    Defendants have unlawfully restricted Pennsylvania citizens' broader speech and press rights.

856.    Mandamus is proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 7.

857.    Defendants act under color of state law to deprive Plaintiffs of rights guaranteed by the Pennsylvania Constitution, which provides broader speech protections than the federal Constitution.

858.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

VI. PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation , violates Article I, Section 7 of the Pennsylvania Constitution.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to comply with Pennsylvania's broad free speech and press protections.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Protects citizens' right to freely speak, write, and print on any subject.

Eliminates retaliation against whistleblowers and critics.

Ensures transparency by permitting recording and remote access.

Reforms fee rules so litigation does not suppress speech.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Cause of Action  62: Violations of Article I, Section 1 of the Pennsylvania Constitution, (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

859.    Article I, Section 1 of the Pennsylvania Constitution declares that "All men are born equally free and independent, and have certain inherent and indefeasible rights,

among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

860.    This provision establishes positive entitlements to liberty, property, and due process independent of federal interpretations.

861.    The current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates Article I, Section 1 of the Pennsylvania Constitution, in ways that include, but are not limited to, the following:

862.    Licensing monopolies (A–G): Deny the inherent right to pursue a lawful calling and acquire property through one's labor.

863.    Character & fitness requirements (D, G): Intrude on liberty and reputation by forcing disclosure of personal histories and treating prior arrests or conditions as disqualifications.

864.    Discipline by fellow attorneys and self-reporting (H–I): Retaliate against those defending liberty and reputation through whistleblowing or advocacy.

865.    Fee dispute committees (J): Deny clients and attorneys the right to protect their property in earned fees by diverting disputes to biased, private bodies.

866.    Cell phone and recording bans (K): Block public defense of liberty and reputation through transparency and oversight.

867.    Denial of remote appearances (L): Exclude individuals from defending liberty and property when they cannot physically attend proceedings.

868.    The American Rule (M): Makes defense of liberty and reputation prohibitively expensive.

869.    Plaintiffs seek declaratory, mandamus, and § 1983 relief to enforce the Pennsylvania Constitution's guarantee of inherent and indefeasible rights.

870.    The licensing, discipline, and access systems described above violate Article I, Section 1 by blocking the pursuit of lawful occupations, intruding into personal liberty and reputation through arbitrary disclosures, retaliating against whistleblowers defending liberty and reputation, diverting property disputes into biased bar-run committees, suppressing transparency through bans on documentation, denying participation when physical presence is impossible, and imposing prohibitive financial burdens on the exercise of inherent rights.

871.    A real and substantial controversy exists regarding whether the current system of attorney, judicial and court regulation violates the inherent and indefeasible rights guaranteed by Article I, Section 1.

872.    Plaintiffs seek a declaration that these practices are unconstitutional.

873.    Defendants have unlawfully deprived Pennsylvania citizens of inherent rights by maintaining monopolistic licensing and biased disciplinary and access systems.

874.    Mandamus is proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 1.

875.    Defendants act under color of state law to deprive Plaintiffs of rights guaranteed by Article I, Section 1 of the Pennsylvania Constitution.

876.    Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:
a. Declare that the current system of attorney, judicial and court regulation , violates Article I, Section 1 of the Pennsylvania Constitution.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to protect inherent and indefeasible rights.
c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Respects the right to pursue a lawful calling.

Protects liberty, reputation, and property from arbitrary intrusion.

Provides neutral adjudication of disputes.

Ensures transparency through recordings and remote access.

Reduces financial barriers so inherent rights can be meaningfully exercised.
d. Award declaratory relief under 28 U.S.C. § 2201.
e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.
f. Grant such other relief as the Court deems just and proper.

Cause of Action  63: Violations of Article I, Section 26 of the Pennsylvania Constitution (Pennsylvania General Assembly, Supreme Court of Pennsylvania, and Disciplinary Board)

877.    Article I, Section 26 of the Pennsylvania Constitution provides: *"Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."*

878.    This provision explicitly prohibits denial of civil rights by the Commonwealth or its subdivisions and is broader than the Equal Protection Clause of the U.S. Constitution.

879.    The  current system of attorney, judicial, and court regulation, created by lawyers, harms the public and violates Article I, Section 26 of the Pennsylvania Constitution in ways that include, but are not limited to, the following:

880.    Licensing monopolies (A–G): Deny citizens the civil right to pursue lawful occupations and to speak on legal matters.

881.    Character & fitness requirements (D, G): Discriminate against individuals based on health conditions, mental health histories, or prior arrests that did not result in convictions.

882.    Discipline by fellow attorneys and self-reporting (H–I): Deny civil rights of speech, petition, and association through selective enforcement and retaliation.

82

883.        Fee dispute committees (J): Deny clients the civil right to neutral adjudication of disputes over property and contracts.

884.        Cell phone and recording bans (K): Deny the public the civil right to open courts and government accountability.

885.        Denial of remote appearances (L): Deny the civil right of access to courts for those unable to attend physically.

886.        The American Rule (M): Disparately impacts indigent citizens by denying them effective access to courts.

887.        Plaintiffs seek declaratory, mandamus, and § 1983 relief to enforce Pennsylvania's prohibition on the denial of civil rights.

888.        The licensing, discipline, and access systems described above violate Article I, Section 26 by blocking citizens from entering lawful occupations and speaking on legal matters, discriminating based on health, disability, or arrest history, retaliating against whistleblowers and critics, denying rights of speech and petition, diverting fee disputes into biased peer-run committees, denying public oversight through recording bans, excluding citizens unable to travel by denying remote appearances, imposing financial barriers that deprive the poor of equal court access.

889.        A real and substantial controversy exists regarding whether  thecurrent system of attorney, judicial and court regulation  unconstitutionally deny civil rights in violation of Article I, Section 26.

890.        Plaintiffs seek a declaration that these practices are unconstitutional.

891.        Defendants have unlawfully denied Pennsylvania citizens the enjoyment of civil rights through monopolistic licensing, discriminatory inquiries, and retaliatory systems.

892.        Mandamus is proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 26.

893.        Defendants act under color of state law to deprive Plaintiffs of civil rights guaranteed by Article I, Section 26 of the Pennsylvania Constitution.

894.        Plaintiffs are entitled to declaratory, injunctive, and monetary relief under § 1983.

Plaintiffs respectfully request that this Court:

a. Declare that the current system of attorney, judicial and court regulation , violates Article I, Section 26 of the Pennsylvania Constitution.

b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to prevent denial of civil rights.

c. Replace the unconstitutional system with a neutral statewide regulatory structure that:

Protects citizens' civil rights regardless of wealth, health, or status.

Provides equal access to courts and neutral adjudicators.

Eliminates retaliation against whistleblowers and critics.

Ensures transparency through recordings and remote access.

Reforms fee rules to eliminate discriminatory barriers for indigent litigants.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____/s Paige Martineau_____

Paige J. Martineau, Esquire, PA I.D. No. 325096

SLAAY (Susquehanna Legal Aid for Adults and Youth)

647 East Third Street

Williamsport, PA 17701

570-392-3025

paigemartineau@slaay.org