# Exhibit A

**From:** Bill Christman
**Sent:** Wednesday, July 30, 2025 10:55 AM
**To:** paigemartineau@slaay.org
**Subject:** Wills for Heroes

Ms. Martineau,

As General Counsel for the Pennsylvania Bar Association ("PBA"), I write to you today to request that you cease all communications with other staff and volunteers of the PBA. Given your comments regarding the PBA, Wills for Heroes, and potential litigation, I ask that all correspondence regarding these topics come directly to me.

Moreover, please be advised that, at this time, we will not permit you or SLAAY to participate in any way in our Wills for Heroes events or programs, whether already scheduled or not. If that changes in the future, I will let you know. Please contact me if you have any questions.

Thank you for your organization's service to the citizens of Pennsylvania.

Regards,
Bill

Pennsylvania Bar Association
Your Other Partner

**William R. Christman III, Esq.**
**Deputy Executive Director and General Counsel**
bill.christman@pabar.org
800.932.0311, Ext. 2299
www.pabar.org
100 South St., Harrisburg, PA 17101

**LEGAL NOTICE**

This email contains privileged and confidential information intended only for the use of the individual(s) named above. If you have received this email in error, please immediately notify the sender and delete this email. Dissemination or copying of this email by an unintended recipient is strictly prohibited.

# Exhibit B

**From:** Paige Martineau <paigemartineau@slaay.org>
**Sent:** Thursday, October 9, 2025 10:07 AM
**To:** David Strouse <dstrouse@clintoncountypa.gov>; David K. Trevaskis <david.trevaskis@pabar.org>; Gabriele E. Miller Wagner <gabriele.millerwagner@pabar.org>; Jeff Croak <jcroak@clintoncountypa.gov>; HAGAMAN, JENNIFER <jhagaman@pa.gov>; Cossman, Samantha <scossman@pa.gov>; maconnell@pa.gov; Bill Christman <bill.christman@pabar.org>; echerry@pa.gov
**Subject:** SLAAY WILl be attending WFH on 10/11

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Bill, I will not be obeying your illegal, unethical and unprofessional email. You're required to welcome, thank and praise us for criticism and threats of litigation. Otherwise the public will take over policing attorneys. We have filed a federal lawsuit and will be sharing your email nationwide to argue that attorney self-regulation is unconstitutional. In the meantime, we have sent a press release warning that every volunteer, veteran and first responder will be subpoenaed in our case. SLAAY is offering to do free confidential rules for them instead.

I will be there and if PBA does not profusely praise and thank SLAAY as a sponsor, I will be calling law enforcement to make a report for theft by deception and everyone will be listed as a witness in the criminal case as well.

I am the Pro Bono coordinator for three counties. I. Going to participate and talk to PBA staff and volunteers more now; and you will allow me to participate as much as I want, and you will praise and recognize us for our service.

The other 20 SLAAY volunteers will not be there. The loch haven pre law club will be staging a protest and Widener Law students are drafting my briefs, and are horrified by your behavior.

We will report you to the disciplinary board, and when your friends refuse to discipline you, we will use that to argue the disciplinary board needs to be replaced with lay people.

This is also a spoliation notice. Do not ever throw out a clients questionaire again. We will be checking income and gender characteristics of the population you serve.

The CCBA and Clinton County Commissioners will be name as Defendants in the federal complaint if they do not email the PBA and tell them they will be supporting SLAAY in this dispute. As will PA DMVA.

David Trevaskis said he would help SLAAY get statewide funding and recognition, so if that hasn't happened by the end of the year that will be another RPC violation. Liam Sanders is now going to be a big witnesses. You have been horrible in how you have treated us. We have 2000 pages of emails. I do not think you know the facts.

Anyway, see you Saturday. I will get emails around to the Bar Association and veterans community shortly warning them that they will be a part of years of federal litigation if they go.

We will be requesting a Court order that the PBA apologize to Clinton County and acknowledge this was not SLAAY's fault at all

Please sign me up for a Wills for Heroes event every weekend for the rest of the year. Please put SLAAY as your next sponsor in the following counties: Union, Snyder, Columbia, Montour, Northumberland, Clinton.

See you Saturday.

Paige

Press Release

For Immediate Release

October 8, 2025

Williamsport, PA 17701

From: SLAAY (Susquehanna Legal Aid for Adults and Youth)

---

SLAAY (Susquehanna Legal Aid for Adults and Youth) is a co-sponsor of the October 11, 2025 Wills for Heroes event in Lock Haven, Pennsylvania. Unfortunately, SLAAY is issuing this press release to warn every veteran and volunteer who plans on attending the event that they will be subpoenaed in federal litigation currently pending in the Williamsport Division of the Middle District of Pennsylvania docketed to case 4:25-cv-01848-MWB.

SLAAY (Susquehanna Legal Aid for Adults and Youth) was founded in 2020 by Williamsport Army veteran Ryan Williams, along with attorney Paige Martineau and nonprofit manager Peggy Ruby Martineau. Williams served in the Army from 1999 to 2006, with tours in Iraq and Afghanistan. SLAAY was formed specifically to help veterans and other vulnerable populations with their legal issues. SLAAY attends dozens of events every year with the veterans' community. For instance, SLAAY was the Spotlight Speaker for the February 2025 meeting of the Valley Veterans Coalition, which covers Columbia, Montour, Union, and Snyder counties, and was the Featured Speaker for the June 2025 meeting of the Lycoming-Clinton Veterans Coalition.

Now, the PBA has tried to unlawfully ban SLAAY from the October 11, 2025 Wills for Heroes event in Lock Haven that it is sponsoring. SLAAY will still be there. The PBA has no authority to ban SLAAY from the event.

However, everyone who attends, whether they are a volunteer, veteran, or first responder, will now need to provide their name and address, which will be published in materials filed to case 4:25-cv-01848-MWB. They will be subject to subpoenas for an unknown number of days in federal court at a rate of $40 per day. Unfortunately, they will need to provide information about gender, disability status, and income. SLAAY does not want to do this, but it is required by the Federal Rules of Civil Procedure, and SLAAY would be violating federal law if it failed to obtain and disclose this information. Moreover, SLAAY's Executive Director, Paige Martineau, is required by the Rules of Professional Conduct to report crimes. If the PBA tries to turn SLAAY away, or does not credit SLAAY with sponsoring the event throughout the event, then SLAAY will contact law enforcement to make a theft by deception complaint. Again, unfortunately, everyone in attendance would need to disclose their name and address for a witness list in the criminal case.

In fact, SLAAY expects that anyone who attends any Wills for Heroes event throughout the state, or who has attended one in the last twelve months, will be subject to similar disclosure. Wills for Heroes expressly states that they are not willing to form an attorney-client relationship with attendees, which means SLAAY *has* to disclose them in any litigation involving Wills for Heroes.

SLAAY, however, can provide confidential wills to clients. SLAAY already provides free wills and estate planning to veterans and first responders, and will award priority appointments to anyone who was expecting to get a will on October 11, 2025. SLAAY will make sure they receive an appointment within the next ten days, even if we are working nights and weekends. SLAAY will travel to locations close to the client when necessary. Interested clients or volunteers can go to slaay.org/apply or slaay.org/volunteer to request more information. SLAAY creates attorney-client relationships through written agreements when it creates a will. Thus, anyone who volunteers with SLAAY or receives a will through SLAAY will be exempt from disclosure and will not have to be a witness in the federal lawsuit.

SLAAY does not receive any funding to provide these wills. SLAAY simply regrets the harm that the PBA's actions are causing veterans and are going to donate their time and pay for printing out of pocket to make it right for the veterans community.

The PBA provided one reason to ban SLAAY from the October 11, 2025 Wills for Heroes in Clinton County: SLAAY had raised concerns about how disabled veterans and women were treated by Wills for Heroes in Union-Snyder County. After leaders in Union-Snyder County retaliated against SLAAY for raising those concerns, SLAAY indicated that it might exercise its First Amendment rights to petition for redress regarding the retaliation. As soon as SLAAY indicated it might exercise its First Amendment rights, the PBA sent SLAAY an email banning it from Wills for Heroes everywhere in the state. It banned SLAAY from attending the October 11, 2025 meeting and banned it from participating in the events SLAAY was sponsoring in Columbia, Montour, Union, Snyder, and Northumberland Counties.

