IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAIGE MARTINEAU and | |
| SUSQUEHANNA LEGAL AID FOR ADULTS AND | |
| YOUTH, INC. (SLAAY), | Case No. |
| Plaintiffs, | |
|     vs. | |
| | |
| AMERICAN BAR ASSOCIATION; | |
| PENNSYLVANIA BOARD OF LAW EXAMINERS; | |
| SUPREME COURT OF PENNSYLVANIA; | |
| PENNSYLVANIA GENERAL ASSEMBLY; | |
| NORTH PENN LEGAL SERVICES; | |
| LEGAL SERVICES CORPORATION; | |
| PENNSYLVANIA BAR ASSOCIATION; | |
| UNION–SNYDER COUNTY BAR ASSOCIATION; | |
| 17TH JUDICIAL DISTRICT OF PENNSYLVANIA | |
| (UNION AND SNYDER COUNTIES); | |
| JUDGE PIECUCH, individually; | |
| JUDGE HACKENBERG, individually; | |
| NORTHUMBERLAND COUNTY | |
| PROTHONOTARY'S OFFICE; | |

| | |
|---|---|
| JAMIE SALESKI, individually; | |
| PENNSYLVANIA LEGAL AID NETWORK, INC. (PLAN); | |
| PENNSYLVANIA DISCIPLINARY BOARD; | |
| PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; and | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES CONGRESS, HONORABLE MARK CONWAY, K. MICHAEL SULLIVAN, ESQ., PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS Defendants. | Amended Complaint Jury demanded |
| Defendants | |

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the First, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983, under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek redress for the deprivation of rights secured by the Constitution and laws of the United States.

2. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 65.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred within the Middle District of Pennsylvania, and many Defendants reside or operate here.

4. Plaintiff Paige Martineau is a former attorney and Disability Law Group Manager for North Penn Legal Services, and is currently an attorney and director of Susquehanna Legal Aid for Adults and Youth, Inc. ("SLAAY").

5. Plaintiff SLAAY is a Pennsylvania nonprofit corporation providing legal services in tax, veterans' services, consumer protection, and other matters of public interest.

6. Defendant American Bar Association ("ABA") is a private trade association headquartered in Chicago, Illinois, that accredits law schools and promulgates model rules of conduct, which Pennsylvania has adopted without legislative enactment.

7. Defendant Pennsylvania Board of Law Examiners administers bar admissions, including law school accreditation, examinations, and character and fitness determinations, under authority delegated by the Supreme Court of Pennsylvania.

8. Defendant Supreme Court of Pennsylvania is the highest court of the Commonwealth and claims authority to regulate attorneys, discipline, and procedural rules through judge-made regulations and committees.

9. Defendant Pennsylvania General Assembly is the legislative body of the Commonwealth. By statute and constitutional amendment, it has unlawfully delegated its legislative powers to the judiciary and private associations.

10. Defendant North Penn Legal Services ("NPLS") is a regional nonprofit legal-aid provider that retaliated against Plaintiff Martineau for whistleblowing, misrepresented her departure, and concealed malpractice from funders and insurers.

11. Defendant Legal Services Corporation ("LSC") is a federally chartered nonprofit that distributes federal funds to state-level entities such as PLAN and has facilitated structural conflicts of interest in civil legal aid.

12. Defendant Pennsylvania Bar Association ("PBA") is a statewide voluntary bar association that promises equal benefits to members but excluded Plaintiffs from events and programs in retaliation for criticism.

13. Defendant Union–Snyder County Bar Association ("USCBA") is a county bar association that has excluded Plaintiffs from professional opportunities and retaliated against whistleblowing attorneys.

14. Defendant 17th Judicial District of Pennsylvania encompasses Union and Snyder Counties and is responsible for judicial operations in that district.

15. Defendant Judge Piecuch and Hackenberg are a sitting judges of the 17th Judicial District and sued in their individual capacity for retaliatory conduct.

16. Defendant K. Michael Sullivan, Esq., promised Plaintiff they could participate in Wills for Heroes, they relied on that promise, he reneged, and Plaintiff suffered harm, and Sullivan also committed fraud by falsely stating to the bar listserv that Martineau had not consulted him before sending a bar email, when Martineau had consulted with him seven different times, including an email that said "does anyone want to talk about this before a send a

written motion to the bar," and Sullivan ignored her, intending to cause her harm, and to elevate himself, directly and proximately causing damages to Plaintiff.

17. The PA DMVA is a state agency that promises not to provide more support to one private organization than another, but provided more support to the PBA's programs than SLAAYs, and violated the First Amendment by cancelling a Wills for Heroes event because SLAAY planned a small, spontaneous protest.

18. Defendant Mark Conway is a federal bankruptcy judge who subjects Martineau to heightened scrutiny because of her protected activities.

19. Defendant Northumberland County Prothonotary's Office maintains court filings and has obstructed Plaintiffs' access to court processes.

20. Defendant Jamie Saleski is the elected Northumberland County Prothonotary and is sued in her individual capacity for obstructing Plaintiffs' access and engaging in retaliation.

21. Defendant Pennsylvania Legal Aid Network, Inc. ("PLAN") is a private nonprofit corporation based in Harrisburg that controls distribution of civil legal aid funding in Pennsylvania without statutory standards or public accountability.

22. Defendant Pennsylvania Disciplinary Board is an administrative body of the Supreme Court of Pennsylvania responsible for investigating, prosecuting, and adjudicating allegations of attorney misconduct.

23. Defendant Pennsylvania Department of Human Services ("DHS"), formerly the Department of Public Welfare, administers federal and state block grant funds, including Social Services Block Grant dollars, and distributes them to PLAN without objective standards, enabling PLAN's monopolistic control.

24. Defendant United States Department of Health and Human Services ("HHS") oversees the federal Social Services Block Grant program, through which federal funds are distributed to Pennsylvania and then to PLAN. By delegating discretionary control of these funds without

intelligible principles or safeguards, HHS has enabled unconstitutional retaliation and denial of equal access to funding.

25. Defendant United States Congress enacted the Legal Services Corporation Act, 42 U.S.C. § 2996 et seq., creating the Legal Services Corporation as a federally funded nonprofit corporation. Congress delegated its own authority over civil legal aid appropriations and administration to LSC, which operates without meaningful standards or accountability and sub-delegates to PLAN.

26. North Penn Legal Services committed massive malpractice while Martineau worked there, NPLS retaliated, brutally, the retaliation transferred to the USCBA when NPLS attorney Mary Beth Clark became president of the USCBA, and encouraged others to retaliate against Plaintiff, Martineau also separately blew the whistle when the USCBA lied to wounded warriors and disabled veterans about being invited to Wills for Heroes.

27. USCBA responded immaturely and unprofessionally, which transferred the conflict to the PBA, and the PBA retaliated against Plaintiff for good faith criticism.

Cause of Action 1: Violation of the Pennsylvania Whistleblower Law

28. Plaintiff was employed by NPLS from 2017 to 2021, reasonably and in good faith reported massive malpractice, which constituted protected activity under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq., suffered brutal retaliation, continues to suffer retaliation, suffered loss of income, damage to her professional reputation, emotional distress, and interference with future employment opportunities, and is entitled to all remedies available under law, including actual damages, declaratory and injunctive relief, damages, attorneys' fees, and costs.

Cause of Action 2: Violation of the Unfair Trade Practices  (73 P.S. § 201-1 et seq.)

29. NPLS engages in trade and commerce, represented itself as a lawful, ethical organization while simultaneously engaging in retaliation, deception, and misrepresentation, omitted

material facts when communicating external parties about Plaintiffs, created a misleading impression and a defamatory half-truth with omissions and misrepresentations, that were likely to mislead reasonable funders, regulatory bodies, and other institutions who were acting in reliance on NPLS's statements, as a direct and proximate result, Plaintiff suffered reputational harm, professional exclusion, emotional distress, and impediments to future employment, thus Plaintiff is entitled to actual damages, statutory damages, injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief this Court deems appropriate under 73 P.S. § 201-1 et seq,

<u>Cause of Action 3 – Defamation by Half-Truth (NPLS)</u>

30. North Penn Legal Services ("NPLS") made false and misleading statements to third parties regarding the reasons for Plaintiff's departure, her performance, and her character, they omitted material facts necessary to prevent them from being misleading, creating a defamatory "half-truth" and false impressions about Plaintiff, which were communicated recklessly and with disregard for the truth, and intended to damage Plaintiff's reputation in the legal community, which directly and proximately caused reputational harm, emotional distress, and interference with her professional opportunities, which entitles her to compensatory damages, punitive damages, and any further relief just and proper.