SLAAY has filed this email to the federal docket, along with hundreds of pages of emails. The facts will eventually speak for themselves.

SLAAY's lawsuit also requests the Court dismantle the existing scheme of attorney regulation and declare that law school, the bar exam, character and fitness, and other licensing schemes for lawyers are unconstitutional. SLAAY asks the Court to order that anyone over the age of 18 who is competent to serve legal process in the Commonwealth can be an attorney, without needing college, law school, or a bar exam. Finally, SLAAY's lawsuit demands that the PBA give the public back the right to regulate the legal profession that it stole in 1902, and that regulation of the legal profession comply with the First Amendment.

When the Constitution was drafted, lawyers, who speak for a living, were treated like reporters, who speak for a living. Regulation of either profession was prohibited as an infringement of the First Amendment. However,

lawyers enjoy more access to privilege and power than reporters do. On average, legislators are lawyers, not reporters. In the late 1800s, women, African-Americans, and immigrants started getting more rights. Bar Associations formed to exclude these groups. The South Carolina Legislature, in a public debate on the State House floor, stated in 1950 that the purpose of the bar exam was to "keep out the negroes." South Carolina's first bar exam was in 1950, and its first African-American law students graduated in 1951.

Pennsylvania was the same way. In 1902, the PBA informed the public that the public needed to be protected from lawyers. Therefore, regulation was needed. This justification (that the public needed to be protected from incompetent lawyers) is the only justification that has ever been proposed for regulating lawyers, but not reporters. However, in private debates in 1901, the PBA's president explained that the "first question" to decide if someone could be a lawyer was "is he a gentleman." At the time, "gentleman" meant white, male and privileged. This is why Bar Associations adopted absurd rules, like forbidding students from learning the law when it is dark outside. Students who could afford not to work during the day could go to law school, and the working class could not.

The PBA, and lawyers as a whole, did not actually want to be regulated. If they were regulated, they would have had public, objective, government oversight. They did not want objective regulations. They wanted to use the guise of regulations to exclude minorities.

The public would have enacted sensible rules. For instance, some of the Rules of Professional Conduct are "show up on time, do not be absent, be prepared for your hearings, do not be rude." SLAAY has proposed that these rules be enforced by a system of lay monitors, where a lay person (where someone who is not a lawyer) observes every Court hearing, and measures whether the attorneys and judges are late, rude, absent, or unprepared. Then, members of the public decide if lawyers have broken the rules. The PBA, in contrast, has decided that the best way to protect the public from an attorney missing Court is to require people to spend seven years in school, hundreds of thousands of dollars, and turn over all of their medical records. These rules do not ensure that lawyers show up on time. They ensure that there are less available lawyers so that they can charge more fees.

The only reason lawyers are making the rules for lawyers is because the PBA promised in 1902 that it would welcome criticism. Few things have harmed the American public more than the lawyers' rules, like accreditation of law schools, the bar exam, and character and fitness exams. Lawyers cannot have their cake and eat it too. If the PBA is not going to welcome criticism and praise, then they have to let the public regulate the legal profession. The Bar Association promised the public they would reward their most vocal critics. Instead, they banned an Army Veteran from participating in an event for veterans that he spent hundreds of hours planning.

SLAAY will work to protect the rights of disabled veterans. Unfortunately, there is no way to resolve the Court case before the Clinton County event. We are so sorry.

We anticipate that we will experience fierce retaliation moving forward. We are claiming that the billion-dollar legal regulation industry provides no measurable value to the public, violates the Constitution, and should be dismantled. We are asking to outlaw government requirements for law school. This will help the public, but it might destroy SLAAY. We ask the public to stand with us as we stand up for the public's right to regulate lawyers, and to have Bar Associations that do not discriminate or violate the Constitution.

---

**From:** SLAAY (Susquehanna Legal Aid for Adults and Youth) <info@slaay.org>
**Sent:** Wednesday, October 8, 2025 3:30 PM

**To:** Paige Martineau <paigemartineau@slaay.org>
**Subject:** Fw: 4:25-cv-01848-MWB

SLAAY (Susquehanna Legal Aid for Adults and Youth)
slaay.org
570-392-3025
f: 570-915-2515
1307 Park Ave, Box #10
Williamsport, PA 17701

---

**From:** SLAAY (Susquehanna Legal Aid for Adults and Youth)
**Sent:** Wednesday, October 8, 2025 3:29 PM
**Subject:** 4:25-cv-01848-MWB

Good afternoon. Our law firm has filed a lawsuit against the Pennsylvania Bar Association, State of PA, US Congress, American Bar Association, and other defendants to dismantle the attorney-regulation industry and outlaw requirements for law school, the bar exam, and

A small part of this lawsuit is based on retaliation we have faced, including being banned from the Wills for Heroes event in Lock Haven on October 11, 2025, even though we are a sponsor of the event. As a result, we need to get the word out that everyone who attends that event, veterans, first responders, or volunteers, are going to be subpoenaed as witnesses in our lawsuit, which is in the Middle District of PA, 4:25-cv-1848. SLAAY is offering instead to do free wills for those first responders and veterans, and our clients would be shielded from the Court process.

We have never done a press release about a case before. It's informal and probably not correctly formatted. As you can see if you read the complaint, we are arguing that for increased freedom of the press, too, like for all court hearings to be recorded and for recording to be allowed through Court buildings. We will release a structured, formal press release to address the lawsuit as a whole at a later time. For now, we just desperately want to warn veterans that if they get a will on Saturday, they are going have their name, address, and other information disclosed on a public docket in a lawsuit. Please contact us if you have any questions.

Press Release

For Immediate Release

October 8, 2025

Williamsport, PA 17701

From: SLAAY (Susquehanna Legal Aid for Adults and Youth)

---

SLAAY (Susquehanna Legal Aid for Adults and Youth) is a co-sponsor of the October 11, 2025 Wills for Heroes event in Lock Haven, Pennsylvania. Unfortunately, SLAAY is issuing this press release to warn every veteran and volunteer who plans on attending the event that they will be subpoenaed in federal

litigation currently pending in the Williamsport Division of the Middle District of Pennsylvania docketed to case 4:25-cv-01848-MWB.

SLAAY (Susquehanna Legal Aid for Adults and Youth) was founded in 2020 by Williamsport Army veteran Ryan Williams, along with attorney Paige Martineau and nonprofit manager Peggy Ruby Martineau. Williams served in the Army from 1999 to 2006, with tours in Iraq and Afghanistan. SLAAY was formed specifically to help veterans and other vulnerable populations with their legal issues. SLAAY attends dozens of events every year with the veterans' community. For instance, SLAAY was the Spotlight Speaker for the February 2025 meeting of the Valley Veterans Coalition, which covers Columbia, Montour, Union, and Snyder counties, and was the Featured Speaker for the June 2025 meeting of the Lycoming-Clinton Veterans Coalition.

Now, the PBA has tried to unlawfully ban SLAAY from the October 11, 2025 Wills for Heroes event in Lock Haven that it is sponsoring. SLAAY will still be there. The PBA has no authority to ban SLAAY from the event. However, everyone who attends, whether they are a volunteer, veteran, or first responder, will now need to provide their name and
address, which will be published in materials filed to case 4:25-cv-01848-MWB. They will be subject to subpoenas for an unknown number of days in federal court at a rate of $40 per day. Unfortunately, they will need to provide information about gender, disability status, and income. SLAAY does not want to do this, but it is required by the Federal Rules of Civil Procedure, and SLAAY would be violating federal law if it failed to obtain and disclose this information. Moreover, SLAAY's Executive Director, Paige Martineau, is required by the Rules of Professional Conduct to report crimes. If the PBA tries to turn SLAAY away, or does not credit SLAAY with sponsoring the event throughout the event, then SLAAY will contact law enforcement to make a theft by deception complaint. Again, unfortunately, everyone in attendance would need to disclose their name and address for a witness list in the criminal case.

In fact, SLAAY expects that anyone who attends any Wills for Heroes event throughout the state, or who has attended one in the last twelve months, will be subject to similar disclosure. Wills for Heroes expressly states that they are not willing to form an attorney-client relationship with attendees, which means SLAAY *has* to disclose them in any litigation involving Wills for Heroes.