<u>Cause of Action 4 – Breach of Contract (PBA)</u>

31. Plaintiff is a dues-paying member of the Pennsylvania Bar Association ("PBA") in good standing entitled to full access to all activities, the PBA has adopted the Pennsylvania Rules of Professional Conduct ("RPC") into its governing framework and represents itself publicly as committed to upholding those rules, the RPC requires them to reward and welcome criticism, among other obligations, but when Plaintiff engaged in protected activity by criticizing practices that harmed the public, the PBA excluded Plaintiff and SLAAY from professional opportunities, denied access to events and programs, and distanced itself in

response to Plaintiff's whistleblowing, which breached its contractual obligations to provide the benefits of membership and to uphold the RPC and caused professional exclusion, reputational harm, loss of networking and referral opportunities, and emotional distress, which entitles Plaintiff to compensatory damages, declaratory judgment, and injunctive relief.

Cause of Action 5 –Unfair Trade Practices (73 P.S. § 201-1 et seq.) (PBA)

32. The PBA engages in trade and commerce by soliciting membership dues and promoting membership benefits to attorneys in Pennsylvania, falsely represented through its website and promotional materials that all members in good standing would receive the full benefits of membership, including professional opportunities, advocacy, and participation in programs and that it would support attorneys who act ethically and in the public interest, these omissions and misrepresentations were likely to mislead reasonable attorneys and consumers of PBA's services, which caused professional exclusion, reputational injury, loss of opportunities, and emotional harm, and justifies injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief the Court deems proper under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

Cause of Action 6 – Promissory Estoppel (PBA)

33. The PBA made express and implied clear and unambiguous promises to Plaintiffs that they would be treated equally with other members, they reasonably and foreseeably relied on these promises, which caused professional isolation, reputational harm, loss of opportunities, and emotional distress when the promise was breached, injustice can only be avoided by compelling PBA to honor its commitments, so equity requires enforcement of PBA's promises to Plaintiff, and declaratory relief, injunctive relief restoring full membership participation, compensatory damages, and such other proper equitable relief/

Cause of Action 7– Breach of Fiduciary Duty (PBA)

34. The PBA owes fiduciary duties, like loyalty, care, and good faith, to its members, Plaintiff
reasonably relied on PBA's fiduciary role and  fulfilled her obligations as a member, then
the PBA breached its fiduciary duties by retaliating for good faith criticism, in its own
institutional interest, which was disloyal, in bad faith, and inconsistent with PBA's ethical
obligations to protect and advocate for attorneys who expose misconduct, and directly and
proximately caused Plaintiffs' reputational harm, loss of professional opportunities,
emotional distress, and professional isolation, entitling them to seeks declaratory judgment,
injunctive relief, compensatory damages, and other relief as the Court deems just and
proper.

Cause of Action 8 – First Amendment Retaliation (PBA)

35. The PBA has adopted the Rules of Professional Conduct, which adopt the Constitution, but
when Plaintiffs engaged in protected First Amendment activity, the PBA retaliated against
them, the retaliation would deter a reasonable attorney from continuing to engage in
protected speech, whistleblowing, or advocacy against corruption, directly and proximately
caused Plaintiffs' reputational harm, professional exclusion, loss of opportunities, and
emotional distress, which entitles them to a declaratory judgment, injunctive relief restoring
her full participation in PBA programs, compensatory damages, and such other relief as this
Court deems appropriate.

Cause of Action 9 – Breach of Contract (USCBA)

36. The USCBA has adopted the Pennsylvania Rules of Professional Conduct ("RPC") into its
Articles of Incorporation, which in turn adopt the Constitution, so Plaintiff, a member in
good standing of the USCBA, engaged in good-faith whistleblowing, exposing misconduct
at NPLS and criticizing structural failures of legal regulation and problems with the
USCBA's 2025 Wills for Heroes program, but the USCBA retaliated against Plaintiff,

breached its contractual obligations directly and proximately caused reputational harm, professional exclusion, and loss of opportunities, entitling Plaintiffs to declaratory judgment, injunctive relief requiring USCBA to honor its obligations to members, compensatory damages, and such other relief deemed just and proper.

Cause of Action 10 – Promissory Estoppel (USCBA) and Sullivan

37. The Union-Snyder County Bar Association ("USCBA") and Sullivan made clear and unambiguous promises to Plaintiffs that it would provide support, fair treatment, and opportunities for participation in professional and community programs, Plaintiff reasonably and foreseeably relied on these promises, however, the USCBA excluded Plaintiff and SLAAY, directly contradicting their promises the promises of support and fair treatment extended to members, which directly and proximately caused professional isolation, reputational harm, loss of opportunities, misspent federal work-study funds, and emotional distress, so equity requires enforcement of USCBA's promises to Plaintiff, as injustice can only be avoided by compelling USCBA to honor the commitments it made to members, and Plaintiff is entitled to declaratory relief, injunctive relief, compensatory damages, and such other equitable relief as the Court deems proper.

Cause of Action 11 – Violation of the Unfair Trade Practices (USCBA) and fraud (Sullivan)

38. The Union-Snyder County Bar Association ("USCBA") engages in trade and commerce, USCBA and Sullivan represented through its bylaws, incorporation of the Rules of Professional Conduct, and membership materials that it would provide equal treatment, program access, and support for members in good standing and that it was committed to ethical leadership and to protecting members engaged in lawful, ethical practice, these representations were false and misleading these omissions and misrepresentations were likely to mislead reasonable attorneys and consumers of USCBA's services, and directly and proximately caused reputational harm, professional exclusion, loss of opportunities, and

emotional injury, entitling Plaintiff to injunctive relief, declaratory relief, treble damages where permitted, attorneys' fees, and all other relief deemed appropriate.

Cause of Action 12 – Breach of Fiduciary Duty (USCBA)

39. The USCBA owes fiduciary duties to Martineau, breached them, after Plaintiff reasonably relied on them, these actions were disloyal, taken in bad faith, and inconsistent with USCBA's fiduciary responsibilities, directly and proximately caused Plaintiffs reputational harm, professional exclusion, loss of opportunities, and emotional distress, and entitles them to declaratory judgment, injunctive relief, compensatory damages, and such other relief as this Court deems just and proper.

Cause of Action 13 – Receivership (USCBA)

40. USCBA has demonstrated an inability or unwillingness to comply with its ethical, fiduciary, and legal duties to its members, retaliated against Plaintiff for engaging in whistleblowing and protected activity, excluded her from programs and referrals, and misrepresented its commitments to its members and the public, created a climate of fear and silence in the regional legal community, deterring other attorneys from reporting misconduct or advocating for reform, evidence USCBA's incapacity to self-regulate in accordance with its own rules, its fiduciary duties, and public policy, so equity requires appointment of a receiver to assume oversight of USCBA's governance and operations, to restore ethical function, protect whistleblowers, and ensure compliance with professional duties, and Plaintiff is entitled to the appointment of a receiver, an audit of USCBA's activities, recommendations for structural reforms, and such equitable relief as this Court deems necessary to safeguard the rights of legal professionals and the public.

Cause of Action 14 – First Amendment Retaliation (USCBA) and PA DMVA

41. The USCBA adopted the RPC, which adopted the Constitution, the Constitution applies to the PADMVA, Plaintiff engaged in protected First Amendment activity by criticizing

misconduct within NPLS, exposing failures of legal-aid funding and regulation, and advocating for reform, USCBA and PADMVA retaliated, these actions would deter a reasonable attorney from engaging in protected speech and advocacy and directly and proximately caused reputational harm, professional exclusion, and loss of opportunities, which entitles Plaintiff to a declaratory judgment, injunctive relief, compensatory damages, and such other relief deemed proper.