SLAAY, however, can provide confidential wills to clients. SLAAY already provides free wills and estate planning to veterans and first responders, and will award priority appointments to anyone who was expecting to get a will on October 11, 2025. SLAAY will make sure they receive an appointment within the next ten days, even if we are working nights and weekends. SLAAY will travel to locations close to the client when necessary. Interested clients or volunteers can go to slaay.org/apply or slaay.org/volunteer to request more information. SLAAY creates attorney-client relationships through written agreements when it creates a will. Thus, anyone who volunteers with SLAAY or receives a will through SLAAY will be exempt from disclosure and will not have to be a witness in the federal lawsuit.

SLAAY does not receive any funding to provide these wills. SLAAY simply regrets the harm that the PBA's actions are causing veterans and are going to donate their time and pay for printing out of pocket to make it right for the veterans community.

The PBA provided one reason to ban SLAAY from the October 11, 2025 Wills for Heroes in Clinton County: SLAAY had raised concerns about how disabled veterans and women were treated by Wills for Heroes in Union-Snyder County. After leaders in Union-Snyder County retaliated against SLAAY for raising those concerns, SLAAY indicated that it might exercise its First Amendment rights to petition for redress regarding the retaliation. As soon as SLAAY indicated it might exercise its First Amendment rights, the PBA sent SLAAY an email banning it from Wills for Heroes everywhere in the state. It banned

SLAAY from attending the October 11, 2025 meeting and banned it from participating in the events SLAAY was sponsoring in Columbia, Montour, Union, Snyder, and Northumberland Counties.

SLAAY has filed this email to the federal docket, along with hundreds of pages of emails. The facts will eventually speak for themselves.

SLAAY's lawsuit also requests the Court dismantle the existing scheme of attorney regulation and declare that law school, the bar exam, character and fitness, and other licensing schemes for lawyers are unconstitutional. SLAAY asks the Court to order that anyone over the age of 18 who is competent to serve legal process in the Commonwealth can be an attorney, without needing college, law school, or a bar exam. Finally, SLAAY's lawsuit demands that the PBA give the public back the right to regulate the legal profession that it stole in 1902, and that regulation of the legal profession comply with the First Amendment.

When the Constitution was drafted, lawyers, who speak for a living, were treated like reporters, who speak for a living. Regulation of either profession was prohibited as an infringement of the First Amendment. However, lawyers enjoy more access to privilege and power than reporters do. On average, legislators are lawyers, not reporters. In the late 1800s, women, African-Americans, and immigrants started getting more rights. Bar Associations formed to exclude these groups. The South Carolina Legislature, in a public debate on the State House floor, stated in 1950 that the purpose of the bar exam was to "keep out the negroes." South Carolina's first bar exam was in 1950, and its first African-American law students graduated in 1951.

Pennsylvania was the same way. In 1902, the PBA informed the public that the public needed to be protected from lawyers. Therefore, regulation was needed. This justification (that the public needed to be protected from incompetent lawyers) is the only justification that has ever been proposed for regulating lawyers, but not reporters. However, in private debates in 1901, the PBA's president explained that the "first question" to decide if someone could be a lawyer was "is he a gentleman." At the time, "gentleman" meant white, male and privileged. This is why Bar Associations adopted absurd rules, like forbidding students from learning the law when it is dark outside. Students who could afford not to work during the day could go to law school, and the working class could not.

The PBA, and lawyers as a whole, did not actually want to be regulated. If they were regulated, they would have had public, objective, government oversight. They did not want objective regulations. They wanted to use the guise of regulations to exclude minorities.

The public would have enacted sensible rules. For instance, some of the Rules of Professional Conduct are "show up on time, do not be absent, be prepared for your hearings, do not be rude." SLAAY has proposed that these rules be enforced by a system of lay monitors, where a lay person (where someone who is not a lawyer) observes every Court hearing, and measures whether the attorneys and judges are late, rude, absent, or unprepared. Then, members of the public decide if lawyers have broken the rules. The PBA, in contrast, has decided that the best way to protect the public from an attorney missing Court is to require people to spend seven years in school, hundreds of thousands of dollars, and turn over all of their medical records. These rules do not ensure that lawyers show up on time. They ensure that there are less available lawyers so that they can charge more fees.

The only reason lawyers are making the rules for lawyers is because the PBA promised in 1902 that it would welcome criticism. Few things have harmed the American public more than the lawyers' rules, like accreditation of law schools, the bar exam, and character and fitness exams. Lawyers cannot have their cake and eat it too. If the PBA is not going to welcome criticism and praise, then they have to let the public regulate the legal profession. The Bar Association promised the public they would reward their

most vocal critics. Instead, they banned an Army Veteran from participating in an event for veterans that he spent hundreds of hours planning.

SLAAY will work to protect the rights of disabled veterans. Unfortunately, there is no way to resolve the Court case before the Clinton County event. We are so sorry.

We anticipate that we will experience fierce retaliation moving forward. We are claiming that the billion-dollar legal regulation industry provides no measurable value to the public, violates the Constitution, and should be dismantled. We are asking to outlaw government requirements for law school. This will help the public, but it might destroy SLAAY. We ask the public to stand with us as we stand up for the public's right to regulate lawyers, and to have Bar Associations that do not discriminate or violate the Constitution.

SLAAY (Susquehanna Legal Aid for Adults and Youth)
slaay.org
570-392-3025
f: 570-915-2515
1307 Park Ave, Box #10
Williamsport, PA 17701

**LEGAL NOTICE**

This email contains privileged and confidential information intended only for the use of the individual(s) named above. If you have received this email in error, please immediately notify the sender and delete this email. Dissemination or copying of this email by an unintended recipient is strictly prohibited.

Press Release

For Immediate Release

October 8, 2025

Williamsport, PA 17701

From: SLAAY (Susquehanna Legal Aid for Adults and Youth)

---

SLAAY (Susquehanna Legal Aid for Adults and Youth) is a co-sponsor of the October 11, 2025 Wills for Heroes event in Lock Haven, Pennsylvania. Unfortunately, SLAAY is issuing this press release to warn every veteran and volunteer who plans on attending the event that they will be subpoenaed in federal litigation currently pending in the Williamsport Division of the Middle District of Pennsylvania docketed to case 4:25-cv-01848-MWB.

SLAAY (Susquehanna Legal Aid for Adults and Youth) was founded in 2020 by Williamsport Army veteran Ryan Williams, along with attorney Paige Martineau and nonprofit manager Peggy Ruby Martineau. Williams served in the Army from 1999 to 2006, with tours in Iraq and Afghanistan. SLAAY was formed specifically to help veterans and other vulnerable populations with their legal issues. SLAAY attends dozens of events every year with the veterans' community. For instance, SLAAY was the Spotlight Speaker for the February 2025 meeting of the Valley Veterans Coalition, which covers Columbia, Montour, Union, and Snyder counties, and was the Featured Speaker for the June 2025 meeting of the Lycoming-Clinton Veterans Coalition.

Now, the PBA has tried to unlawfully ban SLAAY from the October 11, 2025 Wills for Heroes event in Lock Haven that it is sponsoring. SLAAY will still be there. The PBA has no authority to ban SLAAY from the event. However, everyone who attends, whether they are a volunteer, veteran, or first responder, will now need to provide their name and address, which will be published in materials filed to case 4:25-cv-01848-MWB. They will be subject to subpoenas for an unknown number of days in federal court at a rate of $40 per day. Unfortunately, they will need to provide information about gender, disability status, and income. SLAAY does not want to do this, but it is required by the Federal Rules of Civil Procedure, and SLAAY would be violating federal law if it failed to obtain and disclose this information. Moreover, SLAAY's Executive Director, Paige Martineau, is required by the Rules of Professional Conduct to report crimes. If the PBA tries to turn SLAAY away, or does not credit SLAAY with sponsoring the event throughout the event, then SLAAY will contact law enforcement to make a theft by deception complaint. Again, unfortunately, everyone in attendance would need to disclose their name and address for a witness list in the criminal case.

In fact, SLAAY expects that anyone who attends any Wills for Heroes event throughout the state, or who has attended one in the last twelve months, will be subject to similar disclosure. Wills for Heroes expressly states that they are not willing to form an attorney-client relationship with attendees, which means SLAAY *has* to disclose them in any litigation involving Wills for Heroes.