Cause of Action 15 – Equal Protection (USCBA)

42. USCBA denied Plaintiff and SLAAY access to programs, referrals, and advocacy while extending these benefits to similarly situated attorneys and organizations, favored attorneys and organizations that did not engage in whistleblowing or criticism of entrenched institutions, while excluding Plaintiff for her protected activity. this disparate treatment lacked any rational basis and was discriminatory against Plaintiff as a whistleblower and critic and directly and proximately caused professional exclusion, reputational harm, and loss of opportunities, which entitles Plaintiff to declaratory relief, injunctive relief, compensatory damages, and such other relief deemed proper.

Cause of Action 16 – Due Process (USCBA)

43. USCBA adopted the RPC, which include commitments to fairness, transparency, and the protection of rights consistent with constitutional due process, but denied Plaintiff access to programs and opportunities without notice, explanation, or fair process, arbitrarily and in retaliation for Plaintiff's protected activity, rather than through objective or published criteria, which deprived Plaintiff of membership benefits she had paid for and reasonably relied upon, and directly and proximately caused reputational harm, professional exclusion, loss of opportunities, and emotional distress, entitling her to a declaratory judgment, injunctive relief compensatory damages, and such other relief as this Court deems proper.

Cause of Action 17 – First Amendment, Due Process, Equal Protection (Judges)

44. Judge Conway, Piecuch, and Hackenberg engage in disparate treatment toward Martineau with regard to treatment in Court and out-of-court, which is not protected by judicial immunity, act under color of state law, which would deter a reasonable attorney from continuing to engage in protected speech, lack any rational basis for disparate treatment, are motivated by retaliation against Plaintiff's protected activity, have directly and proximately caused reputational harm, professional exclusion, interference with her practice, and emotional distress, and are liable to Plaintiff for declaratory, injunctive, compensatory, and punitive damages, and other relief.

Cause of Action 20 – First Amendment Retaliation (Saleski and Office of Prothonotary)

45. Plaintiff engaged in protected First Amendment activity by recording Jamie Saleski in a public place, in her role as Prothonotary of Northumberland County and acting under color of state law, she then retaliated against Plaintiff by obstructing filings, denying access to public resources, selectively applying procedures, and trying to have her arrested, which would deter a reasonable attorney from engaging in protected speech and advocacy and directly and proximately caused reputational harm, delayed litigation, interference with her practice, and emotional distress, which entitles her to a declaratory judgment, injunctive relief, compensatory damages, and punitive damages against Defendant Saleski in her individual capacity.

Cause of Action 20 -Unfair and Deceptive Practices against ABA

46. The ABA has lied to the American public for years by falsely claiming that law school, the bar exam, character and fitness, and other licensing schemes provide value, when in reality few things have harmed the public more than the ABA's arbitrary limits on who can be a lawyer, it holds itself out as protecting the public and advancing justice, while in fact devoting only a minimal fraction of its resources to research, reform, or solutions that would make legal services more affordable or effective, failed to conduct, sponsor, or publish

credible peer-reviewed research demonstrating that its accreditation policies or professional regulations are the most effective or least costly means of ensuring competent legal services, devoted disproportionate resources to marketing, self-promotion, and peripheral projects, while neglecting urgent structural problems in legal access, which misleads members of the profession, funders, policymakers, and the public, Plaintiffs and the public relied on the ABA's representations of authority and expertise, but those representations were false, misleading, and deceptive, which  directly and proximately caused harm, like inflated legal education costs, lack of affordable legal services, and institutional retaliation against critics, which entitles Plaintiff to declaratory and injunctive relief requiring the ABA to cease deceptive marketing, to devote resources to meaningful research and reform, and to publish peer-reviewed evidence supporting its regulatory claims under Sections 1983, 2201, and state law mandamus claims.

Cause of Action 22: Unconstitutional Delegation from US Congress to LSC

47. The United States Constitution vests "[a]ll legislative Powers" in Congress, which cannot delegate its lawmaking authority or appropriations power to private actors without intelligible principles, safeguards, or accountability, yet delegated lawmaking over civil legal aid funding, a core policy choice, to a bizarre private corporation called the Legal Services Corporation, which is neither a federal agency nor subject to direct congressional oversight in its discretionary decisions, and sub-delegates civil legal aid administration to state-level monopolies such as the Pennsylvania Legal Aid Network ("PLAN"), which then distributes funds without objective standards, directly and proximately causing harm to Plaintiffs and the public, entitling Plaintiff to a mandamus order under 28 U.S.C. § 1361, declaratory relief under 28 U.S.C. § 2201, and for actual, compensatory, punitive, injunctive, declaratory and other damages, including attorneys fees, under 42 USC 1983.

Cause of Action 23 – Unconstitutional Delegation via Licensing Statute

48. The Pennsylvania Constitution, Article II, § 1, vests all legislative power in the General Assembly, but the General Assembly violated that rule, under color of state law, by enacting statutes delegating the admission and discipline of lawyers, a core legislative policy choice, involving speech, petition, and privacy rights, then violated it a second time when they decided the delegation would be to self-interested lawyers, the only group of people on the planet who would benefit from rules about admission and discipline that harm the public, instead of a neutral, independent panel, enacted an entire series of statutes that allows private, self-interested individuals to enact laws that violate citizens' First Amendment and other constitutional rights by delegating the admission of law to the Supreme Court and Board of Law Examiners, without intelligible principles, objective standards, or legislative safeguards, which entitles Plaintiff to mandamus,  declaratory and injunctive relief, compensatory damages, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988, and declaratory judgment under 28 U.S.C. § 2201 and state constitutional law declaring that the delegation of attorney-licensing authority is unconstitutional

Cause of Action 24 – Unconstitutional Delegation via Constitutional Amendment

49. In 1902, Pennsylvania adopted a constitutional amendment granting the Supreme Court of Pennsylvania the power to regulate the practice of law, which unlawfully  transferred to the judiciary core policymaking authority, as the regulation of who may call themselves an "attorney," the qualifications required for practice, and the procedures governing discipline are fundamental legislative decisions, not judicial ones, so  the Commonwealth delegated nondelegable legislative authority to the judiciary, in violation of Article II, § 1 of the Pennsylvania Constitution, then the Supreme Court of Pennsylvania, acting under this delegation, further re-delegated its authority to subordinate lawyer-run bodies, including the Board of Law Examiners and the Disciplinary Board, compounding the lack of legislative oversight, which enabled private and conflicted groups of attorneys to wield unchecked

power over licensing, admission, and discipline, without intelligible principles, legislative safeguards, or public accountability, chilled speech, suppressed dissent, and permitted retaliation against whistleblowers such as Plaintiff, entitling her to declaratory and injunctive relief that the 1902 constitutional amendment and subsequent delegations to the judiciary and its subordinate bodies are unconstitutional and unenforceable under the Pennsylvania Constitution's nondelegation doctrine.

Cause of Action 26 – Unconstitutional Delegation of Law School Accreditation

50. Pennsylvania delegates core policy choices about education requirements for lawyers to lawyers, even though lawyers are the only group of people on the planet who would benefit from education requirements that limited the supply of lawyers and allowed existing lawyers to charge higher fees, teenagers who have completed mock trial or enrolled agent training perform better as lawyers than law school graduates, who spent 100 times more money on their education, neither the General Assembly nor the Supreme Court has established intelligible principles or legislative safeguards governing how the ABA must accredit schools, the ABA decided on absurd rules, like how it rejected, in 1921, the year after women could vote, its own report from 1919, which said that voluntary community college was the only schooling required, and prohibited lawyers from learning the law when it was dark outside, which had no purpose other than exclude women and the working class, yet the delegatees act under color of state law, which entitles Plaintiff to an injunctive and declaratory order declaring that law school is an unlawful prior restraint on speech, a less restrictive alternative would be lay court monitors to observe court hearings and report if lawyers and judges are late, rude, or incompetent, and that only the public can make laws depleting First Amendment rights.