SLAAY, however, can provide confidential wills to clients. SLAAY already provides free wills and estate planning to veterans and first responders, and will award priority appointments to anyone who was expecting to get a will on October 11, 2025. SLAAY will make sure they receive an appointment within the next ten days, even if we are working nights and weekends. SLAAY will travel to locations close to the client when necessary. Interested clients or volunteers can go to slaay.org/apply or slaay.org/volunteer to request more information. SLAAY creates attorney-client relationships through written agreements when it creates a will. Thus, anyone who volunteers with SLAAY or receives a will through SLAAY will be exempt from disclosure and will not have to be a witness in the federal lawsuit.

SLAAY does not receive any funding to provide these wills. SLAAY simply regrets the harm that the PBA's actions are causing veterans and are going to donate their time and pay for printing out of pocket to make it right for the veterans community.

The PBA provided one reason to ban SLAAY from the October 11, 2025 Wills for Heroes in Clinton County: SLAAY had raised concerns about how disabled veterans and women were treated by Wills for Heroes in Union-Snyder County. After leaders in Union-Snyder County retaliated against SLAAY for raising those concerns, SLAAY indicated that it might exercise its First Amendment rights to petition for redress regarding the retaliation. As soon as SLAAY indicated it might exercise its First Amendment rights, the PBA sent SLAAY an email banning it from Wills for Heroes everywhere in the state. It banned SLAAY from attending the October 11, 2025 meeting and banned it from participating in the events SLAAY was sponsoring in Columbia, Montour, Union, Snyder, and Northumberland Counties.

SLAAY has filed this email to the federal docket, along with hundreds of pages of emails. The facts will eventually speak for themselves.

SLAAY's lawsuit also requests the Court dismantle the existing scheme of attorney regulation and declare that law school, the bar exam, character and fitness, and other licensing schemes for lawyers are unconstitutional. SLAAY asks the Court to order that anyone over the age of 18 who is competent to serve legal process in the Commonwealth can be an attorney, without needing college, law school, or a bar exam. Finally, SLAAY's lawsuit demands that the PBA give the public back the right to regulate the legal profession

that it stole in 1902, and that regulation of the legal profession comply with the First Amendment.

When the Constitution was drafted, lawyers, who speak for a living, were treated like reporters, who speak for a living. Regulation of either profession was prohibited as an infringement of the First Amendment. However, lawyers enjoy more access to privilege and power than reporters do. On average, legislators are lawyers, not reporters. In the late 1800s, women, African-Americans, and immigrants started getting more rights. Bar Associations formed to exclude these groups. The South Carolina Legislature, in a public debate on the State House floor, stated in 1950 that the purpose of the bar exam was to "keep out the negroes." South Carolina's first bar exam was in 1950, and its first African-American law students graduated in 1951.

Pennsylvania was the same way. In 1902, the PBA informed the public that the public needed to be protected from lawyers. Therefore, regulation was needed. This justification (that the public needed to be protected from incompetent lawyers) is the only justification that has ever been proposed for regulating lawyers, but not reporters. However, in private debates in 1901, the PBA's president explained that the "first question" to decide if someone could be a lawyer was "is he a gentleman." At the time, "gentleman" meant white, male and privileged. This is why Bar Associations adopted absurd rules, like forbidding students from learning the law when it is dark outside. Students who could afford not to work during the day could go to law school, and the working class could not.

The PBA, and lawyers as a whole, did not actually want to be regulated. If they were regulated, they would have had public, objective, government oversight. They did not want objective regulations. They wanted to use the guise of regulations to exclude minorities.

The public would have enacted sensible rules. For instance, some of the Rules of Professional Conduct are "show up on time, do not be absent, be prepared for your hearings, do not be rude." SLAAY has proposed that these rules be enforced by a system of lay monitors, where a lay person (where someone who is not a lawyer) observes every Court hearing, and measures whether the attorneys and judges are late, rude, absent, or unprepared. Then, members of the public decide if lawyers have broken the rules. The PBA, in contrast, has decided that the best way to protect the public from an attorney missing Court is to require people to spend seven years in school, hundreds of thousands of dollars, and turn over all of their medical records. These rules do not ensure that lawyers show up on time. They ensure that there are less available lawyers so that they can charge more fees.

The only reason lawyers are making the rules for lawyers is because the PBA promised in 1902 that it would welcome criticism. Few things have harmed the American public more than the lawyers' rules, like accreditation of law schools, the bar exam, and character and fitness exams. Lawyers cannot have their cake and eat it too. If the PBA is not going to welcome criticism and praise, then they have to let the public regulate the legal profession. The Bar Association promised the public they would reward their most vocal critics. Instead, they banned an Army Veteran from participating in an event for veterans that he spent hundreds of hours planning.

SLAAY will work to protect the rights of disabled veterans. Unfortunately, there is no way to resolve the Court case before the Clinton County event. We are so sorry.

We anticipate that we will experience fierce retaliation moving forward. We are claiming that the billion-dollar legal regulation industry provides no measurable value to the public, violates the Constitution, and should be dismantled. We are asking to outlaw government requirements for law school. This will help the public, but it might destroy SLAAY. We ask the public to stand with us as we stand up for the public's right to regulate lawyers, and to have Bar Associations that do not discriminate or violate the Constitution.

# Exhibit C

**From:** Bill Christman
**Sent:** Friday, October 10, 2025 11:47 AM
**To:** 'Paige Martineau' <paigemartineau@slaay.org>; David Strouse <dstrouse@clintoncountypa.gov>; Jeff Croak <jcroak@clintoncountypa.gov>; HAGAMAN, JENNIFER <jhagaman@pa.gov>; Cossman, Samantha <scossman@pa.gov>; maconnell@pa.gov; echerry@pa.gov
**Subject:** RE: SLAAY WILl be attending WFH on 10/11

Ms. Martineau,

Thank you for your email of October 9, 2025.

Under Rule 4.2 of the Pennsylvania Rules of Professional Conduct, *"a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."*

As stated in my correspondence of July 30, 2025, I represent the Pennsylvania Bar Association (PBA) and its employees. Accordingly, I directed that all communications from you regarding the PBA or the Wills for Heroes program be directed solely to me, and that you cease all contact with PBA staff or volunteers.

Your October 9 message, which copied PBA employees, violated that directive. Moreover, I have now been advised that you have distributed a separate mass email to PBA volunteers and others making false and inflammatory claims regarding the PBA, its programs, and purported subpoenas or criminal referrals.

You are hereby directed to **cease and desist immediately** from:

1. Communicating directly or indirectly with PBA staff, officers, volunteers, or affiliated participants in any PBA program, including Wills for Heroes;

2. Distributing or publishing any further statements—by email, social media, or otherwise—purporting to speak on behalf of or about the PBA, its employees, or its programs; and

3. Representing, expressly or implicitly, that you or your organization, SLAAY, are affiliated with, sponsoring, or participating in any PBA or Wills for Heroes event.

You and SLAAY are not authorized to participate in any PBA-sponsored programs or events. Should you appear at any such event or otherwise attempt to interfere with PBA operations, you will be asked to leave, and law enforcement will be contacted as appropriate.

Please be aware that your recent mass communication to volunteers may constitute interference with PBA operations and harassment of individuals associated with the Association. The PBA expressly reserves all rights and remedies available under law, including but not limited to injunctive relief and referral to disciplinary or law-enforcement authorities.

All further correspondence concerning these matters must be directed exclusively to me.

Sincerely,

PENNSYLVANIA BAR ASSOCIATION
Your Other Partner

**William R. Christman III, Esq.**
**Deputy Executive Director & General Counsel**
**Pennsylvania Bar Association**
100 South St., Harrisburg, Pa. 17101
P: 717-669-8419 F: 717-238-7182
Email pabar.org LinkedIn Facebook Twitter

**From:** Paige Martineau <paigemartineau@slaay.org>
**Sent:** Thursday, October 9, 2025 10:07 AM
**To:** David Strouse <dstrouse@clintoncountypa.gov>; David K. Trevaskis <david.trevaskis@pabar.org>; Gabriele E. Miller Wagner <gabriele.millerwagner@pabar.org>; Jeff Croak <jcroak@clintoncountypa.gov>; HAGAMAN, JENNIFER <jhagaman@pa.gov>; Cossman, Samantha <scossman@pa.gov>; maconnell@pa.gov; Bill Christman <bill.christman@pabar.org>; echerry@pa.gov
**Subject:** SLAAY WILl be attending WFH on 10/11

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Bill, I will not be obeying your illegal, unethical and unprofessional email. You're required to welcome, thank and praise us for criticism and threats of litigation. Otherwise the public will take over policing attorneys. We have filed a federal lawsuit and will be sharing your email nationwide to argue that attorney self-regulation is unconstitutional. In the meantime, we have sent a press release warning that every volunteer, veteran and first responder will be subpoenaed in our case. SLAAY is offering to do free confidential rules for them instead.