Cause of Action 27 – Unconstitutional Delegation of Bar Examination

16

51. Pennsylvania law requires applicants for admission to the bar to pass a written bar examination administered under the authority of the Pennsylvania Board of Law Examiners, this bar exam has no correlation to legal skill, it serves a barrier that excludes competent attorneys from being allowed to speak, the General Assembly has delegated to the Supreme Court of Pennsylvania, and the Supreme Court has in turn delegated to the Board of Law Examiners, the exclusive authority to determine the form, content, administration, and scoring of the bar examination, the Board of Law Examiners exercises this power without intelligible principles, objective standards, or legislative safeguards, there is no statutory guidance directing what the bar exam must measure, how it must be graded, or how it relates to competence to practice law, which violates Article II, § 1 of the Pennsylvania Constitution,, burdens rights protected by the First and Fourteenth Amendments to the U.S. Constitution by conditioning speech and advocacy on passage of a discretionary, high-stakes test lacking constitutional safeguards, the Board of Law Examiners and the Supreme Court act under color of state law to deprive Plaintiff and others of rights secured by the Constitution, which entitles Plaintiff to a declaratory judgment that the delegation of bar-examination authority to the Supreme Court and Board of Law Examiners is unconstitutional and unenforceable and injunctive relief prohibiting Defendants from enforcing the bar exam requirement absent statutory standards enacted by the General Assembly, and requiring that any qualification for practice be defined by objective, viewpoint-neutral criteria established through legislation.

Cause of Action 28 – Unconstitutional Delegation of Character and Fitness Review

52. Pennsylvania law requires applicants for admission to the bar to demonstrate "character and fitness" to practice law, which is an unlawful prior restraint, and an unlawful delegation, as the General Assembly delegated this authority to the Supreme Court of Pennsylvania, which in turn delegated to the Pennsylvania Board of Law Examiners the exclusive power to

determine the standards, procedures, and outcomes of character and fitness reviews, but they administer this requirement without intelligible principles or legislative safeguards, so applicants are compelled to disclose private and sensitive information, including medical and mental health history, without statutory limits or protections, and the system permits arbitrary and discretionary denial of bar admission, chilling applicants' willingness to seek medical treatment and stigmatizing disability, which violates Article II, § 1 of the Pennsylvania Constitution, which prohibits the General Assembly from abdicating core legislative responsibilities without standards, and the U.S. Constitution by conditioning First Amendment rights (speech, petition, advocacy) on arbitrary review, and by denying due process through lack of notice, criteria, or appeal, which entitles Plaintiff to a declaratory judgment that the delegation of character and fitness review is unconstitutional and unenforceable. And injunctive relief prohibiting enforcement of character and fitness requirements absent objective statutory standards enacted by the General Assembly.

Cause of Action 29 – Unconstitutional Delegation of Disciplinary Authority

53. The General Assembly has delegated to the Supreme Court of Pennsylvania authority to regulate attorney discipline, which re-delegated this authority to its Disciplinary Board, a body composed primarily of attorneys who regulate their professional peers, which then redelegated reporting to individual lawyers, while the Disciplinary Board investigates, prosecutes, and adjudicates disciplinary matters without intelligible legislative principles or oversight, with no statutory standards defining misconduct, guiding disciplinary outcomes, or protecting against retaliatory enforcement, thus attorneys are subject to discipline at the discretion of their peers, creating structural conflicts of interest and enabling retaliation against whistleblowers and critics, thus the absence of neutral oversight violates Article II, § 1 of the Pennsylvania Constitution's nondelegation doctrine, as the General Assembly abdicated policymaking to a conflicted group of attorneys, violates the U.S. Constitution by

suppressing protected speech, denying procedural due process, and selectively punishing critics, and entitles Plaintiff to declaratory judgment that the delegation of disciplinary authority to the Disciplinary Board is unconstitutional and unenforceable and injunctive relief prohibiting enforcement of disciplinary rules absent objective statutory standards enacted by the General Assembly which comply with the Constitution.

Cause of Action 31 – Nondelegation: Rules of Professional Conduct

54. Lawyers should not be drafting the Pennsylvania Rules of Professional Conduct ("RPC") because they are the only group of people on the planet that benefit from arbitrary application of vague standards to exert unlawful control, govern the professional responsibilities of attorneys in the Commonwealth, yet the RPC were not enacted by the Pennsylvania General Assembly, they were promulgated by the Supreme Court of Pennsylvania pursuant to authority delegated to it by the General Assembly, and incorporate and enforce provisions of the American Bar Association's Model Rules of Professional Conduct, which are drafted by a private trade association without legislative oversight, public accountability, or intelligible principles, while neither the Pennsylvania Constitution nor any statute provides intelligible standards directing how the Supreme Court or the ABA must define, amend, or enforce the RPC, thus, the General Assembly abdicated its legislative duty to define attorney regulation, violating Article II, § 1 of the Pennsylvania Constitution, entitling Plaintiff to declaratory judgment that the RPC are invalid and unenforceable and injunctive relief prohibiting their further application.

Cause of Action 32– Unconstitutional Delegation of Civil and Criminal Procedure

55. the Pennsylvania General Assembly has permitted the Supreme Court of Pennsylvania, through its Rules Committees, to draft and promulgate the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Criminal Procedure, even though lawyers are the only group of people on the planet who would benefit from rules of procedure that harm the

19

public, and lay people are just as good, if not better, at drafting legal procedural rules than lawyers, regardless, these rules govern fundamental matters of civil and criminal litigation, including pleadings, motions, evidence, discovery, deadlines, and trial procedure and determine the substantive rights and obligations of litigants, lawyers, and the public, and are inherently legislative in nature, the General Assembly abdicated its core legislative responsibility to define how cases are tried and adjudicated in Pennsylvania courts, violated Article II, § 1 of the Pennsylvania Constitution, which prohibits the General Assembly from transferring its lawmaking powers to the judiciary or to private actors, violates the U.S. Constitution by allowing court-created rules to control access to the judicial process without notice-and-comment, public input, or legislative safeguards, thereby undermining due process and equal protection, and entitles Plaintiff to declaratory judgment that the delegation of authority to the Supreme Court and its Rules Committees to draft binding rules of civil and criminal procedure is unconstitutional and unenforceable and injunctive relief prohibiting enforcement of the Rules of Civil Procedure and Rules of Criminal Procedure absent statutory enactment by the General Assembly.

Cause of Action 33 – Unconstitutional Delegation of Authority to Courthouses

56. Courthouses in Pennsylvania have adopted and enforced local rules and policies restricting citizens' constitutional rights, including prohibitions on dress, cell phones, recording devices, and other forms of speech and expression, imposed at the discretion of individual courthouses, judges, or security officers, without authorization from the Pennsylvania General Assembly and without any intelligible legislative standards, with no statutes restricting citizens' First Amendment rights inside courthouses or authorizing judges to regulate public dress, cell phone possession, or recording devices, yet citizens retain the same rights of speech, expression, and access in courthouses as in any other public building, including the right to wear clothing of their choice, even if it is offensive to a judge, and to

carry and use cell phones to record government officials performing public functions, to allow judges or individual courthouses to impose restrictions based on dress, cell phone use, or recording is to empower them to abridge core constitutional rights arbitrarily, subject only to their personal preferences, such rules are inherently self-serving, immature, and partial, reflecting subjective bias rather than legitimate legislative standards, thus the General Assembly has unlawfully delegated legislative power to the judiciary and its local agents and entitles Plaintiff to a declaratory judgment that courthouse-imposed restrictions on dress, cell phones, recording devices, and public access are unconstitutional absent express statutory authorization and injunctive relief prohibiting Pennsylvania courts and courthouses from enforcing such restrictions unless and until the General Assembly enacts clear, viewpoint-neutral legislation governing these matters.