I will be there and if PBA does not profusely praise and thank SLAAY as a sponsor, I will be calling law enforcement to make a report for theft by deception and everyone will be listed as a witness in the criminal case as well.

I am the Pro Bono coordinator for three counties. I. Going to participate and talk to PBA staff and volunteers more now; and you will allow me to participate as much as I want, and you will praise and recognize us for our service.

The other 20 SLAAY volunteers will not be there. The loch haven pre law club will be staging a protest and Widener Law students are drafting my briefs, and are horrified by your behavior.

We will report you to the disciplinary board, and when your friends refuse to discipline you, we will use that to argue the disciplinary board needs to be replaced with lay people.

This is also a spoliation notice. Do not ever throw out a clients questionaire again. We will be checking income and gender characteristics of the population you serve.

The CCBA and Clinton County Commissioners will be name as Defendants in the federal complaint if they do not email the PBA and tell them they will be supporting SLAAY in this dispute. As will PA DMVA.

David Trevaskis said he would help SLAAY get statewide funding and recognition, so if that hasn't happened by the end of the year that will be another RPC violation. Liam Sanders is now going to be a big witnesses. You have been horrible in how you have treated us. We have 2000 pages of emails. I do not think you know the facts.

Anyway, see you Saturday. I will get emails around to the Bar Association and veterans community shortly warning them that they will be a part of years of federal litigation if they go.

We will be requesting a Court order that the PBA apologize to Clinton County and acknowledge this was not SLAAY's fault at all

Please sign me up for a Wills for Heroes event every weekend for the rest of the year. Please put SLAAY as your next sponsor in the following counties: Union, Snyder, Columbia, Montour, Northumberland, Clinton.

See you Saturday.

Paige

Press Release

For Immediate Release

October 8, 2025

Williamsport, PA 17701

From: SLAAY (Susquehanna Legal Aid for Adults and Youth)

---

SLAAY (Susquehanna Legal Aid for Adults and Youth) is a co-sponsor of the October 11, 2025 Wills for Heroes event in Lock Haven, Pennsylvania. Unfortunately, SLAAY is issuing this press release to warn every veteran and volunteer who plans on attending the event that they will be subpoenaed in federal litigation currently pending in the Williamsport Division of the Middle District of Pennsylvania docketed to case 4:25-cv-01848-MWB.

SLAAY (Susquehanna Legal Aid for Adults and Youth) was founded in 2020 by Williamsport Army veteran Ryan Williams, along with attorney Paige Martineau and nonprofit manager Peggy Ruby Martineau. Williams served in the Army from 1999 to 2006, with tours in Iraq and Afghanistan. SLAAY was formed specifically to help veterans and other vulnerable populations with their legal issues. SLAAY attends dozens of events every year with the veterans' community. For instance, SLAAY was the Spotlight Speaker for the February 2025 meeting

of the Valley Veterans Coalition, which covers Columbia, Montour, Union, and Snyder counties, and was the Featured Speaker for the June 2025 meeting of the Lycoming-Clinton Veterans Coalition.

Now, the PBA has tried to unlawfully ban SLAAY from the October 11, 2025 Wills for Heroes event in Lock Haven that it is sponsoring. SLAAY will still be there. The PBA has no authority to ban SLAAY from the event. However, everyone who attends, whether they are a volunteer, veteran, or first responder, will now need to provide their name and
address, which will be published in materials filed to case 4:25-cv-01848-MWB. They will be subject to subpoenas for an unknown number of days in federal court at a rate of $40 per day. Unfortunately, they will need to provide information about gender, disability status, and income. SLAAY does not want to do this, but it is required by the Federal Rules of Civil Procedure, and SLAAY would be violating federal law if it failed to obtain and disclose this information. Moreover, SLAAY's Executive Director, Paige Martineau, is required by the Rules of Professional Conduct to report crimes. If the PBA tries to turn SLAAY away, or does not credit SLAAY with sponsoring the event throughout the event, then SLAAY will contact law enforcement to make a theft by deception complaint. Again, unfortunately, everyone in attendance would need to disclose their name and address for a witness list in the criminal case.

In fact, SLAAY expects that anyone who attends any Wills for Heroes event throughout the state, or who has attended one in the last twelve months, will be subject to similar disclosure. Wills for Heroes expressly states that they are not willing to form an attorney-client relationship with attendees, which means SLAAY *has* to disclose them in any litigation involving Wills for Heroes.

SLAAY, however, can provide confidential wills to clients. SLAAY already provides free wills and estate planning to veterans and first responders, and will award priority appointments to anyone who was expecting to get a will on October 11, 2025. SLAAY will make sure they receive an appointment within the next ten days, even if we are working nights and weekends. SLAAY will travel to locations close to the client when necessary. Interested clients or volunteers can go to slaay.org/apply or slaay.org/volunteer to request more information. SLAAY creates attorney-client relationships through written agreements when it creates a will. Thus, anyone who volunteers with SLAAY or receives a will through SLAAY will be exempt from disclosure and will not have to be a witness in the federal lawsuit.

SLAAY does not receive any funding to provide these wills. SLAAY simply regrets the harm that the PBA's actions are causing veterans and are going to donate their time and pay for printing out of pocket to make it right for the veterans community.

The PBA provided one reason to ban SLAAY from the October 11, 2025 Wills for Heroes in Clinton County: SLAAY had raised concerns about how disabled veterans and women were treated by Wills for Heroes in Union-Snyder County. After leaders in Union-Snyder County retaliated against SLAAY for raising those concerns, SLAAY indicated that it might exercise its First Amendment rights to petition for redress regarding the retaliation. As soon as SLAAY indicated it might exercise its First Amendment rights, the PBA sent SLAAY an email banning it from Wills for Heroes everywhere in the state. It banned SLAAY from attending the October 11, 2025 meeting and banned it from participating in the events SLAAY was sponsoring in Columbia, Montour, Union, Snyder, and Northumberland Counties.

SLAAY has filed this email to the federal docket, along with hundreds of pages of emails. The facts will eventually speak for themselves.

SLAAY's lawsuit also requests the Court dismantle the existing scheme of attorney regulation and declare that law school, the bar exam, character and fitness, and other licensing schemes for lawyers are unconstitutional. SLAAY asks the Court to order that anyone over the age of 18 who is competent to serve legal process in the Commonwealth can be an attorney, without needing college, law school, or a bar exam. Finally, SLAAY's

lawsuit demands that the PBA give the public back the right to regulate the legal profession that it stole in 1902, and that regulation of the legal profession comply with the First Amendment.

When the Constitution was drafted, lawyers, who speak for a living, were treated like reporters, who speak for a living. Regulation of either profession was prohibited as an infringement of the First Amendment. However, lawyers enjoy more access to privilege and power than reporters do. On average, legislators are lawyers, not reporters. In the late 1800s, women, African-Americans, and immigrants started getting more rights. Bar Associations formed to exclude these groups. The South Carolina Legislature, in a public debate on the State House floor, stated in 1950 that the purpose of the bar exam was to "keep out the negroes." South Carolina's first bar exam was in 1950, and its first African-American law students graduated in 1951.

Pennsylvania was the same way. In 1902, the PBA informed the public that the public needed to be protected from lawyers. Therefore, regulation was needed. This justification (that the public needed to be protected from incompetent lawyers) is the only justification that has ever been proposed for regulating lawyers, but not reporters. However, in private debates in 1901, the PBA's president explained that the "first question" to decide if someone could be a lawyer was "is he a gentleman." At the time, "gentleman" meant white, male and privileged. This is why Bar Associations adopted absurd rules, like forbidding students from learning the law when it is dark outside. Students who could afford not to work during the day could go to law school, and the working class could not.

The PBA, and lawyers as a whole, did not actually want to be regulated. If they were regulated, they would have had public, objective, government oversight. They did not want objective regulations. They wanted to use the guise of regulations to exclude minorities.