Cause of Action 34 – Unconstitutional Delegation of Judicial Recusal Rules

57. In Pennsylvania, judges have made their own rules governing judicial recusal, including the rule that judges are *presumed* to be fair and impartial and may decide for themselves whether they are biased, this presumption of impartiality and self-determination of recusal was not enacted by the Pennsylvania General Assembly, instead the Supreme Court of Pennsylvania and its subordinate courts adopted these rules through judicial self-regulation, without legislative authority or intelligible principles, yet the ability of judges to decide challenges to their own impartiality is inherently self-serving and creates an unavoidable conflict of interest, while presumption that judges are impartial has no basis in statute or empirical evidence, as neuroscientific and psychological research demonstrates that judges, like all decisionmakers, are subject to heuristics, biases, implicit associations, framing effects, anchoring, and emotional influences, and are no more impartial than other individuals, and the General Assembly has not enacted a statute authorizing judges to determine their own bias or to assume impartiality as a matter of law, so the General

Assembly unlawfully delegated legislative power in violation of Article II, § 1 of the Pennsylvania Constitution and entitles Plaintiff to a declaratory judgment that the presumption of judicial impartiality and the rule allowing judges to decide their own recusal motions are unconstitutional and unenforceable and injunctive relief prohibiting Pennsylvania courts from applying the presumption of impartiality or self-determined recusal rules, and requiring that recusal motions be adjudicated by a neutral judge under standards enacted by the General Assembly.

Cause of Action 35 – Unconstitutional Delegation of American Rule

58. Pennsylvania courts, following common law precedent and rules promulgated by judges, apply the "American Rule," under which each party must bear its own attorney's fees regardless of outcome, but this rule was not enacted by the Pennsylvania General Assembly, it was created and perpetuated by judges and lawyers through judicial decisions and court rules, yet the determination of how attorneys are compensated, whether fees may be shifted, and how litigation costs are distributed is a matter of substantive policy and resource allocation, inherently legislative in nature and must be enacted by statute through the General Assembly, not created by judges, by adopting and enforcing the American Rule without legislative authority or intelligible standards, Pennsylvania courts violated Article II, § 1 of the Pennsylvania Constitution, which vests all legislative power exclusively in the General Assembly, chills speech and advocacy by deterring litigants from pursuing meritorious claims out of fear of unrecoverable legal costs, and entitles Plaintiff to declaratory judgment that the American Rule is unconstitutional absent express statutory enactment by the General Assembly and injunctive relief prohibiting Pennsylvania courts from applying the American Rule unless and until it is enacted through statute by the General Assembly, under objective and viewpoint-neutral standards.

Cause of Action 36: Nondelegation: Delegation by PLAN and LSC

59. PLAN and LSC harm the public by delegating civil legal aid to single multi-county grantees, by definition, single multi-county grantees will exclude thousands of eligible citizens solely because of conflict of interest, a twenty-county organization will exclude twenty times the citizens that a single-county entity would exclude,  delegating civil legal aid grants to entities, instead of individual attorneys, still creates a group of citizens who are denied access to justice solely because of conflicts of interest, by conditioning access to state funding on silence or conformity, PLAN has burdened and retaliated against Plaintiffs for protected speech and petitioning activities, Plaintiffs are denied funding opportunities not because of neutral criteria, but because of their advocacy and criticism of entrenched legal-aid institutions, PLAN's closed process discriminates against similarly situated legal-aid organizations (such as SLAAY) by conferring automatic renewals on incumbents while categorically excluding new entrants, this unequal treatment lacks a rational basis and perpetuates arbitrary favoritism,  denies Plaintiffs procedural due process by administering state and federal funding without notice, criteria, hearings, or appeal, violates substantive due process by depriving Plaintiffs of the liberty to pursue a lawful calling and the property interest in competing for public funds on a fair and equal basis, and entitles Plaintiff to an order declaring that it is unconstitutional for PLAN, Inc. or the Pennsylvania Department of Human Services (DHS) to prefer statewide or multi-county regional organizations in awarding civil legal-aid funds, that the General Assembly, DHS, and PLAN be compelled to establish county-based civil legal-aid grant programs, structured as Entrepreneurial Legal Aid (ELA) contracts with individual attorneys or small, county-specific organizations, and that the Legal Services Corporation (LSC) be compelled to restructure its federal funding allocations in the same manner, by requiring county-based ELA grant competitions instead of awarding large regional monopolies.

Cause of Action 40: Violations of the First Amendment's guarantee of free speech

60. Legal self-regulation violates the First Amendment's guarantee of free speech,[1] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional restrictions on speech, Mandamus is proper to compel Defendants to repeal or restructure these systems to comply with constitutional standards, Under color of state law, Defendants violate Plaintiffs' First Amendment rights to free speech, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Causes of Action 41: Violations of the First Amendment's Religion Clause

61. Legal self-regulation  violates the First Amendment's Free Exercise of Religion Clause,[2] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional burdens on free exercise, Mandamus is proper to compel Defendants to restructure attorney regulation to remove religious burdens, Under color of state law, Defendants violate Plaintiffs' First Amendment right to free exercise of religion, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

---

[1] Attorney licensing prevents individuals from giving legal advice or advocacy, censoring speech based on status rather than content, without any evidentiary support for limitations, discipline by peers chills whistleblowing and criticism, forcing lawyers to self-censor, peer-controlled fee disputes discourages lawyers and clients from speaking openly about billing abuses, cell phone and recording bans prevent the press and public from monitoring government proceedings, prohibiting remote appearances denies access to speak in judicial forums to those unable to attend in person, and the American rule imposes financial penalties on those who petition courts, chilling litigation as speech.

[2] The licensing, discipline, and access systems described above burden free exercise of religion by excluding religiously affiliated or nontraditional law schools, forcing disclosure of moral and religious identity in character & fitness, enabling retaliation against attorneys who express religious beliefs, restricting courthouse and remote access in ways that burden faith practices; and chilling litigation of faith-based claims through the American Rule.

Cause of Action 41: Violations of the First Amendment's freedom of the press

62. Legal self-regulation  violates the First Amendment's guarantee of freedom of the press,[3] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional restrictions on press freedom, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with constitutional protections for the press, Under color of state law, Defendants violate Plaintiffs' First Amendment right to freedom of the press, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 42: Violations of First Amendment's right to peaceably assemble

63. Legal self-regulation violates the First Amendment's guarantee of the right of the people to peaceably assemble,[4] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and

_____

1.  [3] Licensing monopolies restrict who may publish or speak about legal matters, preventing nonlawyers and journalists from disseminating legal advice or analysis, discipline by peers and self-reporting means that attorneys face retaliation for speaking to the press about misconduct, creating a chilling effect, fee disputes controlled by county bars suppress reporting of abusive practices by shielding them in peer-run committees, cell phone and recording bans deny the press and public the ability to record or report on courthouse proceedings, denial of remote appearances limits public access to judicial proceedings, burdening transparency, the American Rul chills press-related litigation by imposing prohibitive costs on those who seek judicial redress for press freedoms.

2.  [4] Licensing monopolies restrict who may gather with clients or the public to provide legal education, advocacy, or representation, discipline by fellow attorneys and self-reporting chills collective gatherings, whistleblowing networks, and professional associations critical of bar authorities, fee dispute delegation prevent clients from organizing collectively to challenge attorney billing practices, since disputes are funneled into peer-controlled bar committees, cell phone and recording bans suppress public assemblies in courthouses, including observation of proceedings and peaceful gatherings to monitor the judiciary, denial of remote appearances excludes individuals and groups unable to physically assemble in courthouses, undermining collective participation, and the American Rule discourages group litigation and collective action by making assembly in court financially prohibitive.

substantial controversy exists regarding whether these practices are unconstitutional restrictions on assembly, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with constitutional protections for assembly, under color of state law, Defendants violate Plaintiffs' First Amendment right to freedom of assembly, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 43: Violations of the First Amendment's right "to petition"

64. Legal self-regulation violates the First Amendment's right "to petition the Government for redress of grievances,"[5] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional restrictions on petition rights, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with constitutional protections for petitioning, Under color of state law, Defendants violate Plaintiffs' First Amendment right to petition government for redress of grievances, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 44: Violations of the Second Amendment right to bear arms

---

3. [5] Licensing monopolies condition the ability to file pleadings and appear in court on licensure, restricting who may petition judicial bodies, discipline by fellow attorneys and self-reporting chills attorneys from bringing claims against bar authorities or public officials, under threat of retaliation, fee dispute committees prevent clients from petitioning independent tribunals regarding billing, instead forcing them before peer-controlled committees, cell phone and recording bans restrict citizens' ability to document filings, hearings, and proceedings, impeding meaningful petitions, denial of remote appearances excludes individuals unable to travel from a fair opportunity to petition courts, and the American Rule imposes prohibitive financial risks on litigation, deterring citizens from petitioning the courts for relief.