The public would have enacted sensible rules. For instance, some of the Rules of Professional Conduct are "show up on time, do not be absent, be prepared for your hearings, do not be rude." SLAAY has proposed that these rules be enforced by a system of lay monitors, where a lay person (where someone who is not a lawyer) observes every Court hearing, and measures whether the attorneys and judges are late, rude, absent, or unprepared. Then, members of the public decide if lawyers have broken the rules. The PBA, in contrast, has decided that the best way to protect the public from an attorney missing Court is to require people to spend seven years in school, hundreds of thousands of dollars, and turn over all of their medical records. These rules do not ensure that lawyers show up on time. They ensure that there are less available lawyers so that they can charge more fees.

The only reason lawyers are making the rules for lawyers is because the PBA promised in 1902 that it would welcome criticism. Few things have harmed the American public more than the lawyers' rules, like accreditation of law schools, the bar exam, and character and fitness exams. Lawyers cannot have their cake and eat it too. If the PBA is not going to welcome criticism and praise, then they have to let the public regulate the legal profession. The Bar Association promised the public they would reward their most vocal critics. Instead, they banned an Army Veteran from participating in an event for veterans that he spent hundreds of hours planning.

SLAAY will work to protect the rights of disabled veterans. Unfortunately, there is no way to resolve the Court case before the Clinton County event. We are so sorry.

We anticipate that we will experience fierce retaliation moving forward. We are claiming that the billion-dollar legal regulation industry provides no measurable value to the public, violates the Constitution, and should be dismantled. We are asking to outlaw government requirements for law school. This will help the public, but it might destroy SLAAY. We ask the public to stand with us as we stand up for the public's right to regulate lawyers, and to have Bar Associations that do not discriminate or violate the Constitution.

**From:** SLAAY (Susquehanna Legal Aid for Adults and Youth) <info@slaay.org>
**Sent:** Wednesday, October 8, 2025 3:30 PM
**To:** Paige Martineau <paigemartineau@slaay.org>
**Subject:** Fw: 4:25-cv-01848-MWB

SLAAY (Susquehanna Legal Aid for Adults and Youth)
slaay.org
570-392-3025
f: 570-915-2515
1307 Park Ave, Box #10
Williamsport, PA 17701

**From:** SLAAY (Susquehanna Legal Aid for Adults and Youth)
**Sent:** Wednesday, October 8, 2025 3:29 PM
**Subject:** 4:25-cv-01848-MWB

Good afternoon. Our law firm has filed a lawsuit against the Pennsylvania Bar Association, State of PA, US Congress, American Bar Association, and other defendants to dismantle the attorney-regulation industry and outlaw requirements for law school, the bar exam, and

A small part of this lawsuit is based on retaliation we have faced, including being banned from the Wills for Heroes event in Lock Haven on October 11, 2025, even though we are a sponsor of the event. As a result, we need to get the word out that everyone who attends that event, veterans, first responders, or volunteers, are going to be subpoenaed as witnesses in our lawsuit, which is in the Middle District of PA, 4:25-cv-1848. SLAAY is offering instead to do free wills for those first responders and veterans, and our clients would be shielded from the Court process.

We have never done a press release about a case before. It's informal and probably not correctly formatted. As you can see if you read the complaint, we are arguing that for increased freedom of the press, too, like for all court hearings to be recorded and for recording to be allowed through Court buildings. We will release a structured, formal press release to address the lawsuit as a whole at a later time. For now, we just desperately want to warn veterans that if they get a will on Saturday, they are going have their name, address, and other information disclosed on a public docket in a lawsuit. Please contact us if you have any questions.

Press Release

For Immediate Release

October 8, 2025

Williamsport, PA 17701

From: SLAAY (Susquehanna Legal Aid for Adults and Youth)

SLAAY (Susquehanna Legal Aid for Adults and Youth) is a co-sponsor of the October 11, 2025 Wills for Heroes event in Lock Haven, Pennsylvania. Unfortunately, SLAAY is issuing this press release to warn every veteran and volunteer who plans on attending the event that they will be subpoenaed in federal litigation currently pending in the Williamsport Division of the Middle District of Pennsylvania docketed to case 4:25-cv-01848-MWB.

SLAAY (Susquehanna Legal Aid for Adults and Youth) was founded in 2020 by Williamsport Army veteran Ryan Williams, along with attorney Paige Martineau and nonprofit manager Peggy Ruby Martineau. Williams served in the Army from 1999 to 2006, with tours in Iraq and Afghanistan. SLAAY was formed specifically to help veterans and other vulnerable populations with their legal issues. SLAAY attends dozens of events every year with the veterans' community. For instance, SLAAY was the Spotlight Speaker for the February 2025 meeting of the Valley Veterans Coalition, which covers Columbia, Montour, Union, and Snyder counties, and was the Featured Speaker for the June 2025 meeting of the Lycoming-Clinton Veterans Coalition.

Now, the PBA has tried to unlawfully ban SLAAY from the October 11, 2025 Wills for Heroes event in Lock Haven that it is sponsoring. SLAAY will still be there. The PBA has no authority to ban SLAAY from the event. However, everyone who attends, whether they are a volunteer, veteran, or first responder, will now need to provide their name and
address, which will be published in materials filed to case 4:25-cv-01848-MWB. They will be subject to subpoenas for an unknown number of days in federal court at a rate of $40 per day. Unfortunately, they will need to provide information about gender, disability status, and income. SLAAY does not want to do this, but it is required by the Federal Rules of Civil Procedure, and SLAAY would be violating federal law if it failed to obtain and disclose this information. Moreover, SLAAY's Executive Director, Paige Martineau, is required by the Rules of Professional Conduct to report crimes. If the PBA tries to turn SLAAY away, or does not credit SLAAY with sponsoring the event throughout the event, then SLAAY will contact law enforcement to make a theft by deception complaint. Again, unfortunately, everyone in attendance would need to disclose their name and address for a witness list in the criminal case.

In fact, SLAAY expects that anyone who attends any Wills for Heroes event throughout the state, or who has attended one in the last twelve months, will be subject to similar disclosure. Wills for Heroes expressly states that they are not willing to form an attorney-client relationship with attendees, which means SLAAY *has* to disclose them in any litigation involving Wills for Heroes.

SLAAY, however, can provide confidential wills to clients. SLAAY already provides free wills and estate planning to veterans and first responders, and will award priority appointments to anyone who was expecting to get a will on October 11, 2025. SLAAY will make sure they receive an appointment within the next ten days, even if we are working nights and weekends. SLAAY will travel to locations close to the client when necessary. Interested clients or volunteers can go to slaay.org/apply or slaay.org/volunteer to request more information. SLAAY creates attorney-client relationships through written agreements when it creates a will. Thus, anyone who volunteers with SLAAY or receives a will through SLAAY will be exempt from disclosure and will not have to be a witness in the federal lawsuit.

SLAAY does not receive any funding to provide these wills. SLAAY simply regrets the harm that the PBA's actions are causing veterans and are going to donate their time and pay for printing out of pocket to make it right for the veterans community.

The PBA provided one reason to ban SLAAY from the October 11, 2025 Wills for Heroes in Clinton County: SLAAY had raised concerns about how disabled veterans and women were treated by Wills for Heroes in Union-Snyder County. After leaders in Union-Snyder County retaliated against SLAAY for raising those concerns, SLAAY indicated that it might exercise its First Amendment rights to petition for

redress regarding the retaliation. As soon as SLAAY indicated it might exercise its First Amendment rights, the PBA sent SLAAY an email banning it from Wills for Heroes everywhere in the state. It banned SLAAY from attending the October 11, 2025 meeting and banned it from participating in the events SLAAY was sponsoring in Columbia, Montour, Union, Snyder, and Northumberland Counties.

SLAAY has filed this email to the federal docket, along with hundreds of pages of emails. The facts will eventually speak for themselves.

SLAAY's lawsuit also requests the Court dismantle the existing scheme of attorney regulation and declare that law school, the bar exam, character and fitness, and other licensing schemes for lawyers are unconstitutional. SLAAY asks the Court to order that anyone over the age of 18 who is competent to serve legal process in the Commonwealth can be an attorney, without needing college, law school, or a bar exam. Finally, SLAAY's lawsuit demands that the PBA give the public back the right to regulate the legal profession that it stole in 1902, and that regulation of the legal profession comply with the First Amendment.