65. Legal self-regulation  violates the Second Amendment right to keep and bear arms,[6]

Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial

controversy exists regarding whether these practices unconstitutionally burden the right to

bear arms, Mandamus is proper to compel Defendants to restructure attorney regulation to

comply with Second Amendment protections, under color of state law, Defendants violate

Plaintiffs' Second Amendment rights, §1983 entitles Plaintiffs to declaratory, injunctive, and

monetary relief.

Cause of Action 44: Fourth Amendment's unreasonable searches and seizures

66. Legal self-regulation  violates the Fourth Amendment's guarantee against unreasonable

searches and seizures,[7] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real

and substantial controversy exists regarding whether these practices are unconstitutional

searches and seizures, Mandamus is proper to compel Defendants to restructure attorney

---

4. [6] Applicants must disclose past conduct, arrests, and personal history during character and fitness examinations, gun ownership, lawful exercise of Second Amendment rights, or political affiliations tied to firearms may be treated as negative "character" factors, peer-discipline systems expose attorneys who publicly advocate for gun rights to risk retaliation from fellow attorneys or disciplinary authorities, cell phone and recording bans prevent citizens and attorneys from documenting Second Amendment-related hearings or proceedings, suppressing advocacy, and the American Rule chills Second Amendment litigation by forcing individuals to bear the costs of vindicating their right to bear arms in court.

5. [7] Character & fitness inquiries compel applicants to disclose personal, medical, and mental health records without probable cause, warrant, or statutory safeguards, peer-discipline structure subject attorneys to investigatory demands, compelled production of private materials, and intrusive questioning by fellow attorneys rather than neutral officials, fee dispute processes compel disclosure of private client–attorney billing records without legislated standards or judicial oversight, cell phone and recording bans operate as blanket seizures of personal devices in courthouses, without individualized suspicion or warrant, denial of remote appearances forces individuals to travel and submit to courthouse security screenings, which often include intrusive searches unrelated to proceedings.

regulation to comply with constitutional protections, under color of state law, Defendants violate Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 45: Fourth Amendment's prohibition against excessive force

67. Legal self-regulation violates the Fourth Amendment's prohibition against excessive force,[8] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Fourth Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with constitutional protections against excessive force, under color of state law, Defendants violate Plaintiffs' Fourth Amendment right to be free from excessive force, directly and indirectly, by shielding perpetrators and suppressing claims, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 46: Fourth Amendment's prohibition against unlawful arrest

68. Legal self-regulation violates the Fourth Amendment's prohibition against unlawful arrest,[9] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial

---

6. [8] Discipline by fellow attorneys and self-reporting insulates prosecutors and government attorneys from accountability when they enable or defend excessive force by police, shielding misconduct from neutral review, fee disputes by county bars limit independent challenges to attorney billing in civil-rights cases, chilling lawsuits addressing excessive force, cell phone and recording bans prevent victims, attorneys, and the press from documenting incidents of excessive force in and around courthouses, denial of remote appearances forces litigants, including excessive-force victims, to travel and expose themselves to hostile environments or law enforcement contact, heightening risk of intimidation or further abuse, and the American makes it financially prohibitive for victims of excessive force to bring claims, reducing deterrence.

7. [9] Character & fitness requirements penalize applicants for prior arrests or charges regardless of dismissal or lack of conviction, treating mere encounters with law enforcement as disqualifying, discipline by fellow attorneys and self-reporting expose attorneys who challenge unlawful arrests or police misconduct to retaliatory

controversy exists regarding whether these practices violate the Fourth Amendment, mandamus is proper to compel Defendants to restructure attorney regulation to comply with constitutional protections against unlawful arrest, under color of state law, Defendants violate Plaintiffs' Fourth Amendment rights by delegating power to bodies that penalize arrests without convictions and retaliate against challenges to unlawful arrests, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  46: Violations of the Fifth Amendment's due process of law

69. Legal self-regulation  violates the Fifth Amendment's guarantee that no person shall be deprived of life, liberty, or property without due process of law,[10]  mandamus is proper to compel Defendants to restructure attorney regulation to provide constitutional protections, under color of state law, Defendants violate Plaintiffs' Fifth Amendment rights to liberty,

—————————————

discipline, suppressing accountability, cell phone and recording bans prevent citizens and attorneys from recording or documenting unlawful arrests in courthouses or related proceedings, denial of remote appearances forces litigants to travel to hostile jurisdictions where risk of arrest is higher, rather than participating safely through remote means, and the American Rule chills litigation challenging unlawful arrests, because victims must bear their own legal costs even if successful.

8.  [10] Licensing monopolies deny liberty and property interests in pursuing a lawful occupation, without legislative safeguards, character & fitness requirements, force disclosure of private information, including medical and mental health records, with no clear standards or appeal, depriving applicants of liberty and privacy without due process, discipline by fellow attorneys and self-reporting subjects attorneys to retaliation and arbitrary proceedings before biased peers, without independent review, fee disputes by county bars force clients into peer-controlled committees without neutral adjudication, depriving them of property rights in their fees, cell phone and recording bans deny the public procedural access to monitor government proceedings, denial of remote appearances deprives individuals of meaningful opportunity to be heard in court, and the American Rule effectively denies access to judicial remedies by making it prohibitively costly to litigate.

9.  Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Fifth Amendment's Due Process Clause.

property, and privacy without due process, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 47: Fifth Amendment's guarantee against self-incrimination

70. Legal self-regulation violates the Fifth Amendment's guarantee against self-incrimination,[11] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional, mandamus is proper to compel Defendants to restructure attorney regulation to eliminate compelled self-incrimination, under color of state law, Defendants violate Plaintiffs' Fifth Amendment right against self-incrimination, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 48: Violations of the Fifth Amendment's double jeopardy clause

71. Legal self-regulation violates the Fifth Amendment's guarantee against double jeopardy,[12] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial

---

10.[11] Character & fitness requirements require applicants, to disclose arrests, charges, and past conduct that may amount to compelled self-incrimination, even if unrelated to fitness to practice law, discipline by fellow attorneys and self-reporting compel attorneys to report not only others' alleged misconduct but also their own, under threat of discipline for silence, fee dispute processes may require attorneys to admit to potentially incriminating financial practices in front of peer committees with no immunity protections, cell phone and recording bans prevent attorneys and the public from documenting proceedings that could otherwise provide protection against coerced self-incrimination, and denial of remote appearances forces physical attendance in settings where compelled questioning may occur, without safeguards for constitutional rights.

[12] Character & fitness requirements re-penalize applicants for past arrests, charges, or discipline that were already resolved in other forums, discipline by fellow attorneys and self-reporting means attorneys may face repeated investigations and punishments for the same underlying conduct, since self-regulation allows multiple overlapping bodies (peer boards, self-reporting obligations, county bar committees), fee dispute processes may subject attorneys to fee dispute sanctions by county bar committees even after the same conduct was addressed in disciplinary proceedings, cell phone

controversy exists regarding whether these practices violate the Double Jeopardy Clause of the Fifth Amendment, mandamus is proper to compel Defendants to restructure attorney regulation to eliminate unconstitutional double punishment, under color of state law, Defendants violate Plaintiffs' Fifth Amendment protection against double jeopardy, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  49: Violations of the Fifth Amendment's Takings Clause

72. Legal self-regulation  violates the Fifth Amendment's Takings Clause,[13] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Fifth Amendment's Takings Clause, mandamus is proper to compel Defendants to restructure attorney regulation to comply with the Takings Clause, under color of state law, Defendants violate Plaintiffs' Fifth Amendment right to just compensation when property is taken for public use, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 50: Violations of the Sixth Amendment's Right to Counsel

---

and recording bans prevents accountability, and the American Rule forces litigants to bear costs in multiple proceedings, compounding penalties for the same conduct.

11.[13] Licensing monopolies prevent individuals from using their own knowledge and labor to provide legal services, effectively taking their livelihood for the benefit of licensed attorneys, discipline by fellow attorneys and self-reporting enables confiscation of client files, suspension of practice, and destruction of goodwill without compensation, fee dispute processes allow county bar associations to reallocate client funds or attorney fees without neutral state authority or compensation, cell phone and recording bans function as uncompensated seizures of private devices in courthouses, and the American Rule operates as a systemic taking of litigants' resources by forcing them to bear unrecoverable costs for public adjudication, enriching the bar while denying compensation.