When the Constitution was drafted, lawyers, who speak for a living, were treated like reporters, who speak for a living. Regulation of either profession was prohibited as an infringement of the First Amendment. However, lawyers enjoy more access to privilege and power than reporters do. On average, legislators are lawyers, not reporters. In the late 1800s, women, African-Americans, and immigrants started getting more rights. Bar Associations formed to exclude these groups. The South Carolina Legislature, in a public debate on the State House floor, stated in 1950 that the purpose of the bar exam was to "keep out the negroes." South Carolina's first bar exam was in 1950, and its first African-American law students graduated in 1951.

Pennsylvania was the same way. In 1902, the PBA informed the public that the public needed to be protected from lawyers. Therefore, regulation was needed. This justification (that the public needed to be protected from incompetent lawyers) is the only justification that has ever been proposed for regulating lawyers, but not reporters. However, in private debates in 1901, the PBA's president explained that the "first question" to decide if someone could be a lawyer was "is he a gentleman." At the time, "gentleman" meant white, male and privileged. This is why Bar Associations adopted absurd rules, like forbidding students from learning the law when it is dark outside. Students who could afford not to work during the day could go to law school, and the working class could not.

The PBA, and lawyers as a whole, did not actually want to be regulated. If they were regulated, they would have had public, objective, government oversight. They did not want objective regulations. They wanted to use the guise of regulations to exclude minorities.

The public would have enacted sensible rules. For instance, some of the Rules of Professional Conduct are "show up on time, do not be absent, be prepared for your hearings, do not be rude." SLAAY has proposed that these rules be enforced by a system of lay monitors, where a lay person (where someone who is not a lawyer) observes every Court hearing, and measures whether the attorneys and judges are late, rude, absent, or unprepared. Then, members of the public decide if lawyers have broken the rules. The PBA, in contrast, has decided that the best way to protect the public from an attorney missing Court is to require people to spend seven years in school, hundreds of thousands of dollars, and turn over all of their medical records. These rules do not ensure that lawyers show up on time. They ensure that there are less available lawyers so that they can charge more fees.

The only reason lawyers are making the rules for lawyers is because the PBA promised in 1902 that it would welcome criticism. Few things have harmed the American public more than the lawyers' rules, like accreditation of law schools, the bar exam, and character and fitness exams. Lawyers cannot have their

cake and eat it too. If the PBA is not going to welcome criticism and praise, then they have to let the public regulate the legal profession. The Bar Association promised the public they would reward their most vocal critics. Instead, they banned an Army Veteran from participating in an event for veterans that he spent hundreds of hours planning.

SLAAY will work to protect the rights of disabled veterans. Unfortunately, there is no way to resolve the Court case before the Clinton County event. We are so sorry.

We anticipate that we will experience fierce retaliation moving forward. We are claiming that the billion-dollar legal regulation industry provides no measurable value to the public, violates the Constitution, and should be dismantled. We are asking to outlaw government requirements for law school. This will help the public, but it might destroy SLAAY. We ask the public to stand with us as we stand up for the public's right to regulate lawyers, and to have Bar Associations that do not discriminate or violate the Constitution.

SLAAY (Susquehanna Legal Aid for Adults and Youth)
slaay.org
570-392-3025
f: 570-915-2515
1307 Park Ave, Box #10
Williamsport, PA 17701

**LEGAL NOTICE**

This email contains privileged and confidential information intended only for the use of the individual(s) named above. If you have received this email in error, please immediately notify the sender and delete this email. Dissemination or copying of this email by an unintended recipient is strictly prohibited.

# Exhibit D

**From:** Paige Martineau <paigemartineau@slaay.org>
**Sent:** Friday, October 10, 2025 1:08 PM
**To:** Bill Christman <bill.christman@pabar.org>; Gabriele E. Miller Wagner <gabriele.millerwagner@pabar.org>; Paul D. Edger <pdedger.wfh@gmail.com>; David K. Trevaskis <david.trevaskis@pabar.org>
**Subject:** Attending Doylestown WFH on 10/17

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi all! I WILL be at the Doylsetown WFH on 10/17. In fact I'm going to every event on the schedule. If you do not let me participate we will call the police and file a report for theft by deception.

SLAAY will be in the parking lot outside ALL WFH events from now on with large signs warning all who attend they will be subpoenaed. We will gather everyone's name and license plate.

You are prohibited from having a problem with this. You have adopted the Constitution and these are constitutionally protected activities.

See you next Friday!

Paige Martineau, Esq.
Executive Director
SLAAY (Susquehanna Legal Aid for Adults and Youth)
1307 Park Ave., Box #10, Williamsport, PA 17701
slaay.org
570-392-3025

**LEGAL NOTICE**

This email contains privileged and confidential information intended only for the use of the individual(s) named above. If you have received this email in error, please immediately notify the sender and delete this email. Dissemination or copying of this email by an unintended recipient is strictly prohibited.

# Exhibit E

**From:** Paige Martineau <paigemartineau@slaay.org>
**Date:** October 11, 2025 at 11:51:07 AM EDT
**Cc:** Bill Christman <bill.christman@pabar.org>, "Gabriele E. Miller Wagner" <Gabriele.MillerWagner@pabar.org>, "Paul D. Edger" <pdedger.wfh@gmail.com>, "David K. Trevaskis" <David.Trevaskis@pabar.org>
**Subject: Injunction to provide Hotdocs file so SLAAY can share for free with all Pennsylvanians**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello members of the media. As you may know, SLAAY is an official sponsor of Wills for Heroes for Clinton, Columbia, and Montour counites. As a reminder, all attendees, veterans and volunteers, of upcoming programs, including the one scheduled for Doylestown on October 17, 2025, will have their names and addresses published to the docket at 4:25-cv-1848.

Attached and copied below please find a press release. SLAAY has filed an injunction requiring the PBA to comply with rules established by Pro Bono Net and Law Help Interactive to share templates created with a program called Hotdocs. Once the PBA shares the template with us, we will be uploading it to a program called A2J, and then Pennsylvanians can get wills, for free, online, without having to attend a Wills for Heroes event. We have not served this lawsuit yet because we are waiting for the Court to issue a protective order. If it has not issued it by Monday, we will be appealing that to the 3rd Circuit, then serving the lawsuit once the protective order is entered. This is a self-proving lawsuit alleging illegal retaliation in response to criticism, so we will win our case if they retaliate, but Defendants do not seem to have realized that yet, so they keep retaliating. Please let us know if you have any questions.

FOR IMMEDIATE RELEASE

October 11, 2025

Contact:
Susquehanna Legal Aid for Adults and Youth (SLAAY)
info@slaay.org | www.slaay.org
Phone 570-392-3025

---

1. SLAAY Files Federal Motion to Open "Wills for Heroes" Program to the Public

Williamsport, PA —
Susquehanna Legal Aid for Adults and Youth (SLAAY) has filed a motion in the United States District Court for the Middle District of Pennsylvania asking the court to order the Pennsylvania Bar Association (PBA) to release its "Wills for Heroes" HotDocs template so it can be uploaded to Law Help Interactive's A2J Author platform for public use.

The filing, brought under Rule 65 of the Federal Rules of Civil Procedure, seeks a preliminary injunction requiring the PBA to share the automated estate-planning form that lawyers currently use for emergency-service volunteers.

"Pennsylvanians die every day without a will, and there's no reason this lifesaving tool should be locked away," said SLAAY executive director Paige Martineau.
"Uploading the template would take only a few hours and would give every resident of the Commonwealth free, secure access to basic estate-planning documents."

2. Background

The motion explains that:

- The PBA created its Wills for Heroes forms using HotDocs, a software platform integrated into Law Help Interactive (LHI).
- Under LHI's terms of use, participating organizations must share templates so they can be deployed statewide.
- LHI's A2J Author system allows those templates to be offered online to the public at no cost.
- SLAAY's director trained extensively on HotDocs at North Penn Legal Services and is fully qualified to upload the existing template.
- The process would take only a few hours or days and would impose no harm or expense on the PBA.

SLAAY argues that refusing to share the template violates the public-interest purpose of the LHI program and deprives Pennsylvanians of free estate-planning assistance.
The filing characterizes the current situation as "a group of firefighters standing outside a burning house taking photos for a calendar while the house burns."

"The fire is the lack of simple wills for ordinary families," the motion says.
"All that's needed is to hand over the hose."