73. Legal self-regulation violates the Sixth Amendment's Right to Counsel,[14] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Sixth Amendment, mandamus is proper to compel Defendants to restructure attorney regulation to comply with the Sixth Amendment, Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to the assistance of counsel, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  51: Violations of the Sixth Amendment's Right to a Speedy Trial

74. Legal self-regulation  violates the Sixth Amendment's Right to a Speedy Trial,[15] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists

_____

[14] Licensing monopolies restrict who may serve as defense counsel, limiting defendants' choice of advocate to those admitted through arbitrary requirements (law school, bar exam, character & fitness), discipline by fellow attorneys and self-reporting chills zealous advocacy by threatening discipline against attorneys who vigorously defend unpopular clients, fee dispute processes deter attorneys from representing indigent or controversial defendants when peer-run bar committees can strip them of compensation, cell phone and recording bans deny counsel tools needed to document and present evidence in defense, denial of remote appearances prevent attorneys from providing representation when physical appearance is impossible, and the American Rule discourages attorneys from defending constitutional rights when clients cannot recover fees.

12.[15] Licensing monopolies restrict the pool of available defense counsel, causing systemic delays when defendants cannot find representation due to arbitrary entry barriers, discipline by fellow attorneys and self-reporting chills attorneys from taking on difficult or politically sensitive cases, further slowing the defense pipeline, fee dispute processes discourage attorneys from representing indigent or controversial clients, contributing to case backlogs, cell phone and recording bans restrict defendants' ability to document or prove delay-related prejudice, depriving them of evidence for speedy trial motions, denial of remote appearances forces postponements when travel is not possible, even though remote participation could prevent delay, and the American Rule deters defense counsel from challenging trial delays, since costs are unrecoverable.

regarding whether these practices violate the Sixth Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to ensure compliance with the Sixth Amendment, Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to a speedy trial, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  52: Violations of the Sixth Amendment's Right to a Public Trial

75. Legal self-regulation  violates the Sixth Amendment's Right to a Public Trial,[16] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices are unconstitutional restrictions on public trial rights, Mandamus is proper to compel Defendants to restructure attorney regulation to ensure compliance with the Sixth Amendment, Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to a public trial, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  53: Sixth Amendment's Right to an Impartial Jury

76. Legal self-regulation  violates the Sixth Amendment's Right to an Impartial Jury,[17] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists

---

[16] Licensing monopolies restrict who may appear in court or report on proceedings, limiting transparency and public participation, discipline by fellow attorneys and self-reporting leads to retaliation against attorneys who speak publicly about judicial misconduct or corruption, deterring scrutiny of trials, fee dispute committees conceal financial arrangements that affect criminal defense work by resolving disputes in private, peer-run forums, cell phone and recording bans block public observation and press reporting by banning recordings in courthouses, denial of remote appearances (L): Prevent broader public access to trials that could be observed remotely, and the American Rule makes public-interest litigation challenging secrecy prohibitively expensive

[17] Licensing monopolies restrict who may challenge biased jury selection, since only licensed attorneys may represent defendants in voir dire and related motions, discipline by fellow attorneys and self-reporting chills defense attorneys from

regarding whether these practices violate the Sixth Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with the Sixth Amendment, Defendants act under color of state law to deprive criminal defendants of their Sixth Amendment right to an impartial jury, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  54: Eighth Amendment's cruel and unusual punishments clause

77. Legal self-regulation violates the Eighth Amendment's prohibition on cruel and unusual punishments,[18] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Eighth Amendment, mandamus is proper to compel Defendants to restructure attorney regulation to allow meaningful challenges to inhumane treatment, under color of state law, Defendants violate Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishments, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

---

aggressively challenging prosecutorial misconduct or biased jury pools, for fear of retaliation, fee dispute committees undermine public trust by keeping financial conflicts in jury-related defense work hidden in peer-run forums, cell phone and recording bans prevent public and press monitoring of jury selection and proceedings, undermining transparency, denial of remote appearances prevents broader oversight of jury proceedings, shielding bias from scrutiny, and the American Rule makes it prohibitively expensive for defendants to litigate claims of jury bias or misconduct.
[18] Licensing monopolies restrict access to legal representation for incarcerated and indigent individuals, exposing them to harsher punishments, discipline by fellow attorneys and self-reporting chills advocacy against inhumane prison conditions or abusive sentencing practices, leaving cruel punishments unchallenged, fee dispute processes discourage attorneys from taking prison-condition or sentencing cases by exposing them to retaliatory fee disputes, cell phone and recording bans prevent attorneys, the press, and the public from documenting inhumane conditions or treatment in courthouses and detention facilities, denial of remote appearances blocks testimony and advocacy from incarcerated or disabled individuals challenging cruel conditions, and the American Rule makes it financially prohibitive for prisoners to litigate against unconstitutional punishments,

Cause of Action  55: Eighth Amendment's excessive bail/fines clause

78. Legal self-regulation  violates the Eighth Amendment's prohibition on excessive bail and

excessive fines,[19] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and

substantial controversy exists regarding whether these practices violate the Eighth

Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to

comply with the Eighth Amendment, Defendants act under color of state law to deprive

criminal defendants of their Eighth Amendment protection against excessive bail and fines,

§1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  56: Fourteenth Amendment's Equal Protection Clause

79. Legal self-regulation  violates the Fourteenth Amendment's Equal Protection Clause,[20]

Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial

_____

13. Licensing monopolies reduce the pool of available defense counsel, weakening
challenges to excessive bail and fines, discipline by fellow attorneys and self-
reporting deters lawyers from challenging judges or prosecutors on bail and fine
practices, for fear of retaliation, fee dispute processes discourage attorneys from
representing indigent clients facing bail and fine hearings, since compensation may
be contested or withheld, cell phone and recording bans suppress public oversight of
bail hearings and fine determinations, denial of remote appearances prevent timely
challenges to bail and fines when defendants or attorneys cannot be physically
present, and the American Rule makes litigation against excessive bail or fines
prohibitively costly.

[20] Licensing monopolies exclude individuals from practicing law based on wealth,
education, or disability, creating systemic inequality in access to the legal profession,
character & fitness requirements discriminate against individuals with medical
conditions, mental health histories, or prior arrests that do not result in convictions,
discipline by fellow attorneys and self-reporting permit selective enforcement and
retaliation, disproportionately harming critics, whistleblowers, and minority
attorneys, fee dispute committees allow unequal treatment of clients by resolving
disputes through peer-controlled county bar associations rather than neutral tribunals,
cell phone and recording bans deny the public equal access to observe judicial
proceedings, reinforcing secrecy, denial of remote appearances unequally burdens

controversy exists regarding whether these practices violate the Equal Protection Clause, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with equal protection guarantees, Defendants act under color of state law to deprive Plaintiffs and similarly situated individuals of their Fourteenth Amendment right to equal protection of the laws, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

<u>Cause of Action  56: Fourteenth Amendment's Substantive Due Process guarantee</u>

80. Legal self-regulation  violates the Fourteenth Amendment's Substantive Due Process guarantee[21], Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Fourteenth Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with substantive due process, Defendants act under color of state law to deprive Plaintiffs of liberty and property interests protected by substantive due process, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

<u>Cause of Action  58: Fourteenth Amendment's Procedural Due Process</u>

---

poor, disabled, rural, and marginalized litigants who cannot travel, the American Rule disproportionately prevents indigent individuals and nonprofits from enforcing their rights in court

[21] Licensing monopolies burden the fundamental right to pursue a lawful occupation and engage in protected speech, without narrow tailoring or compelling justification, character & fitness requirements intrude into privacy, medical autonomy, and liberty interests through compelled disclosure of personal information, discipline by fellow attorneys and self-reporting chill whistleblowing, advocacy, and association, violating liberty interests in self-expression and professional autonomy, fee dispute committees deny clients meaningful property rights in their funds by diverting disputes into private peer-run forums, cell phone and recording bans suppress liberty interests in public accountability and transparency, denial of remote appearances deny access to courts for individuals who cannot travel, infringing liberty and due process, and the American Rule makes it prohibitively expensive to vindicate fundamental rights, undermining substantive liberty protections