3. Relief Requested

The motion asks the court to:

1. Order the PBA to provide SLAAY with a copy of the Wills for Heroes HotDocs template within five days, delivered electronically.
2. Permit SLAAY to upload the template to A2J Author so that every Pennsylvanian can prepare a basic will free of charge.
3. Recognize that the public interest strongly favors immediate access, since lack of a will often leaves families unprotected and estates unresolved.

The filing stresses that Pennsylvanians dying without wills constitutes irreparable harm, while the PBA cannot identify any measurable harm to itself if the form is shared.

4. About SLAAY

Susquehanna Legal Aid for Adults and Youth (SLAAY) is a nonprofit legal-aid organization based in Williamsport, Pennsylvania.
SLAAY provides civil-legal assistance to rural and low-income residents, veterans, and first responders, and advocates for open, technology-driven access to justice across the Commonwealth.
Learn more at www.slaay.org.

**LEGAL NOTICE**

This email contains privileged and confidential information intended only for the use of the individual(s) named above. If you have received this email in error, please immediately notify the sender and delete this email. Dissemination or copying of this email by an unintended recipient is strictly prohibited.

a. FOR IMMEDIATE RELEASE

October 11, 2025

Contact:
Susquehanna Legal Aid for Adults and Youth (SLAAY)
info@slaay.org | www.slaay.org
Phone 570-392-3025

---

1. SLAAY Files Federal Motion to Open "Wills for Heroes" Program to the Public

Williamsport, PA —
Susquehanna Legal Aid for Adults and Youth (SLAAY) has filed a motion in the United States District Court for the Middle District of Pennsylvania asking the court to order the Pennsylvania Bar Association (PBA) to release its "Wills for Heroes" HotDocs template so it can be uploaded to Law Help Interactive's A2J Author platform for public use.

The filing, brought under Rule 65 of the Federal Rules of Civil Procedure, seeks a preliminary injunction requiring the PBA to share the automated estate-planning form that lawyers currently use for emergency-service volunteers.

"Pennsylvanians die every day without a will, and there's no reason this lifesaving tool should be locked away," said SLAAY executive director Paige Martineau.
"Uploading the template would take only a few hours and would give every resident of the Commonwealth free, secure access to basic estate-planning documents."

2. Background

The motion explains that:

- The PBA created its Wills for Heroes forms using HotDocs, a software platform integrated into Law Help Interactive (LHI).
- Under LHI's terms of use, participating organizations must share templates so they can be deployed statewide.
- LHI's A2J Author system allows those templates to be offered online to the public at no cost.
- SLAAY's director trained extensively on HotDocs at North Penn Legal Services and is fully qualified to upload the existing template.

- The process would take only a few hours or days and would impose no harm or expense on the PBA.

SLAAY argues that refusing to share the template violates the public-interest purpose of the LHI program and deprives Pennsylvanians of free estate-planning assistance.
The filing characterizes the current situation as "a group of firefighters standing outside a burning house taking photos for a calendar while the house burns."

"The fire is the lack of simple wills for ordinary families," the motion says.
"All that's needed is to hand over the hose."

3. Relief Requested

The motion asks the court to:

1. Order the PBA to provide SLAAY with a copy of the Wills for Heroes HotDocs template within five days, delivered electronically.
2. Permit SLAAY to upload the template to A2J Author so that every Pennsylvanian can prepare a basic will free of charge.
3. Recognize that the public interest strongly favors immediate access, since lack of a will often leaves families unprotected and estates unresolved.

The filing stresses that Pennsylvanians dying without wills constitutes irreparable harm, while the PBA cannot identify any measurable harm to itself if the form is shared.

4. About SLAAY

Susquehanna Legal Aid for Adults and Youth (SLAAY) is a nonprofit legal-aid organization based in Williamsport, Pennsylvania.
SLAAY provides civil-legal assistance to rural and low-income residents, veterans, and first responders, and advocates for open, technology-driven access to justice across the Commonwealth.
Learn more at www.slaay.org.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SLAAY (SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH), et al.<br>Plaintiff/movant,<br>v.<br>AMERICA BAR ASSOCIATION, et al,<br>Defendants | CASE NO. 4:25-cv-01848-MWB<br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ORDERING THE PBA TO PROVIDE SLAAY WITH WILLS FOR HEROES HOTDOCS FILE SO THAT SLAAY CAN UPLOAD TO A2J<br>ORAL ARGUMENT REQUESTED |

Under Federal Rule of Civil Procedure 65(a), Plaintiff SLAAY moves for a preliminary injunction requiring the PBA TO PROVIDE SLAAY WITH ITS WILLS FOR HEROES HOTDOCS FILE TO UPLOAD TO A2J.

1. Plaintiff is likely to succeed on the merits of the claims.

2. The PBA has created a template for Wills for Heroes using the program Hotdocs.
3. Plaintiff Martineau trained extensively on Hotdocs at North Penn Legal Services under Sheila Fisher, and learned how templates work in the nonprofit world.
4. Hotdocs and Wills for Heroes are part of LHI, or Law Help Interactive.
5. The terms of use of Law Help Interactive require templates to be shared.
6. LHI has a program called A2J, that allows Hotdocs templates to be uploaded online for individuals to use for free.
7. It would only take a few hours or, at most, a few days, to upload the Wills for Heroes template to A2J.
8. Then, everyone in the Commonwealth would have access to free estate planning.
9. The PBA is refusing to comply, because it wants to keep the Wills for Heroes program as a tool to boast about itself.
10. The Wills for Heroes program is like a group of firefighters standing outside a burning house, having a photoshoot for a calendar to raise money for charity.
11. There is a fire, namely, the lack of simple estate plans for Pennsylvanians.

12. It would take almost no time or energy for the PBA to simply upload its template and solve that entire problem for the state.

13. Instead, they are hoarding the template, while taking photos of themselves claiming to do good work.

14. The terms of use of LHI require the PBA to share the template, it would benefit the public, and there would be no harm at all the PBA (unless it admits that the purpose of Wills for Heroes is to benefit lawyers, not the public).

15. SLAAY is entitled to a copy of the template so it can upload it and improve the lives of millions of Pennsylvanians.

16. Pennsylvanians dying without wills is an irreparable harm.

17. Defendants cannot identify any measurable potential harm at all.

18. Granting a preliminary injunction furthers the public interest.

19. Pursuant to Middle District of Pennsylvania Local Rule 7.9, Plaintiffs request oral argument on this motion.

20. Pursuant to Middle District of Pennsylvania Local Rule 7.1, Plaintiff's counsel Paige Martineau has not communicated with opposing

counsel because Plaintiffs have requested a protective Order prior to serving the complaint. Defendants have repeatedly threatened to harm Plaintiffs if Plaintiffs bring these claims or do not stop raising concerns publicly.

21. Plaintiffs respectfully request the Court grant their Motion and enter the attached order seeking the following relief:

    a. The PBA shall provide the Wills for Heroes Hotdocs template to SLAAY within five (5) days of this order via email.

Dated: October 11, 2025.

s/Paige Martineau, Esq.
Paige Martineau, Esq.
Executive Director
SLAAY (Susquehanna Legal Aid for Adults and Youth)
647 East Third Street
Williamsport, PA 17701
570-392-3025
paigemartineau@slaay.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PAIGE MARTINEAU and SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH, INC. (SLAAY),**<br>**Plaintiffs,**<br>**vs.**<br><br>**ABA et al.**<br>**Defendants** | **Case No. 4:25-cv-1848**<br><br>**Order on Plaintiffs' MOTION FOR PRELIMINARY INJUNCTION ORDERING THE PBA TO PROVIDE SLAAY WITH WILLS FOR HEROES HOTDOCS FILE SO THAT SLAAY CAN UPLOAD TO A2J** |

**AND NOW, this ___ day of __________, 2025, upon consideration of the accompanying MOTION FOR PRELIMINARY INJUNCTION ORDERING THE PBA TO PROVIDE SLAAY WITH WILLS FOR HEROES HOTDOCS FILE SO THAT SLAAY CAN UPLOAD TO A2J, the Court ORDERS that:**

**Within three (3) days of the date of this Order, the PBA shall provide SLAAY with all Hotdocs files and other templates it uses for Wills for Heroes, and shall consent to SLAAY uploading those templates to A2J and otherwise distributing those templates so that Pennsylvanians can obtain wills and estate planning for free without needing to attend a Wills for Heroes event, as required by the Terms of Probono.net and Law Help Interactive.**

**IT IS SO ORDERED.**