81. Legal self-regulation violates the Fourteenth Amendment's Procedural Due Process guarantee.[22] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Fourteenth Amendment, mandamus is proper to compel Defendants to restructure attorney regulation to provide adequate procedural safeguards, under color of state law, Defendants violate Plaintiffs' Fourteenth Amendment right to procedural due process, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action   59: Violations of the Ninth Amendment

82. Legal self-regulation violates the Ninth Amendment,[23] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these

------

[22] Licensing monopolies condition entry into a lawful occupation on opaque standards without notice, hearings, or meaningful appeal, character & fitness requirements compel disclosure of private information with vague criteria and arbitrary decision-making, lacking clear procedures, discipline by fellow attorneys and self-reporting subject attorneys to biased, peer-run proceedings without neutral adjudicators or procedural safeguards, fee dispute committees resolve disputes through county bar associations without statutory authority, transparency, or procedural protections for clients or attorneys, cell phone and recording bans deprive the public and parties of tools necessary to ensure fair procedure and accurate records, denial of remote appearances exclude parties from hearings entirely if they cannot appear physically, denying procedural access, the American Rule makes it impossible to pursue claims, effectively denying a hearing on the merits

[23] Licensing monopolies suppress the right to pursue a chosen occupation, a liberty interest retained by the people even if not expressly listed in the Constitution, character & fitness requirements violate privacy and bodily autonomy by compelling disclosure of medical and personal information, discipline by fellow attorneys and self-reporting chills freedom of conscience and moral independence, rights retained by the people beyond enumerated guarantees, fee dispute committees deny clients' retained rights to fair dealing and access to justice by forcing disputes into non-neutral private forums, cell phone and recording bans violate retained rights of transparency and accountability in public institutions, denial of remote appearances disparage the retained right of meaningful access to courts despite technological

practices violate the Ninth Amendment, Mandamus is proper to compel Defendants to restructure attorney regulation to respect the Ninth Amendment, Defendants act under color of state law to deprive Plaintiffs of unenumerated rights retained by the people under the Ninth Amendment, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  60: Fourteenth Amendment's Privileges or Immunities Clause

83. Legal self-regulation  violates the Fourteenth Amendment's Privileges or Immunities Clause,[24] Plaintiffs seek a declaration under 28 U.S.C. § 2201 because a real and substantial controversy exists regarding whether these practices violate the Privileges or Immunities Clause, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with the Fourteenth Amendment, Defendants act under color of state law to deprive Plaintiffs of privileges and immunities of national citizenship, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 61: Violations of Article I, Section 7 of the PA Constitution

---

capacity, and the American Rule suppresses retained rights of redress by making litigation prohibitively costly

[24] Licensing monopolies restrict the right to pursue lawful occupations, a recognized privilege of national citizenship, character & fitness requirements burden the right to travel and relocate between states, since individuals must resubmit intrusive disclosures when seeking admission in multiple jurisdictions, discipline by fellow attorneys and self-reporting chills attorneys from exercising rights of speech and petition tied to national citizenship by retaliating against critics and whistleblowers, fee dispute committees prevent equal economic opportunity in the practice of law by forcing disputes into non-neutral county bar association, cell phone and recording bans burden transparency and accountability in courts, rights essential to public citizenship, denial of remote appearances disproportionately harms interstate litigants and attorneys, abridging their ability to participate fully in the judicial system, and the American Rule discourages citizens from vindicating fundamental rights in federal courts, undermining privileges of national citizenship.

84. Legal self-regulation violates the Article I, Section 7 of the Pennsylvania Constitution,[25] Mandamus is proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 7, Defendants act under color of state law to deprive Plaintiffs of rights guaranteed by the Pennsylvania Constitution, which provides broader speech protections than the federal Constitution, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action 62: Violations of Article I, Section 1 of the PA

85. Legal self-regulation violates Article I, Section 1 of the Pennsylvania Constitution,[26] a real and substantial controversy exists regarding whether the current system of Legal regulation violates the inherent and indefeasible rights guaranteed by Article I, Section 1, Mandamus is

---

[25] Licensing monopolies restrict who may speak about or advise on legal matters, censoring entire categories of speech, character & fitness requirements chill expressive association and require disclosure of personal beliefs and histories, limiting speech rights, discipline by fellow attorneys and self-reporting punish or deter attorneys from whistleblowing, criticizing bar authorities, or speaking to the press, fee dispute committees restrict open communication between attorneys and clients about billing and representation, cell phone and recording bans block the public and press from documenting judicial proceedings, suppressing transparency, denial of remote appearances exclude broader public participation in court processes that should be open to all, and the American Rule chills petitions and press-related claims by making litigation prohibitively costly,

[26] licensing monopolies deny the inherent right to pursue a lawful calling and acquire property through one's labor, character & fitness requirements intrude on liberty and reputation by forcing disclosure of personal histories and treating prior arrests or conditions as disqualifications, discipline by fellow attorneys and self-reporting allow wrongdoers to retaliate against those defending liberty and reputation through whistleblowing or advocacy, fee dispute committees deny clients and attorneys the right to protect their property in earned fees by diverting disputes to biased, private bodies, cell phone and recording bans block public defense of liberty and reputation through transparency and oversight, denial of remote appearances exclude individuals from defending liberty and property when they cannot physically attend proceedings, and the American Rule makes defense of liberty and reputation prohibitively expensive. .

proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 1, Defendants act under color of state law to deprive Plaintiffs of rights guaranteed by Article I, Section 1 of the Pennsylvania Constitution, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Cause of Action  63: Violations of Article I, Section 26 of the PA Constitution

86. Legal self-regulation  violates Article I, Section 26 of the Pennsylvania Constitution,[27] a real and substantial controversy exists regarding whether  the current system of Legal regulation unconstitutionally deny civil rights in violation of Article I, Section 26, Mandamus is proper to compel Defendants to restructure attorney regulation to comply with Article I, Section 26, Defendants act under color of state law to deprive Plaintiffs of civil rights guaranteed by Article I, Section 26 of the Pennsylvania Constitution, §1983 entitles Plaintiffs to declaratory, injunctive, and monetary relief.

Plaintiff respectfully requests the Court:

a. Declare that the current system of Legal regulation ,  violates the Pennsylvania and United States Constitutions, and that anyone over the age of 18 in the Commonwealth can call themselves a lawyer, just like they could call themselves a reporter, unless Defendants produce peer-reviewed evidence that law school provides value.
b. Issue a writ of mandamus compelling Defendants to restructure attorney regulation to prevent denial of constitutional or civil rights.
c. Issue injunctive relief, including, but not limited to, replacing the unconstitutional system with a neutral statewide regulatory structure that uses lay people to write the Rules of Civil

---

[27] Licensing monopolies deny citizens the civil right to pursue lawful occupations and to speak on legal matters, character & fitness requirements discriminate against individuals based on health conditions, mental health histories, or prior arrests that did not result in convictions, discipline by fellow attorneys and self-reporting deny civil rights of speech, petition, and association through selective enforcement and retaliation, fee dispute committees deny clients the civil right to neutral adjudication of disputes over property and contracts, cell phone and recording bans deny the public the civil right to open courts and government accountability, denial of remote appearances deny the civil right of access to courts for those unable to attend physically, and the American Rule disparately impacts indigent citizens by denying them effective access to courts,

Procedure, Rules of Criminal Procedure, Rules of Professional Conduct, and other policies, lay monitors at every court hearing to report if lawyers or judges are late, absent, incompetent, unprepared, or rude, and an unemployment-style hearing system to resolve fee disputes and ethical violations, with lay adjudicators issuing rulings and providing opportunities to appeal.

d. Award declaratory relief under 28 U.S.C. § 2201.

e. Award costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable law.

f. Award actual, compensatory, special, punitive, and other damages.

g. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

___/s Paige Martineau_____

Paige J. Martineau, Esquire, PA I.D. No. 325096

SLAAY (Susquehanna Legal Aid for Adults and Youth)

647 East Third Street

Williamsport, PA 17701

570-392-3025

paigemartineau@slaay.org